UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| HEARTS WITH HAITI, INC., a North Carolina nonprofit corporation, located in Raleigh, North Carolina,<br><br>and<br><br>MICHAEL GEILENFELD, individually, and in his capacity as Executive Director of St. Joseph Family of Haiti on behalf of St. Joseph Family of Haiti and its residents,<br><br>          Plaintiffs<br><br>          v.<br><br>PAUL KENDRICK, an individual residing in Freeport,  Maine<br><br>          Defendant. | CIVIL ACTION:<br><br><br><br><br>**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**INJUNCTIVE RELIEF SOUGHT** |

NOW COME Plaintiffs, HEARTS WITH HAITI, INC., and MICHAEL GEILENFELD, individually, and in his capacity as Executive Director of St. Joseph Family of Haiti on behalf of St. Joseph Family of Haiti and its residents, by and through undersigned counsel, and hereby complain against Defendant Paul Kendrick, as follows:

## INTRODUCTION

Plaintiffs, a nonprofit corporation, a missionary and humanitarian, and a nonprofit organization which provide critical support to hundreds of disabled and disadvantaged Haitian children, have been endlessly defamed, bullied, and harassed by Defendant Paul Kendrick.  From his desk in Freeport, Maine, via hundreds of internet publications and mass e-mails to third parties, Defendant has published false and heinous allegations of Plaintiffs' involvement in child abuse and otherwise bullied, intimidated, and tortiously interfered with Plaintiffs' benefactors, volunteers, and supporters.  Plaintiffs have suffered significant financial harm and other injuries

as a result of Defendant's tortious conduct, as is more fully explained below.

## PARTIES

1.    Plaintiff Hearts with Haiti, Inc. ("Hearts with Haiti") is a North Carolina nonprofit corporation located in City of Raleigh, County of Wake, State of North Carolina, USA.

2.    Plaintiff Michael Geilenfeld is an individual residing in Pétion-Ville Commune, Port-au-Prince Arrondissement, Republic of Haiti and is the founder and Executive Director of St. Joseph Family of Haiti.

3.    Defendant Paul Kendrick is an individual residing in the Town of Freeport, County of Cumberland, State of Maine, USA.

## JURISDICTION

4.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000).

5.    This Court has personal jurisdiction over Defendant because he is a resident of Maine.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district.

## FACTUAL ALLEGATIONS

**i.    Improving the Lives of Disadvantaged Haitian Children.**

7.    Michael Geilenfeld, a former Brother with the Missionary Brothers of Charity, is the founder and Executive Director of St. Joseph Family of Haiti which operates a network of nonprofit institutions that provide residence, room and board, formal education, and religious education to disabled and disadvantaged Haitian children.

2

8.      St. Joseph Family of Haiti operates St. Joseph's Home for Boys, Wings of Hope, Trinity House, Lekòl Sen Trinite, and the Resurrection Dance Theater of Haiti.

9.      St. Joseph Family of Haiti's first home, St. Joseph's Home for Boys, was founded in Port au Prince, Haiti in 1985 as a refuge for formerly destitute Haitian street children.

10.     St. Joseph's Home for Boys began as a haven and family for five children and quickly grew into a residence and school for more than 30 former child slaves, street children, and orphans.

11.     At present, St. Joseph's Home for Boys provides full-time residence to approximately 16 former child slaves, street children, and orphans in Pétion-Ville, Haiti.

12.     Residents of St. Joseph's Home for Boys receive permanent residence, room and board, meals, arts and vocational education, religious education, and formal academic education outside the home, among other accommodations.

13.     Shortly after the establishment of St. Joseph's Home for Boys, Michael Geilenfeld and St. Joseph Family of Haiti founded Resurrection Dance Theater of Haiti as a dance troupe for the residents of St. Joseph's Home for Boys to express themselves, increase their self-esteem and understanding of Haitian culture, and to display their talent through music and dance.

14.     The Resurrection Dance Theater of Haiti has grown into an esteemed Haitian dance troupe consisting of current and former residents of St. Joseph's Home for Boys and Trinity House, as well as professional performers, choreographers, and teachers.

15.     The Resurrection Dance Theater of Haiti performs across the United States and Canada, and has performed, among other places, at the Brooklyn Academy of Music and the Chicago Theater, both for DanceAfrica, and before the Pope at World Youth Day in Canada.

16.     The Resurrection Dance Theater of Haiti exemplifies the success of St. Joseph's Home for Boys, Wings of Hope, Trinity House, and St. Joseph Family of Haiti, and the remarkable achievements of the residents and graduates of St. Joseph Family of Haiti's homes and schools.

17.     Resurrection Dance Theater of Haiti performances raise awareness for the disadvantaged children of Haiti and the commendable work of the St. Joseph Family of Haiti.

18.     Resurrection Dance Theater of Haiti performances raise significant funding for St. Joseph Family of Haiti, and the hundreds of children that benefit from St. Joseph's Home for Boys, Wings of Hope, Trinity House, and Lekòl Sen Trinite.

19.     Typically, donations from citizens of the United States to the Resurrection Dance Theater of Haiti, St. Joseph Family of Haiti, St. Joseph's Home for Boys, Wings of Hope, Trinity House, and Lekòl Sen Trinite are made through Hearts with Haiti, a North Carolina nonprofit corporation.

20.     In recent years, the Resurrection Dance Theater of Haiti tour has generated substantial funding for the rebuilding of St. Joseph's Home for Boys' and Wings of Hope's facilities, which were destroyed during the devastating Haitian earthquake of 2010.

21.     In 1994, Michael Geilenfeld and St. Joseph Family of Haiti established Wings of Hope as a full-time residence and school for Haitian children with physical and mental disabilities, including autism, cerebral palsy, seizure disorders, and developmental delays, among other conditions.

22.     At Wings of Hope, approximately 31 disabled children receive permanent residence, room and board, meals, physical therapy, recreational therapy, formal education, religious education, and other accommodations.

4

23.     Students and residents at Wings of Hope enjoy experiences that are educationally, physically, emotionally, and spiritually enriching, and which are designed to improve their quality of life.

24.     In 2000, Michael Geilenfeld and St. Joseph Family of Haiti established Trinity House in Jacmel, Haiti as a second residence for former child slaves, street children, and orphans.

25.     Trinity House provides approximately 10 formerly destitute children permanent residence, room and board, meals, arts and vocational education, religious education, and formal academic education outside the home, among other accommodations.

26.     Trinity House also operates several successful community outreach programs and startup businesses that provide funding for the home and employment for its graduates.

27.     To further serve the Jacmel, Haiti community, Michael Geilenfeld and St. Joseph Family of Haiti established a day-school program, Lekòl Sen Trinite, dedicated to serving the most impoverished families and children in the Jacmel community.

28.     Lekòl Sen Trinite currently provides approximately 135 children with elementary education they would not otherwise receive.

29.     Because many of the Lekòl Sen Trinite students and their families cannot afford food every day, Lekòl Sen Trinite also provides students with breakfast and lunch Monday through Friday.

30.     St. Joseph Family of Haiti also provides targeted support, financial and otherwise, to families of Lekòl Sen Trinite students.

31.     Additionally, through a program known as "Pwogram Rejwi" (Program Rejoice), each Saturday, Lekòl Sen Trinite provides education and two meals to approximately 25 children

from the community, known as "restaveks," who otherwise cannot attend school because they are trapped within Haiti's child slavery system.

32. The schools and homes within the St. Joseph Family of Haiti provide desperately needed services to more than 190 children.

33. St. Joseph Family of Haiti employs approximately 80 full-time staff, most of whom are members of the surrounding Haitian communities.

34. Approximately 57 children reside at St. Joseph's Home for Boys, Wings of Hope, and Trinity House; and approximately 135 children receive their education through Lekòl Sen Trinite day-school programs at Trinity House and the day program at Wings of Hope.

35. Hundreds more children and adults benefit from St. Joseph Family of Haiti and its community outreach programs.

36. The Haitian department of Social Services, Institut du Bien Etre Social et de Recherches, refers many disadvantaged children to the St. Joseph's Home for Boys, Wings of Hope, and Trinity House.

37. Other disadvantaged children are referred to the homes by pastors, priests, nuns, and other nonprofit organizations, including hospitals and clinics.

38. Many parents of disabled children, who are unable to care for their children, have their children reside at Wings of Hope.

39. Other children are simply left at the doorsteps of the three homes.

40. Hearts with Haiti was established in 2001 as a North Carolina nonprofit corporation with a mission of supporting St. Joseph's Home for Boys, Wings of Hope, Trinity House, Resurrection Dance Theater of Haiti, Lekòl Sen Trinite, and St. Joseph Family of Haiti.

41. Hearts with Haiti is dedicated to helping disadvantaged children of Haiti through

6

its association with St. Joseph Family of Haiti.

42.     Through dedicated fundraising and passionate volunteerism, Hearts with Haiti has organized thousands of volunteers from throughout the United States to participate in the mission of St. Joseph Family of Haiti.

43.     Hearts with Haiti members have traveled to Haiti hundreds of times on mission trips and visits to St. Joseph's Home for Boys, Wings of Hope, and Trinity House.

44.     Hearts with Haiti has also organized, planned, and helped coordinate the international dance tours of the Resurrection Dance Theater of Haiti and its fundraising efforts.

45.     Hearts with Haiti fundraises on behalf of St. Joseph Family of Haiti, St. Joseph's Home for Boys, Wings of Hope, Trinity House, Lekòl Sen Trinite, and the Resurrection Dance Theater of Haiti and distributes those funds to St. Joseph Family of Haiti and its respective homes, schools, and dance troupe.

46.     Since 2001, Hearts with Haiti has raised nearly $5 million in support of disadvantaged Haitian children at St. Joseph's Home for Boys, Wings of Hope, Trinity House, Resurrection Dance Theater of Haiti, Lekòl Sen Trinite, and the St. Joseph Family of Haiti.

**ii.     Defendant Paul Kendrick's Campaign of Tortious Conduct.**

47.     In January 2011, without ever meeting any of the Plaintiffs, their residents, students, employees, staff, volunteers, or supporters, Defendant Paul Kendrick began a malicious campaign of outrageous conduct, which continues to present, intended to defame and destroy the Plaintiffs by harassing and intimidating their volunteers, employees, members, benefactors, fundraisers, and anyone associated with them.

48.     Kendrick published to third parties through public blogs, public website postings, public radio broadcast, and hundreds of e-mails, defamatory statements that the Plaintiffs

sexually abuse children and otherwise support child sex abuse.

49.    Kendrick published in a mass e-mail to third parties dated October 11, 2012 that:

In 1983, Emile Millien was a 10 year old boy living in an orphanage in Port au Prince, Haiti when Michael Geilenfeld, the orphanage's founder, first began to rape him. With his voice rising with emotion, Emile told us that Geilenfeld forced him to put his penis into Geilenfeld's mouth. At other times, Geilenfeld held the boy's penis and masturbated him.

50.    In an attempt to intimidate Plaintiffs' supporters, Kendrick published to third parties highly inflammatory and false statements, among others, an e-mail dated December 22, 2012 containing allegations that:

Each and every one of the five boys who lived in Geilenfeld's "one room shack" were [sic] sexually molested by him. The boys were 10 years old. Geilenfeld would force them to suck his penis, he would suck and lick their genitals, he would kiss them long and hard on their lips. They were orphans, poor street kids with no where [sic] to go. These are the facts. Do the facts make your skin crawl? I hope so.

51.    Kendrick sent mass e-mails to hundreds of third-party recipients and otherwise published defamatory statements falsely insinuating that Michael Geilenfeld and individuals and organizations associated with St. Joseph Family of Haiti had committed, and would be arrested for committing child sex crimes, including without limitation the following mass e-mail dated December 12, 2012:

Hey, Geilenfeld, you sick son of a bitch [. . . .]

Count on this, Geilenfeld. You are going to prison for the rest of your miserable life for the horrible and despicable sex crimes you have committed against poor and vulnerable Haitian children.

Lots of luck if the Haitian Police detain you in a Haitian prison. Word will spread fast among the inmates that you have sexually assaulted and raped their Haitian children.

One of these days, maybe even today, the police are going to handcuff you, jail you, and then ship you back to the U.S. to be put in prison forever.

And, all your pals at Hearts with Haiti, the Timoun Foundation and Epiphany Suwanee Church will be held responsible and accountable in a court of law for their willful negligence in not protecting children from a monster like you.

Paul Kendrick
207-838-1319

52.     Kendrick sought to destroy St. Joseph Family of Haiti, Hearts with Haiti, and Michael Geilenfeld by publishing defamatory statements and false allegations about them to their sources of funding in the United States, Canada, and abroad.

53.     When employees of St. Joseph Family denied Kendrick's heinous allegations, he accused them of deplorable conduct and otherwise attempted to bully and intimidate them, including, among others, the following defamatory statements in e-mails published to employees of St. Joseph Family of Haiti and third parties:

[July 18, 2011:]

Dear Mr. Nathan,

Word has it that you are engaging in sexual relations with Michael Geilenfeld.  Perhaps this is why you defend Geilenfeld against any and all allegations of child abuse.  You should know that Geilenfeld has a big mouth.  He uses people for his own purposes.

Paul Kendrick

[October 23, 2012:]

Dear Ms. Deitrich [sic],

How many years were you and KC sexual partners?  How often do young girls from Wings of Hope sleep with you in your bed?

9

Sincerely,
Paul Kendrick

54.     When supporters of Plaintiffs spoke out against Kendrick and his depraved

statements, he threatened to publish deplorable allegations about them, including, among others,

the following e-mail threat dated December 16, 2012:

> I'm going to forward your recent e-mail to State Farm officials.  I cannot
> believe that the CEO of State Farm would call a child protection advocate
> "despicable," for his efforts to protect Haitian children.

**iii.     Defendant Paul Kendrick's Tortious Interference with Advantageous
        Relationships and Further Intimidation, Harassment, and Defamation.**

55.     Kendrick sent e-mails to, and otherwise intimidated and harassed benefactors of

St. Joseph Family of Haiti, St. Joseph's Home for Boys, Wings of Hope, Trinity House, Hearts

with Haiti, and Michael Geilenfeld, including without limitation, several Rotary Clubs

throughout the United States, Canada, and Haiti, religious institutions, sister schools,

philanthropists, and other supporters of St. Joseph Family of Haiti, St. Joseph's Home for Boys,

Wings of Hope, Trinity House, and Hearts with Haiti, including among others, the following

internet statement published to third parties June 10, 2012:

> DO NOT DONATE MONEY TO "HEARTS WITH HAITI."
> DO NOT DONATE MONEY TO "ST. JOSEPH'S HOMES" IN HAITI.
> YOUR DONATIONS ARE ENABLING A CHILD MOLESTER TO
> ACT . . . .

56.     Beginning in or about 2011 and continuing to present, Kendrick publish depraved

remarks to hosts and supporters of the Resurrection Dance Theater of Haiti dance tour in North

America, which has been a source of substantial funding for the St. Joseph's Home for Boys,

Wings of Hope, Trinity House, the Resurrection Dance Theater of Haiti, Lekòl Sen Trinite,

Hearts with Haiti, and St. Joseph Family of Haiti.

57.     Kendrick used threats, intimidation, and false and defamatory statements regarding the Plaintiffs in an attempt to force numerous venues to cancel Resurrection Dance Theater of Haiti performances.

58.     Kendrick threatened, among other things, in an e-mail dated January 31, 2011, that "[w]henever you bring your dance company to the U.S., we will blitz the local media with testimony of the boys you have raped."

59.     In a series of threatening, intimidating, and harassing e-mails to venues and supporters of the Resurrection Dance Theater of Haiti performances, including without limitation, churches, Rotary Clubs, and others, Kendrick made highly inflammatory, false, disparaging and defamatory comments regarding the Plaintiffs, and individuals associated with them.

60.     In the hundreds of e-mails, blogs, and website postings, Kendrick published to third parties, among others, the following statements:

> [October 11, 2012:]   Haiti dance troup [sic] directed by multi-accused child molester to perform at St. Christopher's Episcopal School in Richmond, Virginia[.]  Virginia's Episcopal Bishop, Shannon Johnston, is ignoring cries for help from Haitian child sexual abuse victims.  U.S. citizen, Michael Geilenfeld, Director of both the St. Joseph's homes in Haiti and the Resurrection Dance Theater, is a multi-accused child molester.
>
> Bishop Johnston must immediately cancel the performances.  If Bishop Johnston does nothing, he is enabling a child molester by raising money for Geilenfeld.  If Bishop Johnston does nothing, he is calling the child sexual abuse victims liars.
>
> [October 1, 2012:]   Child protection advocates want Rev. Alison Halsey, Dr. Jason Scott Kissel and members of the First and Franklin Street Presbyterian Church in Baltimore to speak out and take action to put a stop to the sexual abuse of Haitian children at the St. Joseph's Homes in Haiti.

11

> [September 26, 2012:]Pedophile from Haiti comes to Baltimore[.]
> Warning to people of Baltimore: Michael Geilenfeld, Director of the
> Resurrection Dance Theater in Haiti is being investigated by U.S.
> Homeland Security for multiple charges of child sexual abuse.  Some of
> the dancers may want to escape to U.S.

61.    Kendrick bullied, threatened, and harassed the hosts and would-be hosts of the

Resurrection Dance Theater of Haiti performances by implicitly and expressly threatening to

publish outrageous, highly inflammatory, and false statements about them if they refused to

cancel scheduled Resurrection Dance Theater of Haiti performances, including but not limited to

the following e-mail dated September 30, 2012:

> You and your church members are enabling Michael Geilenfeld, a child
> molester.  How about you and I, Pastor Roy, do an interview together with
> local news reporter about abuse at SJF? My best guess is that you don't
> have the courage.

62.    Kendrick published substantially similar threats and defamatory statements to

other hosts and benefactors in an effort to force others to cancel scheduled Resurrection Dance

Theater of Haiti performances.  Among other things, Kendrick threatened to publish statements

that the hosts and would-be hosts "ignor[e] cries for help from Haitian child abuse victims."

63.    Kendrick also published, among others, a defamatory e-mail to third parties dated

October 2, 2012, falsely alleging that Haitian abuse victims "are being bullied, intimidated and

threatened by Michael Geilenfeld, as they struggle to bring him to justice and prevent him from

harming more children."

64.    Kendrick also made similar highly inflammatory and false statements on public

websites, blogs, and other electronic mediums.   On at least one public website, http://reform-

network.net/?p=18158&cpage=1, Kendrick published the following statement October 1, 2012:

> Bishop William Lori does nothing to stop multi-accused pedophile from

bringing his Haitian dance troupe to a parish in the Archdiocese of Baltimore.

Bishop Lori must reach out with comfort and support to children who are being sexually abused at [sic] orphanage in Haiti by Michael Geilenfeld, a former Brother with Mother Theresa's Brothers of Charity.

Bishop Lori must immediately cancel the performance.

American citizen, Michael Geilenfeld, is the Executive Director of the St. Joseph's Homes in Haiti.- [sic] Geilenfeld is under criminal investigation by U.S. Homeland Security for the sexual abuse of [sic] [.]

65.    Kendrick also published on the aforementioned website the defamatory statement, dated August 8, 2011, that "Michael Geilenfeld, executive director of the St. Joseph's Homes in Port au Prince, Haiti, is sexually abusing children."

66.    Kendrick also published the following threatening and defamatory statement in an e-mail to a would-be host of Resurrection Dance Theater of Haiti, among others, in October 2012:

Child protection advocates will be issuing a press release on Wednesday in which the press and media will be informed that "Imagination Stage" is hosting a group of Haitian dancers whose executive director, Michael Geilenfeld, is a multi-accused child molester.

I urge you and your board of directors to immediately cancel the performance scheduled for Monday October 8th.

It will be painful to view the photos of your young actors and students laughing and clapping along with the Haitian dancers vs. the sad and pained faces of Geilenfeld's child sexual abuse victims in Haiti.

I urge you to follow Bishop William Lori of Baltimore's lead by canceling all performances.

Sincerely,
Paul Kendrick

Freeport, Maine
207-838-1319

67.     Kendrick also published defamatory statements to third parties by mass e-mail dated June 10, 2012 that Hearts with Haiti's Chairman of the Board of Directors is "endangering the lives of innocent Haitian children" and "aiding and abetting the sexual abuse of children in Haiti."

68.     Kendrick also published statements dated June 10, 2012 to third parties that donations to Hearts with Haiti are "enabling a child molester to act . . . ," and published allegations and false innuendos of financial impropriety, including, among other things, that "Hearts with Haiti keeps 20% of every dollar donated.  There is no audited financial accounting of where the money goes when it gets into Geilenfeld's hands."

69.     In a public radio interview broadcast from Hudson, New York on or about January 9, 2012, Kendrick made numerous false and defamatory statements concerning Plaintiffs and persons associated with them.

70.     During the public radio broadcast, Kendrick stated, implicitly and explicitly, that children had been, and were being, molested at the three St. Joseph Family homes.  Among other things, Kendrick stated that there were "14 or 15 victims" of sexual abuse.

71.     During the public radio broadcast, Kendrick suggested that children were being brought in from the streets and offered food and shelter so that they could be raped at the St. Joseph Family homes.

72.     During the public radio broadcast, he also falsely accused, implicitly or explicitly, St. Joseph Family of Haiti, Hearts with Haiti, and Michael Geilenfeld of financial impropriety, by stating that there is no accountability for the money that St. Joseph Family of Haiti and Hearts with Haiti have raised.

14

73.     During the public radio broadcast, Kendrick also acknowledged that the "pressure" he and associates were placing on fundraisers for St. Joseph Family of Haiti, Hearts with Haiti, and Michael Geilenfeld was having the effect of hurting them financially, acknowledging his intention to interfere with and dismantle the Plaintiffs' fundraising network and financial viability.

74.     Kendrick has published countless false, defamatory, and threatening statements to third persons about St. Joseph Family of Haiti, Hearts with Haiti, and Michael Geilenfeld including, without limitation, the statements described above.  Kendrick's statements expressly or implicitly conveyed the message that Plaintiffs are engaged in or otherwise condone the sexual exploitation of children and that the children they support are being abused, threatened, and prevented from "escap[ing]."

75.     Kendrick's statements, mass e-mails, public blogs, and public website postings also conveyed the false and defamatory message that individuals who support St. Joseph Family of Haiti and Hearts with Haiti, financially or otherwise, are supporting the abuse and exploitation of children.

**iv.     Harm caused by Defendant Paul Kendrick's Tortious Conduct.**

76.     Kendrick's false and defamatory statements and threats to benefactors resulted in severe financial harm to the Plaintiffs and affected their ability to care for disadvantaged Haitian children.

77.     As a direct result of Kendrick's interference, bullying, and intimidation and his published threatening, false, and defamatory statements, Resurrection Dance Theater of Haiti performances were cancelled, limited, or otherwise adversely affected, including, among others, performances in Iowa, Maryland, Virginia, and Wisconsin.

15

78.     Kendrick acknowledged as much in a publication to third parties dated October 1, 2012 in which he stated "Bishop William Lori of Baltimore cancels Haiti dance performances at Catholic parish due to pressure from child protection advocates."

79.     Resurrection Dance Theater of Haiti suffered negative and otherwise reduced publicity as a result of Kendrick's outrageous statements and conduct.

80.     As a result of the canceled performances and negative and otherwise reduced publicity, Plaintiffs suffered and continue to suffer direct pecuniary loss, including, but not limited to, diminished revenue, reduced donations, decreased future earning potential, and increased expenses including, among others, public relations expenses.

81.     Additionally, as a direct result of these threatening, false, and defamatory statements, several groups and individuals withheld or reduced funding and grant moneys to St. Joseph's Home for Boys, Wings of Hope, Trinity House, Resurrection Dance Theater of Haiti, Lekòl Sen Trinite, St. Joseph Family of Haiti, Hearts with Haiti, and Michael Geilenfeld including, among others, Rotary Clubs, sister schools, religious organizations, churches, philanthropists, benefactors, and other individuals.

82.     The statements made by Kendrick are false and they represent his concerted effort to disparage and destroy the St. Joseph Family of Haiti, St. Joseph's Home for Boys, Wings of Hope, Trinity House, Resurrection Dance Theater of Haiti, Lekòl Sen Trinite, Hearts with Haiti, and Michael Geilenfeld and the support they provide to hundreds of Haitian children.

83.     Kendrick's communications were intended to disparage, denigrate, and defame the reputations and good will of the Plaintiffs.

84.     Kendrick's depraved communications were intended to interfere with the benefactors, fundraisers, supporters, and other advantageous relationships of the Plaintiffs.

16

85.     Kendrick's statements and communications were meant to disparage Plaintiffs' reputations and good will in Haiti, the U.S., and abroad, and to place them in a false light to the public as organizations and individuals that have committed criminal acts and acts involving serious sexual misconduct, such as engaging in or "aiding and abetting" sexual abuse of children, or otherwise condoning sexual abuse of children.

86.     As a further result of Kendrick's defamatory, harassing, and highly inflammatory statements, Plaintiffs have suffered severe economic harm and damages.

87.     Among other things, Plaintiffs have lost funding sources and benefactors have withheld support because of Kendrick's harassment and intimidation.

88.     Additionally, the reputations and good will of the Plaintiffs and others have been damaged, which has caused, and will in the future cause, the loss or diminishment of substantial charitable donations, among other economic harm and damages.

## COUNT I
### (Defamation)

89.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 88 of this Complaint as if fully set forth herein.

90.     Defendant's conduct, acts or omissions, including his unprivileged communications to members of the public and other third parties, conveyed demonstrably false facts, insinuations, or innuendo of and concerning Plaintiffs, as alleged above.

91.     In particular, without limitation to the foregoing allegations, Defendant expressly or impliedly stated that Plaintiffs were engaged in child sexual abuse, were associated with child sexual abuse, were avoiding investigation for child sexual abuse, and or were involved in bullying, intimidating, and threatening victims of child sexual abuse, and holding others against their will.

17

92.     Defendant published these statements to third parties with negligence, knowledge of the falsity of the statements, or in reckless disregard of the falsity of such statements.

93.     The statements were defamatory, were intended to harm to the reputations of the Plaintiffs, and to denigrate their professional standings and standings in the community.

94.     Further, the unprivileged communications falsely impute misconduct or incompetence in a trade, occupation, or business, and allege serious crimes and acts involving serious criminal misconduct involving sexual abuse of children and, therefore, constitute defamation *per se*.

95.     Communications by Defendant caused harm to the Plaintiffs' businesses and professions, as well as to their reputations, and subjected them to pecuniary harm and other damages.

96.     Therefore, Defendant's conduct, acts, or omissions constitute the tort of defamation, which has caused damage to the Plaintiffs in the form of damage to their businesses and professions, damage to their reputations, economic losses, including without limitation those described above, and other general and special consequential damages, and damages *per se* under the law.

WHEREFORE, Plaintiffs respectfully request this Court to award damages to them and against the Defendant, plus interest, costs and such other relief as it may deem just and proper.

**COUNT II**
**(False Light)**

97.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 96 of this Complaint as if fully set forth herein.

98.     Defendant's conduct, acts or omissions, in communications to benefactors and other fundraisers of the Plaintiffs and other third party members of the public—including, among

18

other things, Defendant's communications over the internet and radio—as alleged above, gave publicity to a matter concerning the Plaintiffs which is highly offensive and placed them before the public in a false light.

99.     Defendant had knowledge of or acted in reckless disregard as to the falsity of the statements and the false light in which he placed Plaintiffs.

100.     Therefore, Defendant's conduct, acts, or omissions constitute the tort of false light invasion of privacy, which has caused damage to Plaintiffs in the form of damage to reputation, financial loss, and other general and specific consequential damages.

WHEREFORE, Plaintiffs respectfully request this Court to award damages to them against the Defendant, plus interest, costs and such other relief as it may deem just and proper.

## COUNT III
### (Tortious Interference with Advantageous Relationships)

101.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 100 of this Complaint as if fully set forth herein.

102.     Defendant intentionally interfered with Plaintiffs' advantageous contractual and prospective economic relationships through fraud, threats, and intimidation, as described above.

103.     Defendant's statements were made with knowledge of their falsity or in reckless disregard of their falsity, for the purpose of intimidating, coercing, extorting, or fraudulently inducing Plaintiffs' supporters and would-be supporters to withhold support for Plaintiffs, financial and otherwise.

104.     In reliance on Defendant's misrepresentations, and or his intimidation, Plaintiffs' supporters and would-be supporters withheld support of the Plaintiffs, financial and otherwise, to the Plaintiffs' detriment.

105.     As a direct and proximate result of Defendant's conduct, the Plaintiffs suffered

severe pecuniary damages, including, without limitation, the cancellation of scheduled

Resurrection Dance Theater of Haiti performances, the termination of funding from benefactors,

and other consequential damages.

WHEREFORE, Plaintiffs respectfully request this Court to award damages to them and

against the Defendant, plus interest, costs and such other relief as it may deem just and proper.

## COUNT IV
### (Punitive Damages)

106.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 105 of this

Complaint as if fully set forth herein.

107.     Defendant's actions, as described above, were motivated by ill will toward

Plaintiffs, or Defendant's deliberate conduct was so outrageous that malice toward the Plaintiffs

can be implied.

108.     Plaintiffs are entitled to an award of punitive damages against Defendant.

WHEREFORE, Plaintiffs respectfully request this Court to award damages to them and

against Defendant, including punitive damages, plus interest, costs and such other relief as it may

deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand and pray that this Court:

(1) Enter judgment in Plaintiffs' favor and against Defendant;

(2) Enjoin Defendant from further unlawful conduct;

(3) Order Defendant to remove all published tortious statements, electronic or otherwise;

(4) Award Plaintiffs actual damages for their injuries plus interest;

(5) Award Plaintiffs punitive damages;

(6) Award Plaintiffs costs and attorneys' fees; and

(7) Award Plaintiffs such further relief as may be just, equitable, and proper.

## JURY DEMAND

Plaintiffs request a jury trial on all questions of fact raised by their complaint.


Dated at Portland, Maine, this 6th day of February, 2013.


/s/  Peter J. DeTroy                                                     
/s/ Russell B. Pierce

Peter J. DeTroy, Esq.

Russell B. Pierce, Esq.

Attorney for Plaintiffs Michael Geilenfeld, St. Joseph Family of Haiti, and Hearts with Haiti, Inc.

Attorney for Plaintiffs Michael Geilenfeld, St. Joseph Family of Haiti, and Hearts with Haiti, Inc.

Norman Hanson & DeTroy, LLC
415 Congress St.
P. O. Box 4600
Portland, ME 04112-4600
(207) 774-7000
pdetroy@nhdlaw.com

Norman Hanson & DeTroy, LLC
415 Congress St.
P. O. Box 4600
Portland, ME 04112-4600
(207) 774-7000
rpierce@nhdlaw.com


OF COUNSEL:

/s/  Devin W. Deane                                                      
/s/ Robert F. Oberkoetter

Devin W. Deane, Esq.

Robert F. Oberkoetter, Esq.

Attorney for Plaintiffs Michael Geilenfeld, St. Joseph Family of Haiti, and Hearts with Haiti, Inc.

Attorney for Plaintiffs Michael Geilenfeld, St. Joseph Family of Haiti, and Hearts with Haiti, Inc.

Norman Hanson & DeTroy, LLC
415 Congress St.
P. O. Box 4600
Portland, ME 04112-4600
(207) 774-7000
ddeane@nhdlaw.com

Law Offices of Robert F. Oberkoetter
P.O. Box 77
Dartmouth, MA 02714
(508) 536-5364
baro@comcast.net

## <u>VERIFICATION</u>

I, Michael K. Geilenfeld, being first duly sworn do hereby affirm that I have read the foregoing Verified Complaint and the allegations set forth in the Verified Complaint are true on the basis of my own personal knowledge, except in those instances in which the allegations are made on information and belief and, in each such instance, the matter so alleged is based on information that I believe to be true.

Dated:  January 27, 2013           /s/ Michael Geilenfeld_____
                                         Michael K. Geilenfeld


STATE OF FLORIDA                                      January 27, 2013
Miami-Dade_____, ss.

Personally appeared before me the above-named Michael K. Geilenfeld and took oath that the foregoing Verification signed by him is true to his own personal knowledge.

Before me,

                                 /s/ Vanessa Gonzalez_____
                                 Notary Public/Attorney-At-Law

[SEAL]

                                 VANESS GONZALEZ
                                 Notary Public – State of Florida
                                 My Comm. Expires Jan 31, 2015
                                 Commission # EE 60286
                                 Bonded Through National Notary Assn.

## VERIFICATION

      I, Shelley C. Wiley, being first duly sworn do hereby affirm that I have read the foregoing Verified Complaint and the allegations set forth in the Verified Complaint are true on the basis of my own personal knowledge, except in those instances in which the allegations are made on information and belief and, in each such instance, the matter so alleged is based on information that I believe to be true.

Dated:  January 28, 2013           /s/  Shelley C. Wiley_____
                                     Shelley C. Wiley
                                     President of the Board of Directors
                                     Hearts With Haiti, Inc.


STATE OF OHIO                                  January 28, 2013
County of Clark, ss.

      Personally appeared before me the above-named Shelley C. Wiley and took oath that the foregoing Verification signed by her is true to her own personal knowledge.

      Before me,

                                  /s/  Mary J. Gudorf_____
                                  Notary Public/Attorney-At-Law

      [SEAL]

                                  MARY J. GUDORF, NOTARY PUBLIC
                                  IN AND FOR THE STATE OF OHIO
                                  MY COMMISSION EXPIRES FEB. 23, 2016