UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

HEARTS WITH HAITI, INC.,　　)
et al.,　　　　　　　　　　　)
　　　　　　　　　　　　　　)
　　　　　　Plaintiffs,　　　)
　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　)　　　　2:13-cv-00039-JAW
　　　　　　　　　　　　　　)
PAUL KENDRICK,　　　　　　　)
　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　 )

**ORDER DENYING DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

In this defamation action, Paul Kendrick has moved for partial summary judgment, arguing that no punitive damages may be awarded against him as a matter of law. At this stage, the Court is required to view the much-disputed record in the light most favorable to the Plaintiffs and, having done so, concludes that there are genuine issues of material fact that call for jury resolution and preclude summary judgment on the issue of punitive damages.

**I.　　STATEMENT OF FACTS**

**A.　　Procedural History**

On February 6, 2013, Hearts with Haiti, Inc. and Michael Geilenfeld filed a complaint against Paul Kendrick, asserting claims for defamation, false light invasion of privacy, and tortious interference with advantageous economic relationships. *Verified Compl. and Demand for Jury Trial* ¶¶ 89-105 (ECF No. 1) (*Compl.*). The Plaintiffs seek various forms of relief, including punitive damages.

*Id.* ¶¶ 106-08. On March 8, 2013, Mr. Kendrick answered the Complaint, denying its essential allegations and asserting several defenses. *Defenses and Answer* at 1 (ECF No. 8) (*Answer*).

On May 9, 2014, Mr. Kendrick filed a sealed motion for partial summary judgment with a supporting statement of material facts. *Def.'s Mot. for Partial Summ. J.* (ECF No. 192) (*Def.'s Mot.*); *Def.'s Local Rule 56(b) Supporting Statement of Material Facts* (ECF No. 193) (DSMF). On June 4, 2014, the Plaintiffs responded to Mr. Kendrick's motion and supporting statement of material facts, and filed their statement of additional facts. *Pls.' Opp'n to Def.'s Mot. for Partial Summ. J.* (ECF No. 207) (*Pls.' Opp'n*); *Pls.' Mot. to Seal* Attach. 1 *Pls.' Opposing Statement of Material Facts* (ECF No. 208) (PRDSMF; PSAMF). On June 18, 2014, Mr. Kendrick replied to the Plaintiffs' response and statement of additional facts. *Def.'s Reply Mem. to Pls.' Opp'n to Def.'s Mot. for Partial Summ. J.* (ECF No. 211) (*Def.'s Reply*); *Def.'s Mot. to File Under Seal* Attach. 1 *Local Rule 56(d) Reply Statement of Material Facts Including Local Rule 56(e) Resps. to Reqs. to Strike* (ECF No. 212) (DRPSAMF).

### B. Factual Background Relevant to Issues on Summary Judgment

#### 1. Summary Judgment Praxis

In accordance with "conventional summary judgment praxis," the Court recounts the facts in the light most favorable to the Plaintiffs' theory of the case, "consistent with record support." *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002).

In the context of this bitterly contested case, the Court is obligated under the law to view the facts in the light most favorable to the non-moving parties, namely the Plaintiffs. Mr. Kendrick may view the Court's acceptance of the Plaintiffs' versions of contested facts as the Court taking sides in their dispute in favor of the Plaintiffs and against him. It is not doing so. The Court is not in a position to know who is right based on the numerous facts the parties are contesting. Instead, at this point, the Court is only resolving whether a jury gets to decide if the facts would justify the imposition of punitive damages, provided the jury resolves the contested facts in favor of the Plaintiffs. The Court assures the parties, particularly Mr. Kendrick, that in following the standard "summary judgment praxis," it is not prejudging the case.

Most prominent among the allegations the parties strenuously contest is the manifestly grave question of whether Mr. Geilenfeld has ever sexually abused anyone, particularly children in Haiti. Mr. Geilenfeld emphatically denies ever having sexually abused anyone and he says that he directly informed Mr. Kendrick of this fact. PSAMF ¶ 18. In his reply, Mr. Kendrick denied that this statement was true. DRPSAMF ¶ 18. For Mr. Geilenfeld, the allegations strike at the core of his work in Haiti, and presumably, the implications of these allegations motivated this lawsuit. For Mr. Kendrick, his allegations strike at the core of his defense.

## 2.    General Background[1]

Michael Geilenfeld is the founder and Executive Director of St. Joseph Family of Haiti, "which operates a network of nonprofit institutions that provide residence, room and board, formal education, and religious education to disabled and disadvantaged Haitian children." *Compl.* ¶ 7. St. Joseph Family "operates St. Joseph's Home for Boys, Wings of Hope, Trinity House, Lekòl Sen Trinite, and the Resurrection Dance Theater of Haiti." *Id.* ¶ 8.

Hearts with Haiti is a North Carolina nonprofit corporation located in Raleigh, North Carolina. *Id.* ¶ 1. Hearts with Haiti was and is a substantial financial contributor to the St. Joseph Homes. DSMF ¶ 5; PRDSMF ¶ 5. Hearts with Haiti solicits and accepts donations throughout the United States.[2] DSMF ¶ 8; PRDSMF ¶ 8.

Paul Kendrick has lived in Freeport, Maine since December 2007; before that, he lived in Cumberland, Maine and Portland, Maine. *Pls.' Third Mot. for Contempt and Sanctions Against Def. for Repeated Violation of the Ct.'s Orders* Attach. 2

---

[1]    Neither party's statement of material facts covers certain key background facts, such as Mr. Geilenfeld's relationship to St. Joseph's Homes and Hearts with Haiti. *See* DSMF ¶¶ 1-8; PSAMF ¶¶ 1-160. To provide context, the Court gleaned this information from their statements and the record materials. These record materials include the Verified Complaint, which serves as an affidavit of Mr. Geilenfeld and Shelley C. Wiley, President of the Board of Directors of Hearts with Haiti, Inc. *See Compl.* at 22-23.

[2]    Mr. Kendrick's paragraph 8 reads: "Hearts with Haiti solicits and accepts donations from individuals and organizations throughout the United States." DSMF ¶ 8. The Plaintiffs interposed a qualified response, stating that "Hearts with Haiti does not solicit donations from individuals and organizations in all 50 states within the United States but does accept donations from individuals and organizations in many states." PRDSMF ¶ 8.

Mr. Kendrick cites paragraphs in the Verified Complaint in support of paragraph 8. DSMF ¶ 8. The Court reviewed the cited portions of the Complaint and notes that the Complaint states that Hearts with Haiti "has organized thousands of volunteers from throughout the United States to participate in the mission of St. Joseph Family of Haiti." *Compl.* ¶ 42. To volunteer is to donate time, and therefore, the Court overrules the Plaintiffs' qualified response.

*Videotaped Dep. of Paul Kendrick* 21:14-23 (ECF No. 141) (Feb. 25, 2014) (*Kendrick Dep. Tr.*). He works as a financial advisor for RBC Wealth Management. *Id.* 20:23-21:13.

Cyrus Sibert is a journalist, *id.* 38:10-13, who works at least some of the time in Haiti. *See id.* 34:22-23. Mr. Sibert and Mr. Kendrick have known each other since approximately 2008. *See id.* 37:11-15, 38:23-39:6, 41:14-18.

### 3. Mr. Kendrick Receives Communications Alleging Abuse by Mr. Geilenfeld

Mr. Kendrick has never visited St. Joseph's Home for Boys, Wings of Hope, Trinity House, or Lekòl Sen Trinite. PSAMF ¶ 1; DRPSAMF ¶ 1. Before January 31, 2011, Mr. Kendrick had never met or communicated with Michael Geilenfeld or any employee, volunteer, or staff member of St. Joseph's Family of Haiti. PSAMF ¶ 2; DRPSAMF ¶ 2.[3] Nor had Mr. Kendrick ever met or communicated with any Hearts of Haiti board member or benefactor of Mr. Geilenfeld, St. Joseph's Family of Haiti, or Hearts with Haiti. PSAMF ¶¶ 4-5; DRPSAMF ¶¶ 4-5.[4,5]

---

[3]     In their paragraph 3, the Plaintiffs claim that "[a]s of January 31, 2011, [Mr.] Kendrick had never met nor communicated with any current or former resident, employee, volunteer, or staff member of St. Joseph's Family of Haiti." PSAMF ¶ 3 (citing *Compl.* ¶ 47). Mr. Kendrick denies this assertion, claiming that he "had by then already communicated directly with two men who told him that they were victims of sexual abuse by Mr. Geilenfeld." DRPSAMF ¶ 3. The Court does not credit the Plaintiffs' paragraph 3 because neither Mr. Geilenfeld nor Ms. Wiley can make a categorical assertion of what Mr. Kendrick has or has not done based on their own personal knowledge. FED. R. CIV. P. 56(c)(4).

[4]     Mr. Kendrick's paragraph 1 states that "[i]n January of 2011, Cyrus Sibert informed [Mr.] Kendrick that Mr. Sibert had interviewed victims who had been sexually abused by . . . Michael Geilenfeld." DSMF ¶ 1. The Plaintiffs object to Mr. Kendrick's paragraph 1 on the basis that it is supported by inadmissible hearsay evidence. PRDSMF ¶ 1. The Court overrules the Plaintiffs' hearsay objection; Mr. Kendrick's report of what Mr. Sibert told him is being offered, not for the truth of the matter asserted, but to illustrate what information Mr. Kendrick knew. The Plaintiffs also deny paragraph 1, citing portions of the record too numerous to recite here. *See id.* The record evidence cited by the Plaintiffs, viewed in the light most favorable to them, suggests that Mr.

On January 6, 2011, Mr. Kendrick received an email from Mr. Sibert, explaining that Mr. Sibert had received a call from Bonnie Elam, a woman in North Carolina, who "told [Mr. Sibert] about a pedophil[e] situation in the capital," that the "abuser is powerful with one million dollars a year," and that she would send him "an email [] with all information." PRDSMF ¶ 1(a). Mr. Kendrick spoke with Ms. Elam, and she informed him that she was providing documents to Mr. Sibert but not to Mr. Kendrick. *Id.* ¶ 1(b).

On January 31, 2011, Mr. Kendrick received an email from Mr. Sibert, referencing a 20-year old statement of "Mary Kohl Hass and Michelle Finch" that Mr. Sibert had received from Ms. Elam and published on his blog. *Id.* ¶ 1(c). This statement alleged that Mr. Geilenfeld had abused the two women in 1990 and 1991. *See Pls.' Resp. in Opp'n to Def.'s Mot. to Retain Classified Designation of Certain Docs.* Attach. 1 *Def.'s Resp. to Pl.'s First Set of Interrogs.* ¶ 3 (ECF No. 60) (*Interrog.*).

### 4. Mr. Kendrick Begins to Campaign Against Mr. Geilenfeld and Hearts with Haiti on January 31, 2011

Kendrick's recollection is mistaken. Because the Court is required to view the facts in the light most favorable to the Plaintiffs, the Court has not included this contested fact in its recitation.

[5] Mr. Kendrick's paragraph 2 states that "[i]n January of 2011, [Mr.] Kendrick talked to two of these victims who told [Mr.] Kendrick that [Mr.] Geilenfeld had sexually abused them." DSMF ¶ 2. The Plaintiffs object to Mr. Kendrick's paragraph 2 on the basis that it is supported by inadmissible hearsay evidence. PRDSMF ¶ 2. The Court overrules the Plaintiffs' hearsay objection; the statement is being offered to show the basis of Mr. Kendrick's belief, not what Mr. Geilenfeld did. The Plaintiffs also deny Mr. Kendrick's paragraph 2, citing portions of the record too numerous to recite here. *See id.* Viewed in the light most favorable to the Plaintiffs, the record evidence does controvert Mr. Kendrick's assertion. Again, under the standard summary judgment praxis, the Court has not included Mr. Kendrick's paragraph 2.

Starting on January 31, 2011, and for a long time thereafter, Mr. Kendrick regularly sent materials to people and organizations associated with Mr. Geilenfeld, including those who supported Mr. Geilenfeld, telling them that Mr. Geilenfeld is a dangerous man who sexually abused children while serving as Executive Director of the St. Joseph's Homes for children in Port-au-Prince. DSMF ¶ 3; PRDSMF ¶ 3.[6] These accusations were factually false; Mr. Geilenfeld has never sexually abused any person. PRDSMF ¶ 3; PSAMF ¶ 18; DRPSAMF ¶ 18.[7]

On January 31, 2011, Mr. Kendrick identified St. Theresa's Parish of Milwaukee, Wisconsin as a supporter of Mr. Geilenfeld. PSAMF ¶ 6; DRPSAMF ¶ 6. That day, Mr. Kendrick emailed officials of St. Theresa's Parish, claiming that "[t]here are substantiated reports that [Mr. Geilenfeld] is sexually abusing children"

---

[6]     The Plaintiffs interpose a qualified response, providing voluminous record citations for the proposition that these communications were, in fact, false. PRDSMF ¶ 3. Unfortunately, a great many of the sources the Plaintiffs cite are not in the summary judgment record. *E.g.*, "HWH 2-3; HWH 4; HWH 5," etc. However, after reviewing the record citations that are in the summary judgment record and viewing the evidence in the light most favorable to the Plaintiffs, the Court accepts the Plaintiffs' contention only for purposes of the motion for summary judgment (i.e., that these allegations were false).

[7]     Plaintiffs' paragraph 18 states the following: "[Mr.] Geilenfeld has never sexually abused any person and communicated that fact directly to [Mr.] Kendrick on February 3, 2011." PSAMF ¶ 18. Mr. Kendrick denies the Plaintiffs' paragraph 18. DRPSAMF ¶ 18 (citing *Pls.' Mot. to Seal* Attach. 7 *Videotaped Dep. of S.L.* 60:5-63:15 (ECF No. 208) (*S.L. Dep. Tr.*) and *Def.'s Mot. to File Under Seal* Attach. 3 *Videotaped Dep. of D.J.B.* 27:25-30:22 (ECF No. 212) (*D.J.B. Dep. Tr.*)). However, the Plaintiffs have supported their assertion with competent summary judgment evidence. PSAMF ¶ 18 (citing *Pls.' Opposing Statement of Material Facts* Attach. 6 *RE: I want to speak with U.S. Citizen, Michael Geilenfeld* (ECF No. 202) (*Feb. 3 Geilenfeld Emails*); *Pls.' Objection and Mem. in Opp'n to Def.'s Special Mot. to Dismiss* Attach. 1 *Pl. Michael K. Geilenfeld's Decl.* (ECF No. 24) (*Geilenfeld's First Decl.*); *Pls.' Objection and Opp'n to Def.'s Mot. for Leave to Substitute* Attach. 2 *Pl. Michael K. Geilenfeld's Second Decl.* (ECF No. 36) (*Geilenfeld's Second Decl.*)). The Court is required to view all the evidence in the light most hospitable to, and resolve factual disputes in favor of, the non-moving party. *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011). So viewed, the evidence establishes that Mr. Geilenfeld "never sexually abused any person or engaged in a sexual act with anyone under the age of eighteen." *Geilenfeld's Second Decl.* ¶ 7. Viewing the evidence in the light most favorable to the Plaintiffs, the Court accepts Plaintiffs' paragraph 18.

and inquiring as to why the Parish would be "sponsoring Michael Geilenfeld[.]" PSAMF ¶ 7; DRPSAMF ¶ 7.

During his deposition on February 25, 2014, Mr. Kendrick claimed that these "substantiated reports" referred to "two victims" in Haiti who told him over the phone that they had been sexually abused by Mr. Geilenfeld. PSAMF ¶ 8; DRPSAMF ¶ 8.[8] During his deposition, however, Mr. Kendrick could not recall who the two alleged victims were, the substance of their allegations, when they were allegedly abused, other than that "they were minor children," or whether he ever spoke to them again. PSAMF ¶ 9; DRPSAMF ¶ 9.[9]

Mr. Kendrick also identified Hearts with Haiti board member, Rolvix Patterson, M.D., as a supporter of Michael Geilenfeld and St. Joseph's Family. PSAMF ¶ 10; DRPSAMF ¶ 10. Mr. Kendrick emailed Dr. Patterson with the following "Message for Michael Geilenfeld":

> We know you are raping innocent Haitian children.
>
> For years, others have enabled your abuse of children.
>
> We know what you are doing.

---

[8] The Plaintiffs' paragraph 8 originally contained the following language: "[Mr.] Kendrick *later* claimed in his deposition . . . ." PSAMF ¶ 8 (emphasis added). Mr. Kendrick interposed a qualified response, asserting that "[t]he Plaintiffs' record citations are that the Defendant did not 'later claim' in his deposition that his statements were substantiated; rather, he testified directly to the relevant communications." DRPSAMF ¶ 8. The Court has reviewed the deposition citations and agrees with Mr. Kendrick's assertion; it has therefore eliminated—in excess of caution—the term "later."

[9] The Plaintiffs' paragraph 9 originally contained the following language: "[Mr.] Kendrick cannot recall who the two alleged victims were . . . ." PSAMF ¶ 9. Mr. Kendrick interposed a qualified response, asserting that while he "could not recall at his deposition the names of the two men," he had remembered in previous answers to interrogatories. DRPSAMF ¶ 9 (citing *Interrogs.* ¶¶ 3-4). The Court reviewed the record citations and notes that Mr. Kendrick did in fact describe "personally interview[ing]" two victims, and provided their names in his answers to the Plaintiffs' interrogatories. *Id.* In light of this fact, the Court has circumscribed the Plaintiffs' paragraph 9 by noting the particular instance where he could not recall such information (his February 2014 deposition), and deems the paragraph, as altered, admitted.

We are going to stop you no matter how long it takes.

Whenever you bring your dance company to the U.S., we will blitz the local media with the testimony of the boys you have raped.

It's over.  You are pathetic.

Paul Kendrick

PSAMF ¶ 11; DRPSAMF ¶ 11.

### 5. Mr. Kendrick Understands His Information is Incomplete but Continues to Campaign Against Mr. Geilenfeld

#### a. Emails in Early February 2011

On February 1, 2011, Mr. Kendrick emailed Bonnie Elam with the subject line "Not enough info":

I and other advocates can do little to nothing to get the word out about Geilenfeld until we have a complete understanding of what he has done to children.

The women's testimony that Cyrus has published is 20 years old. Have the two women spoken directly to Cyrus?

Cyrus mentioned that four individuals have told him they were abused at St. Joseph's.

Abused by whom?  Geilenfeld or others?

Were they sexually abused?

What sexual acts were inflicted upon them?

How old were they?  Were they under 18?

Until we can speak with authority that Geilenfeld is a child molester, there is not much we can do.

It's tough enough these days to get a U.S. reporter's attention focused on these matters, so it is important that I and others here in the U.S. are able to provide lots of facts and witnesses for the reporters we know to speak with.

As it stands, there's not enough to work with.

Paul

PSAMF ¶ 12; DRPSAMF ¶ 12.

That same day, Mr. Kendrick also identified St. Cecilia's Parish in Boston, Massachusetts as a sponsor of Mr. Geilenfeld and St. Joseph's Family of Haiti. PSAMF ¶ 13; DRPSAMF ¶ 13. He then emailed parish officials, claiming that "[t]here are substantiated reports that [Mr.] Geilenfeld is sexually abusing children in Haiti" and inquiring as to why the Parish would be "sponsoring Michael Geilenfeld[.]" PSAMF ¶ 14; DRPSAMF ¶ 14.

On February 3, 2011, Mr. Kendrick emailed Mr. Geilenfeld, St. Theresa's Parish, St. Cecilia's Parish, and Dr. Patterson. PSAMF ¶ 15; DRPSAMF ¶ 15. He introduced himself as "a long time advocate for the protection of children" and explained that:

> Due to the publicity surrounding [a former sex abuse matter that Mr. Kendrick worked on], I have received a significant amount of information and testimony in which is alleged that you, Mr. Geilenfeld, are sexually abusing children in your case. I would like to speak with you and your NGO's board of directors about what I have learned.

PSAMF ¶ 15; DRPSAMF ¶ 15. Later that day, Mr. Geilenfeld responded: "I will be happy to speak with you," providing Mr. Kendrick with his phone number and the contact information for two people associated with Mr. Geilenfeld's organization, and concluded by stating "Peace and all that is good! -----Michael." PSAMF ¶ 16; DRPSAMF ¶ 16. That same day, Mr. Kendrick responded to Mr. Geilenfeld's email:

> Let's start here:
>
> Have you ever engaged in a sexual act of any kind with a minor (under the age of 18)?

PSAMF ¶ 17; DRPSAMF ¶ 17.  Mr. Geilenfeld wrote back to Mr. Kendrick, denying

that he had ever sexually abused any person.  PSAMF ¶ 18; DRPSAMF ¶ 18.[10]  Mr.

Kendrick declined Mr. Geilenfeld's invitation to speak with him by phone, and in

fact, has never spoken to Mr. Geilenfeld.  PSAMF ¶ 19; DRPSAMF ¶ 19.

On February 10, 2011, Mr. Kendrick reported to Mr. Sibert that he had "just

spoke on the phone with [D.J.B.]" and thanked Mr. Sibert for introducing D.J.B. to

him.  PSAMF ¶ 20; DRPSAMF ¶ 20.  Before this date, Mr. Kendrick had never

communicated with D.J.B. or any individual whom he claimed was sexually abused

by Mr. Geilenfeld.  PSAMF ¶ 21; DRPSAMF ¶ 21.[11]

---

[10]    *See supra* note 7.

[11]    Mr. Kendrick denies the Plaintiffs' paragraph 21.  DRPSAMF ¶ 21 (citing *Interrog.* ¶ 4).  Mr. Kendrick supports his denial with a citation to his response to one of the Plaintiffs' interrogatories, in which he stated, in relevant part:

> In January and February of 2011, Mr. Sibert informed me that he had interviewed two victims: [D.J.B.] and [S.L.].  Mr. Sibert gave me contact information for these two individuals and I called and personally interviewed them.  They both described having been sexually abused by Mr. Geilenfeld.

*Interrog.* ¶ 4.  The Plaintiffs' record citation in support of paragraph 21 is email correspondence between Mr. Kendrick and Mr. Sibert.  *Pls.' Mot. to Seal* Attach. 2 *UNREDACTED PK 30* (ECF No. 208).  That document contains an email sent from Cyrus Sibert to Mr. Kendrick on February 9, 2011, in which Mr. Sibert states, in relevant part: "Also, I call[ed] one of the victim[s] named [D.J.B.]. . . . You can call [D.J.B.] at [phone number].  [D.J.B.] speaks English."  *Id.*  On February 10, 2011, Mr. Kendrick responded to Mr. Sibert, noting that "I just spoke on the phone with [D.J.B.]," and concludes by saying "than[k] you for introducing [D.J.B.] to me."  *Id.*

Viewing the facts in the light most favorable to the Plaintiffs, the Court concludes that paragraph 21 is supported by the record.  The email correspondence between Mr. Kendrick and Mr. Sibert supports the conclusion that Mr. Kendrick did not speak to D.J.B. until February 10, 2011.  The email correspondence also supports the proposition that Mr. Kendrick had not spoken to the second alleged victim, S.L., before that time, as the two men discuss the victims of Mr. Geilenfeld's alleged sex abuse broadly—not just limited to D.J.B.  One reasonable inference is that if Mr. Kendrick had spoken to S.L. before this time, the conversation would have been mentioned or at least hinted at in the emails.  Mr. Kendrick's citation, that he was informed of two victims by Mr. Sibert in "January and February of 2011," and that he then interviewed these two victims without explicitly stating when the interviews took place, does not generate a question of fact as to whether Mr. Kendrick communicated with alleged victims before February 10, 2011.  Additionally, Mr. Kendrick has admitted the Plaintiffs' paragraph 24, which states that "[o]n May 5, 2011, [Mr.] Sibert e-mailed [Mr.] Kendrick that a man named S.L. called him because S.L. had 'heard Geilenfeld under

### b.     Emails on May 13 and 14, 2011

On May 5, 2011, Mr. Sibert emailed Mr. Kendrick, explaining that a man named S.L. called Mr. Sibert because S.L. had "heard Geilenfeld under pressure." PSAMF ¶ 24; DRPSAMF ¶ 24.  Before May 5, 2011, Mr. Kendrick had never heard of or communicated with an individual named S.L.  PSAMF ¶ 25; DRPSAMF ¶ 25.[12]

On May 13, 2011, Mr. Kendrick received an email from Valerie Dirksen, claiming that Mr. Geilenfeld ran a "massage program" at St. Joseph's Family for "men to give massages to boys" and favors certain children as "princes."  PSAMF ¶ 26; DRPSAMF ¶ 26.  On May 14, 2011, Mr. Kendrick questioned Ms. Dirksen about whom she had received the information from: "What is the source(s) of the info in these emails?"  PSAMF ¶ 27; DRPSAMF ¶ 27.  Neither Mr. Kendrick nor Ms. Dirksen knows the source of this information.  PSAMF ¶¶ 28-29; DRPSAMF ¶¶ 28-29.  Mr. Kendrick has acknowledged that he "wanted to know more," *Kendrick Dep. Tr.* 102:13, about the credibility, validity, or veracity of the allegations communicated to him by Ms. Dirksen.  PSAMF ¶ 31; DRPSAMF ¶ 31.[13,14]  However,

---

pressure.'"  PSAMF ¶ 24; DRPSAMF ¶ 24.  This constitutes further inferential evidence that Mr. Kendrick did not speak with S.L. before February 10, 2011.  Again, as the Court is required to view contested matters in the light most favorable to the Plaintiffs, the Court deems paragraph 21 admitted under Local Rule 56(f), (g).

[12]     The Plaintiffs cite Mr. Kendrick's deposition testimony in support of this statement.  PSAMF ¶ 25 (citing *Pls.' Mot. to Seal* Attach. 3 *Fwd: GEILENFELD FILE* (ECF No. 208) and *Kendrick Dep. Tr.* 43:6-25, 44:1-8, 51:12-25, 52:1-7, 53:19-25, 54:1-25, 55:1-11).  Mr. Kendrick denies this assertion, citing his interrogatory responses.  DRPSAMF ¶ 25 (citing *Interrog.* ¶ 4).  In his deposition, Mr. Kendrick said that he could not remember which alleged victims he spoke to in 2011.  In his interrogatory response, his memory improved, and he recalled speaking to S.L. in January or February of 2011.  However, viewing the evidence in the light most favorable to the Plaintiffs, the Court infers from the deposition testimony that Mr. Kendrick did not speak with S.L. before May 5, 2011.  The Court deems the Plaintiffs' paragraph 25 admitted under Local Rule 56(f), (g).

[13]     The Plaintiffs' paragraph 31 states the following: "[Mr.] Kendrick admitted being concerned about the credibility, validity, or veracity of the allegations communicated to him by [Ms.] Dirksen."

he does not recall taking any steps to determine for himself whether the allegations recited by Ms. Dirksen, whom he has never met, were credible. PSAMF ¶¶ 33-34; DRPSAMF ¶¶ 33-34. Ms. Dirksen also told Mr. Kendrick that Mr. Geilenfeld has "attacked [children] with voodoo magic" and that "voodoo is one of the many ways MG and his posse has controlled these guys through the years. They believe he has very strong powers." PSAMF ¶ 32; DRPSAMF ¶ 32.

The next day, May 14, 2011, after questioning the source(s) of the information communicated to him by Ms. Dirksen, Mr. Kendrick emailed at least one benefactor and financial supporter of Mr. Geilenfeld and St. Joseph's Family, claiming that: (1) children at St. Joseph's Family watch and act out "Playboy" videos with Mr. Geilenfeld; (2) Mr. Geilenfeld forces children to lick vodka off of his body; (3) that Mr. Geilenfeld takes children to the Dominican Republic to engage in

---

PSAMF ¶ 31. Mr. Kendrick denied paragraph 31, arguing that the relevant section of his deposition "does not contain an admission concerning credibility, validity or veracity." DRPSAMF ¶ 31 (citing *Kendrick Dep. Tr.* 102:10-13). Thus, the parties vary in their characterization of the same lines in Mr. Kendrick's deposition: "[Question:] Do you recall being concerned about the credibility or validity or veracity of those kinds of allegations? [Answer:] I wanted to know more, yes." Even viewing the record in the light most favorable to the Plaintiffs, the Court agrees with Mr. Kendrick that his statement does not reflect an admission about his subjective assessment of the "credibility, validity, or veracity" of the allegations at the time; rather, it is an acknowledgment that—whatever his opinion—he wanted to have more information about the statements to help him better evaluate their "credibility, validity, or veracity." The Court modifies paragraph 31 accordingly and deems the paragraph, as altered, admitted under Local Rule 56(f), (g).

[14] The Plaintiffs' paragraph 30 states the following: "[Mr.] Kendrick admitted that it is important to know the source(s) of this information." PSAMF ¶ 30 (citing *Kendrick Dep. Tr.* 101:20-25, 102:1-3). Mr. Kendrick denies the assertion. DRPSAMF ¶ 30. The Court agrees with Mr. Kendrick that the cited lines of deposition testimony do not indicate what Mr. Kendrick does or does not think is or was important. The Court does not credit the Plaintiffs' paragraph 30.

inappropriate sexual behavior with him; and (4) Mr. Geilenfeld bribes and threatens neighbors not to "talk." PSAMF ¶ 35; DRPSAMF ¶ 35.[15]

Mr. Kendrick later claimed on at least more than one occasion that Valerie Dirksen was the source of the information in this email. PSAMF ¶ 36; DRPSAMF ¶ 36. However, Ms. Dirksen denied that she was the source of this information or provided this information to Mr. Kendrick. PSAMF ¶¶ 37-38; DRPSAMF ¶¶ 37-38.[16,17] Ms. Dirksen, like Mr. Kendrick, has never visited any of the homes within

---

[15]    Mr. Kendrick denies that the Plaintiffs' citation contained in paragraph 35 confirms that the individuals who received the email were benefactors of Mr. Geilenfeld, St. Joseph's Family, and Hearts with Haiti. DRPSAMF ¶ 35. This is true. On its face, the May 14, 2011 email was sent to Patrick Hamrick, junni at St. Cecelia in Boston, and a Paul Kellen. *Pls.' Opposing Statement of Material Facts* Attach. 14 *Kendrick Dep.* Ex. 12 (ECF No. 202). However, in Plaintiffs' paragraph 66, the Plaintiffs identify Mr. Hamrick as a benefactor of Mr. Geilenfeld and St. Joseph's Family, and as a board member of Hearts with Haiti, which are facts that Mr. Kendrick admitted. PSAMF ¶ 66; DRPSAMF ¶ 66. The record does not otherwise identify Mr. Unni as a benefactor and financial supporter, nor does it identify Mr. Kellen. The Court has amended Plaintiffs' paragraph 35 to reflect that at least one of the listed recipients of the May 14, 2011 email was a benefactor and financial supporter of Mr. Geilenfeld and St. Joseph's Family.

[16]    The Plaintiffs' paragraph 37 claims that "[Ms.] Dirksen denied that she was the source of the information in [this email]." PSAMF ¶ 37. Mr. Kendrick interposes a qualified response, arguing that Ms. Dirksen presented herself as conveying the information from the victims to Mr. Kendrick. DRPSAMF ¶ 37 (citing *Pls.' Mot. to Seal* Attach. 9 *Dep. of Valerie Dirksen* 80:14-22 (ECF No. 208) (*Dirksen Dep. Tr.*)). Ms. Dirksen had the following exchange with her questioner:

> Q.    Did that information in Exhibit 10 come from you?
> A.    No.
> Q.    Do you know, have any idea of where it came from?
> A.    It would be only speculative on my part. It could come from any number of people.
> Q.    Had you ever heard the allegations that are depicted in Exhibit 10?
> A.    Yes.
> Q.    Where, and from whom?
> A.    Multiple people.
> Q.    From whom?
> A.    From I would call victims, boys that have lived in the house, as well as other people . . . .

*Dirksen Dep. Tr.* 80:7-21. Reading this testimony in the light most favorable to the Plaintiffs, the Court concludes that Ms. Dirksen had heard the allegations, but she was not the source of Mr. Kendrick's knowledge of them. The Court adjusted the Plaintiffs' paragraph 37 to be more precise, but otherwise deems its substance admitted under Local Rule 56(f), (g).

St. Joseph's Family.  PSAMF ¶ 39; DRPSAMF ¶ 39.  She has never traveled to the country of Haiti and has never met E.M., S.L., or D.J.B.  PSAMF ¶¶ 40-41; DRPSAMF ¶¶ 40-41.

No individual has testified that he or she is the source of the information conveyed in the email of May 14, 2011.  PSAMF ¶ 44; DRPSAMF ¶ 44.[18]

### c.    Email on May 28, 2011

On May 28, 2011, Mr. Kendrick emailed multiple benefactors of Mr. Geilenfeld, St. Joseph's Family, and Hearts with Haiti, claiming that "Michael Geilenfeld's Haitian supporters say they will kill anybody behind this advocate who is causing 'trouble' for Geilenfeld."  PSAMF ¶ 46; DRPSAMF ¶ 46.  Mr. Kendrick cannot recall who or what this information refers to.  PSAMF ¶ 47; DRPSAMF ¶ 47.[19]

### d.    Mr. Kendrick Speaks With E.M. in June 2011

On June 4, 2011, Mr. Kendrick emailed Mr. Sibert, explaining that he received a call from an individual living in Massachusetts named E.M., who claimed to be "a sex abuse victim of Geilenfeld and has lots to tell."  PSAMF ¶ 49;

---

[17]    Mr. Kendrick also interposes a qualified response to the Plaintiffs' paragraph 38.  DRPSAMF ¶ 38.  Reading the deposition testimony in the light most favorable to the Plaintiffs, the Court does not credit the qualification.

[18]    The Plaintiffs' paragraph 45 asserts, as fact, that "[Mr.] Kendrick had no basis, other than his own imagination, for the information he conveyed to multiple benefactors of Geilenfeld, St. Joseph's Family, and Hearts with Haiti."  PSAMF ¶ 45.  This "fact" is an argument, not properly presented in a statement of material facts.  *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) ("the nonmoving party [may not] rest[] merely upon conclusory allegations").  The Court will consider in due course whether the historical facts, viewed in the light most favorable to the Plaintiffs, demonstrate that Mr. Kendrick had a reasonable basis on which to make his accusations against Mr. Geilenfeld.

[19]    The Plaintiffs' paragraph 48 makes substantially the same legal argument as paragraph 45.  The Court does not credit paragraph 48 as a fact.  *See supra* note 18 (discussing PSAMF ¶ 45).

DRPSAMF ¶ 49.   Mr. Kendrick inquired of Mr. Sibert: "Do you know this individual?  Should I know him?"  PSAMF ¶ 49; DRPSAMF ¶ 49.

As of June 20, 2011, Mr. Kendrick claimed to have communicated with three alleged victims: S.L., D.J.B., and E.M.  PSAMF ¶ 50; DRPSAMF ¶ 50.  On that date, Mr. Kendrick emailed Mr. Sibert, explaining that he was "hearing over and over again from people who know of the St. Joseph's Homes that 'these are old allegations.'"  PSAMF ¶ 51; DRPSAMF ¶ 51.  He confided in Mr. Sibert: "Please, don't take this the wrong way[] [b]ut, I am curious, are there more recent victims for the investigator to interview?"  PSAMF ¶ 51; DRPSAMF ¶ 51.

### 6.   Mr. Kendrick's Campaign Continues in 2011

#### a.   Emails in July 2011 to Rick Barger and Bill Nathan

On July 10, 2011, Mr. Kendrick emailed Mr. Geilenfeld: "You can tell your jerk of a houseguest, Pastor Rick [Barger], that no matter how hard he tries to protect and defend you, you will be indicted, arrested, convicted and imprisoned for child sex abuse."  PSAMF ¶ 52; DRPSAMF ¶ 52; PSAMF ¶ 100; DRPSAMF ¶ 100.

Bill Nathan was in the care of St. Joseph's Family beginning at eight years of age.  *Additional Attachs.* Attach. 6 (ECF No. 204) (*Nathan Decl.*).  By 2011, he had risen to become the director of St. Joseph's Home for Boys.  *Id.*  On July 18, 2011, Mr. Kendrick emailed Mr. Nathan:

> Dear Mr. Nathan,
>
> Word has it that you are engaging in sexual relations with Michael Geilenfeld.
>
> Perhaps this is why you defend Geilenfeld against any and all allegations of child abuse.

> You should know that Geilenfeld has a big mouth. He uses people for his own purposes.
>
> Paul Kendrick

PSAMF ¶ 53; DRPSAMF ¶ 53. Mr. Kendrick has forgotten the source of this information he conveyed to Mr. Nathan. PSAMF ¶ 54; DRPSAMF ¶ 54.[20] Mr. Kendrick intended his communication to Mr. Nathan to "be shocking and upsetting." PSAMF ¶ 56; DRPSAMF ¶ 56.

The next day, July 19, 2011, Mr. Kendrick emailed Mr. Nathan: "For many, many years, you have looked the other way and said nothing while little boys are raped and sodomized by Geilenfeld . . . [a]re you so in love with Geilenfeld that you do nothing while he sexually abuses children?" PSAMF ¶ 57; DRPSAMF ¶ 57. Mr. Kendrick's basis for this statement was his perception that Mr. Nathan had worked at St. Joseph's Family for many years, had a good job, and was paid well. PSAMF ¶ 58; DRPSAMF ¶ 58.[21]

> On July 23, 2011, Mr. Kendrick emailed Mr. Nathan:
>
> Dear Mr. Nathan,
>
> You should consult with a reputable lawyer to determine if you will be arrested, along with Michael Geilenfeld, for child sex abuse charges.
>
> People in the United States are saying that you, too, have sexually abused minor children.
>
> When Geilenfeld is arrested and removed from the St. Joseph's Homes, child protection advocates will urge that you also be arrested and removed from any employment with St. Joseph's Homes.

---

[20] The Plaintiffs' paragraph 55 makes substantially the same legal argument as paragraph 45. The Court does not credit paragraph 55 as a fact. *See supra* note 18 (discussing PSAMF ¶ 45).

[21] The Court omitted portions of the Plaintiffs' paragraph 58 that suffer from the same infirmities discussed previously with respect to Plaintiffs' paragraphs 45, 48, and 55. *See supra* notes 18-20.

You will be known in Haiti as a person who abused children for your own pleasure.

Geilenfeld is not your friend. He cares only about himself.

You can help yourself now by contacting the police.

Paul Kendrick

PSAMF ¶ 59; DRPSAMF ¶ 59.

Mr. Kendrick cannot recall what information he had or who told him that Mr. Nathan sexually abused children. PSAMF ¶ 60; DRPSAMF ¶ 60. Mr. Kendrick could not reference any information from any source stating that Mr. Nathan sexually abused children. PSAMF ¶ 61; DRPSAMF ¶ 61.[22]

### b.    Email to Federal Investigators on July 28, 2011

Special Agent Rod Khattabi of U.S. Immigration and Customs Enforcement (ICE) was involved in the U.S. Department of Homeland Security investigation that

---

[22]    Mr. Kendrick denies paragraph 61, citing his own deposition testimony. DRPSAMF ¶ 61 (citing *Kendrick Dep. Tr.* 130:17-24). In that portion of his deposition, Mr. Kendrick made the following statements:

Q.    Did you have any information to support that?
A.    I don't recall.
Q.    In fact, you didn't have any, did you, sir?
A.    I don't write things without information.
Q.    Well, then I'm asking you, sir, to make an allegation like that, what information did you have?
A.    Lots of information coming from boys who had lived at the house.
Q.    Had accused Mr. Nathan?
A.    That's correct.
Q.    Of abusing?
A.    That's correct.
Q.    Who?
A.    I don't recall.

*Kendrick Dep. Tr.* 130:14-131:3. Viewing this exchange in the light most favorable to the Plaintiffs, the Court agrees that Mr. Kendrick "could not reference any information from any source stating that [Mr.] Nathan sexually abused children." PSAMF ¶ 61. The Court deems the Plaintiffs' paragraph 61 admitted under Local Rule 56(f), (g). However, the Court does not credit the Plaintiffs' paragraph 62 for the same reasons discussed previously regarding paragraph 45. *See supra* note 18.

led to the prosecution and conviction of Douglas Perlitz for crimes of child abuse. PSAMF ¶ 23; DRPSAMF ¶ 23. On July 28, 2011,[23] Mr. Kendrick emailed Agent Khattabi and an official at the Federal Bureau of Investigation (FBI), claiming there had been "[n]o help from U.S. authorities in arresting a child abuser [referring to Mr. Geilenfeld]." PSAMF ¶ 63; DRPSAMF ¶ 63. He claimed that "not one victim in Haiti (including two victims who just turned 18 years old) has been interviewed by any branch of U.S. law enforcement." PSAMF ¶ 64; DRPSAMF ¶ 64. Mr. Kendrick cannot recall the identities of the "two victims who just turned 18 years old" or who told him that they were alleged victims of child abuse. PSAMF ¶ 65; DRPSAMF ¶ 65.

### c. Emails in August 2011 to Mr. Geilenfeld, Mr. Hamrick, and Mr. Nathan

On August 2, 2011, Mr. Kendrick emailed Mr. Geilenfeld and Mr. Hamrick with the subject line "Michael Geilenfeld – Child Sex Offender." PSAMF ¶ 66; DRPSAMF ¶ 66. The email stated:

> It is my understanding....
>
> It is a fact that American citizen, Michael Geilenfeld, will be arrested and convicted for sex crimes against Haitian children.
>
> In addition, Geilenfeld will be arrested for financial fraud. Haiti bank records are now being analyzed.
>
> Geilenfeld will first be imprisoned in Haiti.
>
> Paul T. Kendrick

---

[23] The Plaintiffs' paragraph 63 dates this email on July 28, 2013. PSAMF ¶ 63. However, the underlying document shows that it was sent on July 28, 2011. *Additional Attachs.* Attach. 2 *Fwd: No help from U.S. authorities in arresting a child abuser* (ECF No. 204).

PSAMF ¶ 66; DRPSAMF ¶ 66.  Mr. Kendrick cannot recall the basis for the information in this email.  PSAMF ¶ 67; DRPSAMF ¶ 67.  He does not know whether bank records have ever been analyzed.  PSAMF ¶ 68; DRPSAMF ¶ 68.[24]

On August 7, 2011, Mr. Kendrick emailed Mr. Geilenfeld and Mr. Hamrick with the subject line "Fwd: You are going to spend the rest of your life in prison." PSAMF ¶ 70; DRPSAMF ¶ 70.  The email read:

> Dear Mr. Geilenfeld,
>
> Your supporters are deserting you.
>
> You won't be able to bribe Homeland Security/ICE investigators who just yesterday arrested Jesse Osmun in Connecticut for the sexual abuse of children at a school in Africa.
>
> The same team of investigators who arrested and convicted Doug Perlitz in Cap Haitian are going to arrest you.
>
> Like Perlitz, who also committed crimes against children, you will be incarcerated in a U.S. federal prison for 20 years.
>
> You are an evil man, Brother Michael.  You've preyed on children who are among the poorest of the poor in the world.
>
> You are a pedophile.
>
> Paul T. Kendrick
> Freeport, Maine

PSAMF ¶ 70; DRPSAMF ¶ 70.  When asked about the source of this information, Mr. Kendrick ascribed it to "[l]ots of people" and said that "[i]t's like hearing a

---

[24]  The Plaintiffs' paragraph 69 makes substantially the same legal argument as paragraph 45. The Court does not credit paragraph 69 as a fact.  *See supra* note 18 (discussing PSAMF ¶ 45).

crowd in a stadium. Voices come from all over." PSAMF ¶ 71; DRPSAMF ¶ 71.[25,26,27]

On August 7, 2011, the same day he emailed Messrs. Geilenfeld and Hamrick, Mr. Kendrick also emailed Mr. Nathan. PSAMF ¶ 74; DRPSAMF ¶ 74. In the email to Mr. Nathan, he claimed that "[c]hild protection advocates are going to confront you while you are in the U.S. You are aiding Geilenfeld in the rape of innocent children." PSAMF ¶ 74; DRPSAMF ¶ 74. He based this statement on a "chorus of people at that time" telling him that Mr. Nathan knew that Mr. Geilenfeld was abusing children. PSAMF ¶ 75; DRPSAMF ¶ 75. However, Mr. Kendrick could not recall the name of any individual in the "chorus of people." PSAMF ¶ 76; DRPSAMF ¶ 76.[28]

On August 16, 2011, Mr. Nathan executed a notarized statement expressly denying Mr. Kendrick's allegations and declaring that he has never been physically or sexually abused by Mr. Geilenfeld, nor witnessed Mr. Geilenfeld physically or sexually abuse any person. PSAMF ¶ 78; DRPSAMF ¶ 78; *Nathan Decl.* Mr. Kendrick possessed this notarized statement and produced it in the course of

---

[25]     Mr. Kendrick interposes a qualified response, claiming that "[t]he Plaintiffs do not fairly or accurately quote from the testimony they cite." DRPSAMF ¶ 71. The Court carefully reviewed the cited testimony, and found no inaccuracy or unfairness. *See Kendrick Dep. Tr.* 140:17-23. The Court adjusted the wording of the Plaintiffs' paragraph 71 for clarity, but otherwise deems it admitted under Local Rule 56(f), (g).

[26]     In paragraph 72, the Plaintiffs claim that "[Mr.] Kendrick could not identify any of the '[v]oices [that] c[a]me from all over.'" PSAMF ¶ 72 (citing *Kendrick Dep. Tr.* 140:9-23). Mr. Kendrick denies this statement, pointing out that the questioner never asked Mr. Kendrick to identify the voices. DRPSAMF ¶ 72. Mr. Kendrick is correct, and the Court does not credit the Plaintiffs' paragraph 72.

[27]     The Plaintiffs' paragraph 73 makes substantially the same legal argument as paragraph 45. The Court does not credit paragraph 73 as a fact. *See supra* note 18 (discussing PSAMF ¶ 45).

[28]     The Plaintiffs' paragraph 77 makes substantially the same legal argument as paragraph 45. The Court does not credit paragraph 77 as a fact. *See supra* note 18 (discussing PSAMF ¶ 45).

discovery on June 25, 2013, in response to the Plaintiffs' discovery requests. PSAMF ¶ 79; DRPSAMF ¶ 79.

Also on August 16, 2011, Mr. Kendrick emailed Mr. Geilenfeld, Mr. Nathan, Mr. Hamrick, and one Renee Dietrich with the subject line "Arrest & Conviction." PSAMF ¶ 80; DRPSAMF ¶ 80. This email stated:

> Dear Mr. Geilenfeld,
>
> Your devoted follower, Renee Dietrich, is a very sick and emotionally disturbed woman.
>
> Paul T. Kendrick

PSAMF ¶ 80; DRPSAMF ¶ 80. Mr. Kendrick cannot recall the basis of the information he conveyed in this email. PSAMF ¶ 81; DRPSAMF ¶ 81.

### d. Emails Regarding Resurrection Dance Theatre and Wings of Hope Beginning in September 2011

Wings of Hope, one of three children's homes within the St. Joseph's Family, cares for numerous children with severe disabilities. PSAMF ¶ 85; DRPSAMF ¶ 85. Resurrection Dance Theatre of Haiti is a performing arts group of the St. Joseph's Family that engages in fundraising efforts in Haiti, the United States, and Canada. PSAMF ¶ 83; DRPSAMF ¶ 83. Some of the money raised in Resurrection Dance Theatre performances was used to rebuild Wings of Hope's facilities that were destroyed in the January 2010 earthquake. PSAMF ¶ 84; DRPSAMF ¶ 84. Mr. Kendrick was aware of these facts. PSAMF ¶¶ 84-85; DRPSAMF ¶¶ 84-85.

Mr. Kendrick often blind copied numerous third parties to receive his email communications. PSAMF ¶ 82; DRPSAMF ¶ 82. On many occasions, he blind

copied venues of, and people involved in organizing, the performances of Resurrection Dance Theatre. PSAMF ¶ 83; DRPSAMF ¶ 83.

For instance, on September 23, 2011, Mr. Kendrick sent an email to numerous volunteers and the host of the scheduled Resurrection Dance Theatre performance, the Racine Guild Theatre:

> Subject: Racine Guild Theatre urged to cancel performance directed by U.S. child molester
>
> Doug Instenes
> Managing Director
> Racine Guild Theatre
> Racine, Wisconsin
>
> Dear Mr. Instenes,
>
> Michael Geilenfeld, Executive Director of the Resurrection Dance Theater and the St. Joseph's Homes for Children in Port au Prince, Haiti, is credibly accused of multiple sex crimes against Haitian children.
>
> The Racine Theater Guild is hosting a performance by Geilenfeld's Resurrection Dance Theater on September 26th.
>
> I urge you to immediately cancel the performance.
>
> If you permit the performance to go on, you will, in a very real sense, be enabling the sexual abuse of children in Haiti by signaling to Geilenfeld that you are not concerned about the safety and well being at the St. Joseph's orphanages in Haiti.
>
> For more information, you can google "Michael Geilenfeld," or "Michael Geilenfeld sex abuse."
>
> Here's the testimony of a child abuse victim now living in the Boston area: http://dossiergeilenfeld.blogspot.com/2011/06/haiti-pedophil-one-more-testimony-of.html
>
> Sincerely,
> Paul Kendrick
> Freeport, Maine

PSAMF ¶ 86; DRPSAMF ¶ 86. Mr. Kendrick emailed substantially similar statements to numerous other hosts and others involved with the Resurrection Dance Theatre of Haiti fundraising tours in 2011 and 2012, urging recipients to cancel performances. PSAMF ¶ 87; DRPSAMF ¶ 87.

On October 5, 2011, Mr. Kendrick emailed numerous third parties demanding that "Alden [sic] Sommers [be informed] that Michael Geilenfeld is a child molester," in response to Mr. Sommers' "big shout out to Hearts with Haiti and its mission of supporting the vision and ministry of the St. Joseph Family in Haiti." PSAMF ¶ 88; DRPSAMF ¶ 88. Mr. Sommers was, at the time, a ten-year-old boy who had created an iPhone application and expressed his intention to donate proceeds of the app to Hearts with Haiti and St. Joseph Family of Haiti. PSAMF ¶ 89; DRPSAMF ¶ 89.

On November 4, 2011, Mr. Kendrick emailed several officials at the United States Department of State and the United States Department of Homeland Security, copying numerous third parties, with the subject line "'Keystone Cops' style investigation of child sec [sic] abuse in Haiti":

> Rod [Khattabi],
>
> This entire investigation is like an episode from the "Keystone Cops."
>
> Here we are, U.S. citizens, who, for months now, have been yelling from the top of our lungs that an American citizen is and has been sexually abusing children in Haiti.
>
> And, guess what. No one in U.S. law enforcement is doing anything to protect children and bring this sick child molester to justice
>
> There are many individuals in Haiti and the U.S. who have been waiting to be interviewed by the U.S. police about their abuse by Michael Geilenfeld.

So why is this so complicated?

Paul Kendrick
Freeport, Maine

PSAMF ¶ 90; DRPSAMF ¶ 90.

On December 1, 2011, Mr. Kendrick emailed one Robert Bryan Davis, asking him for a list of more than 100 email addresses of individuals Mr. Kendrick identified as supporting Mr. Geilenfeld and Hearts with Haiti. PSAMF ¶ 91; DRPSAMF ¶ 91. Mr. Kendrick explained that "[t]hey will prove to be invaluable." PSAMF ¶ 91; DRPSAMF ¶ 91. Mr. Davis apparently received the email addresses when Mr. Geilenfeld sent a holiday greeting to the owners' addresses without blind copying them. *See Additional Attachs.* Attach. 9 *Hallelujah joy*, at 2 (ECF No. 204). Mr. Kendrick intended to use the email addresses to disseminate allegations of child abuse to benefactors of Mr. Geilenfeld and Hearts with Haiti. PSAMF ¶ 92; DRPSAMF ¶ 92.[29]

### 7. Hearts with Haiti Investigates the Allegations; Mr. Kendrick Obstructs the Investigation

On December 6, 2011, Hearts with Haiti notified its supporters and benefactors that it was commissioning a third-party investigation into the allegations against Mr. Geilenfeld and St. Joseph's Family. PSAMF ¶ 93; DRPSAMF ¶ 93. The next day, December 7, 2011, Mr. Kendrick emailed S.L. and

---

[29] The Plaintiffs' paragraph 92 characterizes the "allegations" as "heinous false allegations." PSAMF ¶ 92 (citing *Kendrick Dep. Tr.* 181:5-25, 182:1-8). Mr. Kendrick denies paragraph 92. DRPSAMF ¶ 92. The cited portions of Mr. Kendrick's deposition, taken on their face, do not support the proposition that he "intended" to "disseminate heinous false allegations." *See Kendrick Dep. Tr.* 181:5-25, 182:1-8. The Court addresses later whether a fact-finder could reach this conclusion based on the whole summary judgment record. However, the Court adjusted the Plaintiffs' paragraph 92 to leave out the adjectives "heinous" and "false."

E.M.  PSAMF ¶ 94; DRPSAMF ¶ 94.  He informed them that "Hearts with Haiti has just announced that they have hired a private investigator to look into allegations of child sex abuse against Geilenfeld," and directed them not to cooperate with any investigator that tried to contact them.  PSAMF ¶ 94; DRPSAMF ¶ 94.[30]  The following day, December 8, 2011, Mr. Kendrick emailed Geoffrey Hamlyn, Executive Director of Hearts with Haiti; Mr. Hamrick; Rick Barger, the founder of Haitian Timoun Foundation; and other third parties, communicating that he had advised the alleged victims "not to speak with private investigators hired by you."  PSAMF ¶ 95; DRPSAMF ¶ 95.

In December 2011 or January 2012, Mr. Kendrick knew that a former FBI agent, Edward Clark of Clark Investigative Associates, Inc., was investigating information conveyed by Mr. Kendrick to Hearts with Haiti board members and benefactors regarding allegations of abuse against Mr. Geilenfeld and others at St. Joseph's Family.  PSAMF ¶ 96; DRPSAMF ¶ 96.  Mr. Kendrick did not inquire into Mr. Clark's background with the FBI because "[i]t doesn't mean a thing to [him]."

---

[30]    Mr. Kendrick denies the Plaintiffs' paragraph 94, accusing the Plaintiffs of mischaracterizing the evidence.  DRPSAMF ¶ 94 (citing *Pls.' Mot. to Seal* Attach. 12 *Re: Private Investigators* (ECF No. 208) (*Dec. 8 Email Re: Private Investigators*)).  In this email, Mr. Kendrick advises S.L. and E.M.:

> We have warned [Hearts with Haiti] that a proper investigation must be conducted by trained law enforcement personnel, not sone [sic] private investigator.

> My advice, for what it's worth, is to steer clear of private investigators hired by [Hearts with Haiti] or Geilenfeld.  There's nothing to gain by speaking to anyone other than the police.

*Dec. 8 Email Re: Private Investigators* at 2.  Reading this in the light most favorable to the Plaintiffs, the Court concludes that he "directed" S.L. and E.M. "not to cooperate with any investigator that tried to contact them."  PSAMF ¶ 94.  Because Mr. Kendrick has not controverted the Plaintiffs' paragraph 94, the Court deems it admitted under Local Rule 56(f), (g).

PSAMF ¶ 97; DRPSAMF ¶ 97. On January 6, 2012, Mr. Kendrick sent an email to Mr. Clark with the subject line "Boston Private Eye warned to stay away from Haitian abuse victims":

> Dear Mr. Clark,
>
> Please allow me to reiterate what I told you on the phone earlier today.
>
> Stay away from individuals who have reported that they were sexually abused by Michael Geilenfeld, Director of the St. Joseph's Homes in Port au Prince, Haiti.
>
> The person in the Boston area with whom you have already had contact (on two occasions) does not want to speak with you.
>
> Stay away.
>
> Stay far away from him and others.
>
> Why did you bring up the subject of money with a member of the abuse victim's family?
>
> Who is your client? Who are you working for?
>
> Has your client authorized you to pay money to Geilenfeld's victims in exchange for their silence?
>
> Michael Geilenfeld has committed horrific sex crimes against children in Haiti. If you have information about said crimes, Mr. Clark, please report your findings to law enforcement officials.
>
> Otherwise, take a hike.
>
> Sincerely,
> Paul Kendrick

PSAMF ¶ 98; DRPSAMF ¶ 98.

### 8. The Department of Homeland Security Investigates the Allegations; Mr. Kendrick's Campaign Continues

On December 24, 2011, Mr. Kendrick emailed Mr. Sibert, telling him that Mr. Kendrick had spoken with E.M. over the phone, and that E.M. said he was

interviewed by an agent with the U.S. Department of Homeland Security. PSAMF ¶ 99; DRPSAMF ¶ 99.

On February 16, 2012, Mr. Kendrick emailed numerous third-party supporters of Hearts with Haiti, Mr. Geilenfeld, and St. Joseph's Family:

> REV. RICK BARGER OF GEORGIA IS ENABLING THE SEXUAL ABUSE OF CHILDREN IN HAITI
>
> BARGER NEEDS TO SHUT UP AND STAND ASIDE.

PSAMF ¶ 100; DRPSAMF ¶ 100 (emphasis in original). That same day, Johnny Moore, a benefactor of Hearts with Haiti, Mr. Geilenfeld, and St. Joseph's Family, responded to Mr. Kendrick's email, asking to be removed from his mailing list. PSAMF ¶ 101; DRPSAMF ¶ 101. Mr. Kendrick responded, copying Mr. Barger:

> You're an idiot just like Barger.
>
> You can't even bring yourself to think about the hurting and suffering children.
>
> What kind of person are you, "Johnny"?

PSAMF ¶ 102; DRPSAMF ¶ 102.

On May 22, 2012, Mr. Kendrick emailed Mr. Sibert, Ms. Dirksen, and Mr. Davis his "acceptance" that the "U.S. Justice Department" investigation was not going to lead to Mr. Geilenfeld's arrest or prosecution:

> You may not want to hear this, but I am fully prepared for the finding that the investigation of Geilenfeld by the U.S. Justice Department is not going to lead to Geilenfeld's arrest at this time.
>
> By no means will this mean that I have given up. It simply means that the push forward has to be different and harder.
>
> No matter what happens now, our public intervention on behalf of the victims means that nothing will ever be the same for Geilenfeld. His secret is out. It's all over the internet.

Oh sure, the Rick Bargers of the world will have their moment to gloat, but again, it will never be the same for Geilenfeld.

PSAMF ¶ 103; DRPSAMF ¶ 103.

On June 10, 2012, Mr. Kendrick emailed himself, blind copying numerous benefactors of Hearts with Haiti, St. Joseph's Family, and Mr. Geilenfeld:

> **DO NOT DONATE MONEY TO "HEARTS WITH HAITI."**
>
> **DO NOT DONATE MONEY TO "ST. JOSEPH'S HOMES" IN HAITI.**
>
> **YOUR DONATIONS ARE ENABLING A CHILD MOLESTER TO ACT.**
>
> **MICHAEL GEILENFELD, EXECUTIVE DIRECTOR OF THE ST. JOSEPH'S HOMES IS BEING INVESTIGATED FOR CHILD SEXUAL ABUSE BY U.S. AUTHORITIES.**
>
> **"HEARTS WITH HAITI" KEEPS 20% OF EVERY DOLLAR DONATED.**
>
> **THERE IS NO AUDITED FINANCIAL ACCOUNTING OF WHERE THE MONEY GOES WHEN IT GETS INTO GEILENFELD'S HANDS.**

PSAMF ¶ 104; DRPSAMF ¶ 104 (emphasis in original). Two days later, on June 12, 2012, Mr. Kendrick again emailed himself, blind copying numerous benefactors of Hearts with Haiti, St. Joseph's Family, and Mr. Geilenfeld, stating that "Geilenfeld is threatening and intimidating abuse victims and witnesses." PSAMF ¶ 105; DRPSAMF ¶ 105. Mr. Kendrick does not know the basis of this allegation. PSAMF ¶ 106; DRPSAMF ¶ 106.[31,32]

---

[31] Mr. Kendrick denies the Plaintiffs' paragraph 106, citing to his deposition testimony. DRPSAMF ¶ 106 (citing *Kendrick Dep. Tr.* 193:22-194:16). This is a murky bit of dialogue, but, reading it in the light most favorable to the Plaintiffs, the Court concludes that Mr. Kendrick does not now know the basis of his allegation of victim and witness threats and intimidation. The Court deems the Plaintiffs' paragraph 106 admitted under Local Rule 56 (f), (g).

On June 28, 2012, the U.S. Department of Homeland Security closed its investigation into allegations of child abuse at St. Joseph's Family. PSAMF ¶ 108; DRPSAMF ¶ 108.[33] That same day, an Assistant United States Attorney for the Eastern District of North Carolina declined prosecution, concluding that the investigation yielded insufficient evidence of criminal conduct. PSAMF ¶ 109; DRPSAMF ¶ 109.[34]

---

[32]     The Plaintiffs' paragraph 107 makes substantially the same legal argument as paragraph 45. The Court does not credit paragraph 107 as a fact. *See supra* note 18 (discussing PSAMF ¶ 45).

[33]     Mr. Kendrick objects to this statement on the grounds that the evidence cited by the Plaintiffs is inadmissible hearsay. DRPSAMF ¶ 108. Mr. Kendrick also raises an authentication objection under Federal Rule of Evidence 901. *Id.* The Plaintiffs respond that Mr. Kendrick waived any argument about authenticity by failing to object to the Plaintiffs' disclosure of the records under District of Maine Local Rule 44. *Pls.' Resps. to Def.'s Reqs. to Strike* ¶ 108 (ECF No. 219). They also argue that the records are presumptively authentic because they were obtained from the Department of Homeland Security. *Id.* They further contend that the records are not offered to prove the truth of the matter asserted, but to show Mr. Kendrick's knowledge and awareness that the allegations he was making against Mr. Geilenfeld were likely incorrect. *Id.*

There is no suggestion in the summary judgment record that Mr. Kendrick was aware of the records; they cannot be offered to show his knowledge of the investigation's closure if there is no evidence showing that he knew of them. The records, standing alone as they are, must be offered for the truth of the matter asserted. However, the Plaintiffs contend that they are admissible under Federal Rule of Evidence 803 as "certified domestic records of a regularly conducted activity." *Id.* This is correct—if the records are authentic—under the "public records" exception found in Federal Rule of Evidence 803(8). Rule 803, however, requires consideration of the authenticity of the records. The Plaintiffs argue that they are presumptively authentic under Federal Rule of Evidence 902 (presumably subsection (4), as the copies bear no seals, certifications, or signatures).

District of Maine Local Rule 44 requires a party intending to offer evidence under Federal Rule of Civil Procedure 44 or Federal Rule of Evidence 902(1)-(4) or (11)-(12) to make a timely disclosure to the opposing party. D. ME. LOC. R. 44. The Local Rule also requires that "[o]bjection to the authenticity of such records shall be filed with the court within 14 days of identification." *Id.* The Plaintiffs provided a copy of their Local Rule 44 disclosure, dated September 16, 2013, which included the Homeland Security document underlying Plaintiffs' paragraph 108. *Pls.' Resps. to Def.'s Reqs. to Strike* Attach. 1 *Pls.' Local Rule 44 Disclosure* (ECF No. 219). The Court's docket shows no objection by Mr. Kendrick within fourteen days of that date. Consequently, the Court deems Mr. Kendrick's objection to the authenticity of the Homeland Security document waived.

Mr. Kendrick also interposes a qualified response to the paragraph, DRPSAMF ¶ 108, but the qualification does not render the assertion incomplete or misleading. The Court deems the Plaintiffs' paragraph 108 admitted under Local Rule 56(f), (g).

[34]     Mr. Kendrick raises the same hearsay and authentication objections to the Plaintiffs' paragraph 109 that he raised for paragraph 108. DRPSAMF ¶ 109. The Court overrules the objections for the same reasons discussed above. *See supra* note 33 (discussing DRPSAMF ¶ 108). Mr. Kendrick also interposes a qualified response to the paragraph, DRPSAMF ¶ 109, but the

### 9.    Mr. Kendrick's Campaign Continues in 2012

On July 1, 2012, Mr. Kendrick emailed numerous benefactors of Mr.

Geilenfeld, Hearts with Haiti, and St. Joseph's Family, declaring:

> **IT'S TIME TO PUT U.S. CITIZEN, MICHAEL GEILENFELD, IN PRISON.**
>
> **"I WANT TO KNOCK ON MICHAEL GEILENFELD'S FRONT DOOR IN PORT AU PRINCE," SAYS CHILD PROTECTION ADVOCATE, PAUL KENDRICK.**
>
> **MICHAEL GEILENFELD IS A DANGEROUS CHILD MOLESTER WHO'S BEEN SEXUALLY ABUSING CHILDREN IN HAITI FOR 30 YEARS.**
>
> **VICTIMS IN HAITI ARE CRYING OUT FOR HELP.**
>
> **GEILENFELD IS THREATENING AND INTIMIDIMATING** [sic] **THE VICTIMS AND WITNESSES.**
>
> **HTTP://WWW.HEARTSWITHHAITI.ORG**

PSAMF ¶ 110; DRPSAMF ¶ 110 (emphasis in original).

On October 1, 2012, Mr. Kendrick emailed himself, blind copying numerous

benefactors of Mr. Geilenfeld, Hearts with Haiti, and St. Joseph's Family:

> **DR. RODNEY WALLER, SENIOR PASTOR, AND MEMBERS OF THE FIRST AFRICAN CHURCH IN RICHMOND, VIRGINIA ARE ENABLING THE SEXUAL ABUSE OF POOR AND VULNERABLE HAITIAN CHILDREN BY THEIR SUPPORT OF MICHAEL GEILENFELD.**
>
> **THE FIRST AFRICAN CHURCH MUST CANCEL THE OCTOBER 13TH PERFORMANCE OF GEILENFELD'S RESURRECTION DANCE THEATER.**

PSAMF ¶ 111; DRPSAMF ¶ 111 (emphasis in original).

---

qualification does not render the assertion incomplete or misleading.  The Court deems the Plaintiffs' paragraph 109 admitted under Local Rule 56(f), (g).

On October 12, 2012, Mr. Kendrick posted a review of Hearts with Haiti on www.guidestar.org,[35] a national database of U.S. nonprofits' financial information, ratings, and review, in which he stated: "Michael Geilenfeld, Executive Director of the St. Joseph's Homes in Haiti, is a multi-accused child molester." PSAMF ¶ 112; DRPSAMF ¶ 112. That same day, he emailed a reporter of the Richmond Times Dispatch, Zachery Reid, claiming that "Haitian Dancer told to keep quiet" -- "Bill Nathan has instructed members of the Resurrection Dance Theaters not to speak to investigators." PSAMF ¶ 113; DRPSAMF ¶ 113. He then forwarded to Mr. Davis the email he had sent to Mr. Reid, and engaged in the following conversation:

> [Mr. Davis:] Damn, is that true? Has an investigator tried to contact them?
>
> [Mr. Kendrick:] No one has tried to contact them
>
> [Mr. Davis:] How did you find out that Nathan told RDT members not to cooperate with investigators?
>
> [Mr. Kendrick:] I need to protect people.

PSAMF ¶ 114; DRPSAMF ¶ 114.

Mr. Kendrick conveyed this information to Mr. Reid with the hope that Mr. Reid would publish an article "[a]bout all the allegations brought against Mr. Geilenfeld," which would cause the scheduled venues to cancel the Resurrection Dance Theatre fundraising performances. PSAMF ¶ 118; DRPSAMF ¶ 118. In his deposition, when asked whether he made up the information in the email to Mr.

---

[35] The Plaintiffs' paragraph 112 refers to the website address as "www.GuidesStar.com." PSAMF ¶ 112. However, after conducting an Internet search for the database, the Court discovered that "www.guidestar.org" appears to be the correct website address to access the database. Thus, the Court assumes that www.guidestar.org is the website address that Plaintiffs refer to in paragraph 112.

Reid, Mr. Kendrick gave an evasive response and could not recall who had provided the information that Mr. Nathan had instructed Resurrection Dance Theatre members not to communicate with investigators. PSAMF ¶ 115; DRPSAMF ¶ 115.[36]

On October 15, 2012, Mr. Reid responded to Mr. Kendrick, thanking him for the information Mr. Kendrick conveyed to him regarding allegations of child abuse against Mr. Geilenfeld. PSAMF ¶ 117; DRPSAMF ¶ 117. However, less than an hour after Mr. Reid's response, Mr. Kendrick wrote to Mr. Reid: "I can understand that [you are] not able to substantiate the allegations at this time." PSAMF ¶ 119; DRPSAMF ¶ 119.[37] Mr. Kendrick suggested several questions that Mr. Reid could put to Mr. Geilenfeld. *Additional Attachs.* Attach. 8 *Re: Questions for Geilenfeld* (ECF No. 205). To Mr. Kendrick's knowledge, Mr. Reid never published an article about information conveyed to him by Mr. Kendrick concerning Mr. Geilenfeld, St. Joseph's Family, or Hearts with Haiti. PSAMF ¶ 120; DRPSAMF ¶ 120.[38]

---

[36]     The Plaintiffs' paragraph 116 makes substantially the same legal argument as paragraph 45. The Court does not credit paragraph 116 as a fact. *See supra* note 18 (discussing PSAMF ¶ 45).

[37]     Mr. Kendrick interposes a qualified response, accusing the Plaintiffs of taking one line from Mr. Kendrick's email to Mr. Reid out of context. DRPSAMF ¶ 119. The Court added additional context from the email.

[38]     The Plaintiffs' paragraph 120 claims that "[n]either [Mr.] Reid, nor the Times Dispatch, nor any other news source ever published an article about information conveyed to them by [Mr.] Kendrick concerning [Mr.] Geilenfeld, St. Joseph's Family, or Hearts With Haiti." PSAMF ¶ 120 (citing *Kendrick Dep. Tr.* 208:1-17). Mr. Kendrick interposes a qualified response, contending that the cited deposition testimony only supports this assertion with respect to Mr. Kendrick's own personal knowledge. DRPSAMF ¶ 120. The Court narrowed the assertion of the Plaintiffs' paragraph 120 to reflect the deposition testimony, and deems the modified paragraph admitted under Local Rule 56(f), (g).

On October 18, 2012, Mr. Kendrick published on one of his public websites a mass email sent to himself, blind copying numerous benefactors of Hearts with Haiti, St. Joseph's Family, and Mr. Geilenfeld:

**ROPES & GRAY LAWYER ASKED WHY SHE IS IGNORING CHILD SEXUAL ABUSE ALLEGATIONS**

ANNE PHILLIPS OGILBY, A PARTNER AT THE LAW FIRM, ROPES & GRAY IN BOSTON, IS A LONG TIME OFFICER AND FORMER CHAIRMAN OF COTTING SCHOOL'S BOARD OF TRUSTEES.

. . .

DAVID MANZO, PRESIDENT OF COTTING SCHOOL (LEXINGTON, MASS.) IS IGNORING MULTIPLE ALLEGATIONS OF CHILD SEXUAL ABUSE AGAINST DIRECTOR OF ORPHANAGE IN HAITI.

COTTING SCHOOL HAS ESTABLISHED "WINGS OF HOPE" AS ITS SISTER SCHOOL IN HAITI.

SO HOW COME IN ITS OFFICIAL HANDBOOK, COTTING SCHOOL SAYS: "COTTING SCHOOL MAINTAINS A POLICY OF ZERO TOLERANCE FOR ANY KIND OF MISTREATMENT IN CHILDREN."

MICHAEL GEILENFELD, DIRECTOR OF ST. JOSEPH'S HOMES IN HAITI, WHICH INCLUDES WINGS OF HOPE, IS A MULTI-ACCUSED CHILD MOLESTER.

IT APPEARS THAT COTTING SCHOOL OFFICIALS DON'T BELIEVE THAT CHILDREN IN HAITI DESERVE THE SAME PROTECTIONS AS CHILDREN IN THE UNITED STATES.

PSAMF ¶ 121; DRPSAMF ¶ 121 (emphasis in original).

On October 20, 2012, Mr. Kendrick emailed himself, blind copying numerous benefactors of Michael Geilenfeld, Hearts with Haiti, and St. Joseph's Family:

Willie Dell, a member of Richmond, Virginia's first black majority City Council in the 1970s, has spent months each year in Haiti working with St. Joseph's Homes in Port au Prince.

Michael Geilenfeld, Executive Director of the St. Joseph's Homes, is a multi-accused child molester.

. . .

Willie Dell doesn't give a damn about the pain and suffering of those who have been sexually abused by Geilenfeld.

Willie Dell doesn't care about protecting children from abuse by Geilenfeld.

PSAMF ¶ 122; DRPSAMF ¶ 122.

### 10. Mr. Kendrick Learns of the Results of the Homeland Security Investigation

On October 21, 2012, Mr. Kendrick received information from Bruce Foucart, "a senior executive of Homeland Security (who called [Mr. Kendrick])," that "the ICE agent in North Carolina has abandoned the investigation of Michael Geilenfeld." PSAMF ¶ 123; DRPSAMF ¶ 123. After receiving this information, Mr. Kendrick declared to Mr. Sibert that he was "committed to continuing [his] daily email 'bombardment' of all the people and organizations who support Geilenfeld." PSAMF ¶ 124; DRPSAMF ¶ 124.[39]

By October 22, 2012, Mr. Kendrick had knowledge that at least S.L., D.J.B., and E.M. had been interviewed by ICE regarding allegations of child sexual abuse communicated to ICE by Mr. Kendrick. PSAMF ¶ 125; DRPSAMF ¶ 125. On October 22, 2012, he received communication directly from Brian Padian, an official with the Department of Homeland Security, who stated that none of the individuals

---

[39] Mr. Kendrick interposes a qualified response, accusing the Plaintiffs of taking quotes out of context. DRPSAMF ¶ 124. The Court reviewed the underlying document and concludes that the selected quotes do not misrepresent the overall content of the email. *See Additional Attachs.* Attach. 11 *Fwd: IMPORTANT – PRIVATE & CONFIDENTIAL* (ECF No. 205). The Court deems the Plaintiffs' paragraph 124 admitted under Local Rule 56(f), (g).

interviewed by ICE claimed to have been sexually abused. PSAMF ¶ 126; DRPSAMF ¶ 126.

That same day, after learning this, Mr. Kendrick emailed Mr. Sibert with the subject line "URGENT!!!":

> Cyrus,
>
> Homeland Security just called me.
>
> Not good.
>
> None of the witnesses they have interviewed (other than [E.M.]) are willing to state that they were sexually abused by Geilenfeld.
>
> PLEASE CALL ME FIRST CHANCE YOU GET.
>
> Paul.

PSAMF ¶ 127; DRPSAMF ¶ 127 (emphasis in original). He then followed up with a second email: "If it were not for my believing [E.M.], I would lose all confidence in this case." PSAMF ¶ 128; DRPSAMF ¶ 128. That day, he also emailed S.L.:

> I am sad to inform you that, according to a knowledgeable person I spoke with today, none of the witnesses who spoke with the United States investigator was willing to state that they were "sexually abused" by Geilenfeld.

PSAMF ¶ 130; DRPSAMF ¶ 130.[40]

Four days later, on October 26, 2012, he emailed Mr. Sibert again:

> I won't linger on what [S.L.] may have known or not known about these interviews, but he certainly left me with the impression that these were victims who testified to the ICE agent that they were sexually abused by Geilenfeld.

---

[40] Mr. Kendrick interposes a qualified response, accusing the Plaintiffs of quoting the source material out of context. DRPSAMF ¶ 130. The Court examined the underlying document, and perceives no misrepresentation from the selected quote. *See Pls.' Mot. to Seal* Attach. 4 *Email* (ECF No. 208).

PSAMF ¶ 129; DRPSAMF ¶ 129.[41]  This same email indicates that Mr. Kendrick believed ICE agents were interested in interviewing E.M. and another alleged victim in Boston, but that they needed "4 or 5 victims within the statute of limitations" and "others who were abused at other times . . . as corroborating witnesses."  *Pls.' Mot. to Seal* Attach. 16 *CONFIDENTIAL UPDATE* (ECF No. 208).

### 11. Mr. Kendrick's Campaign Continues After He Learns That ICE Found No Evidence of Abuse

On October 23, 2012, Mr. Kendrick sent an email to Wings of Hope staff member Renee Dietrich and several employees of St. Joseph's Family, as well as Hearts with Haiti board members and benefactors, accusing Ms. Dietrich of sexual abuse of girls at Wings of Hope.  PSAMF ¶ 131; DRPSAMF ¶ 131.  He cannot recall the basis on which he published these statements, but he intended for the information to be shocking and upsetting, and hoped that it would upset Ms. Dietrich.  PSAMF ¶¶ 132, 134, 136; DRPSAMF ¶¶ 132, 134, 136.[42]  He then forwarded the email he had sent to Ms. Dietrich to numerous third-party benefactors of Mr. Geilenfeld, Hearts with Haiti, and St. Joseph's Family with additional accusative commentary.  PSAMF ¶ 135; DRPSAMF ¶ 135.

---

[41]     Mr. Kendrick interposes a qualified response, accusing the Plaintiffs of quoting the source material out of context.  DRPSAMF ¶ 129.  In this case, the Court included other select information from the email that represents Mr. Kendrick's apparent belief that the ICE investigation would continue.

[42]     The Plaintiffs' paragraphs 133 and 137 make substantially the same legal argument as paragraph 45.  The Court does not credit paragraphs 133 or 137 as facts.  *See supra* note 18 (discussing PSAMF ¶ 45).

### 12. Further Doubts Come to Mr. Kendrick's Attention; the Campaign Continues

On October 24, 2012, Mr. Kendrick received an email from Mr. Sibert, explaining that Hearts with Haiti's investigation "did not find anyone who admitted to being sexually abused by Geilenfeld." PSAMF ¶ 138; DRPSAMF ¶ 138.[43] Mr. Kendrick responded that "any so called investigation by [Hearts with Haiti] is a fraud." PSAMF ¶ 139; DRPSAMF ¶ 139.

On November 10, 2012, Mr. Kendrick emailed Mr. Sibert, explaining that Valerie Dirksen had travelled to Tennessee to interview someone "who people say is a victim of Geilenfeld, but this man would not admit to being abused." PSAMF ¶ 140; DRPSAMF ¶ 140. Mr. Kendrick does not recall who, other than Ms. Dirksen, the "people" were who said that the Tennessee resident was a victim, and does not know the source of Ms. Dirksen's information. PSAMF ¶¶ 141-42; DRPSAMF ¶¶ 141-42.

On November 15, 2012, Mr. Kendrick emailed Mr. Sibert and S.L.:

All attempts to contact possible Geilenfeld victims who are living in the U.S. is at a standstill.

The few of us who are reaching out to Geilenfeld victims in the U.S. have become increasingly frustrated by the chorus of victims who appear unwilling to say they were sexually abused by Geilenfeld.

They are either afraid or the abuse never occurred.

---

[43] The Plaintiffs' paragraph 138 stated that Mr. Sibert explained to Mr. Kendrick "that Hearts with Haiti's investigation, like ICE's investigation, 'did not find anyone who admitted to being sexually abused by Geilenfeld.'" PSAMF ¶ 138 (citing and quoting *Additional Attachs.* Attach. 3 *Re: HWH Investigation* (ECF No. 206)). Mr. Kendrick interposes a qualified response, pointing out that Mr. Sibert made no reference to ICE. DRPSAMF ¶ 138. The Court has modified the assertion slightly to reflect the qualification, and deems the modified assertion admitted under Local Rule 56(f), (g).

As I mentioned earlier, it was a real shock and disappointment to learn that no one who was interviewed by the ICE agent in Haiti was willing to state that Geilenfeld abused them. It is, of course, possible that they were not sexually abused by Geilenfeld.

I believe [E.M.] was sexually abused by Geilenfeld. . . .

Let me be frank with you. Although I sincerely believe that Geilenfeld sexually abused kids, I am becoming more and more convinced that the small group of advocates are more concerned with stopping Geilenfeld than are the victims themselves.

. . .

I'm looking for some direction here. In January 2013, I will have been involved in this situation for two years – and, sadly, I don't feel we're any further along than we were then. Without victims willing to testify, this may just be one big waste of time.

PSAMF ¶ 143; DRPSAMF ¶ 143.[44]

Eight days after this exchange with Mr. Sibert and S.L., on November 23, 2012, Mr. Kendrick emailed Mr. Foucart at Homeland Security, claiming that Sony Derazin, a man with cerebral palsy and former resident of Wings of Hope, was sexually abused by Mr. Geilenfeld. PSAMF ¶ 144; DRPSAMF ¶ 144.[45] Mr. Kendrick never conveyed to the Department of Homeland Security that he had since learned directly from Mr. Derazin that he was not sexually abused. PSAMF ¶ 146; DRPSAMF ¶ 146.

---

[44] The Plaintiffs' quotation of this email left out several lines in which Mr. Kendrick professes a sincere belief that E.M. and others were sexually abused by Mr. Geilenfeld. PSAMF ¶ 143. Mr. Kendrick objects to their omission, DRPSAMF ¶ 143, and the Court has included them.

[45] The Plaintiffs' paragraph 145 claims that "[a]s of November 23, 2012, [Mr.] Kendrick had never met or communicated with [Mr.] Derazin." PSAMF ¶ 145 (citing *Additional Attachs.* Attach. 6 *Update* (ECF No. 206) (*Update*) and *Kendrick Dep. Tr.* 216:18-25, 217:1-18). Mr. Kendrick denies the assertion and requests that the paragraph be struck. DRPSAMF ¶ 145. The Plaintiffs responded to the motion to strike. *Pls.' Resps. to Def.'s Reqs. to Strike* ¶ 145. After reviewing the document and deposition testimony, the Court agrees that they do not support an inference that Mr. Kendrick had never met or communicated with Mr. Derazin before November 23, 2012. The Court strikes the Plaintiffs' paragraph 145.

On December 12, 2012, Mr. Kendrick emailed Mr. Geilenfeld and several third party benefactors of Mr. Geilenfeld, St. Joseph's Family, and Hearts with Haiti, with the subject line "A promise to child sex offender, Michael Geilenfeld":

> Hey, Geilenfeld, you sick son of a bitch.
>
> . . .
>
> Count on this, Geilenfeld. You are going to prison for the rest of your miserable life for the horrible and despicable sex crimes you have committed against poor and vulnerable Haitian children.
>
> Lots of luck if the Haitian Police detain you in a Haitian prison. Word will spread fast among the inmates that you have sexually assaulted and raped their Haitian children.
>
> One of these days, maybe even today, the police are going to handcuff you, jail you, and then ship you back to the US to be put in prison forever.
>
> And, all your pals at Hearts with Haiti, the Timoun Foundation and Epiphany Suwanee Church will be held responsible and accountable in a court of law for their willful negligence in not protecting children from a monster like you.
>
> Paul Kendrick

PSAMF ¶ 147; DRPSAMF ¶ 147. Shortly thereafter, on December 16, 2012, Mr. Kendrick emailed Jerry Hagler, a member of Hearts with Haiti's board of directors, accusing him of "protect[ing] [a] child molester in Haiti." PSAMF ¶ 148; DRPSAMF ¶ 148.

On December 18, 2012, Mr. Kendrick met with Mr. Derazin. PSAMF ¶ 149; DRPSAMF ¶ 149.[46] Later that day, he emailed Mr. Sibert and reported that

---

[46] The Plaintiffs' paragraph 149 claims that the December 18, 2012 meeting was Mr. Kendrick's first meeting with Mr. Derazin. PSAMF ¶ 149 (citing *Pls.' Mot. to Seal* Attach. 18 *Cyrus, pls. read this* (ECF No. 208) (*Cyrus, pls. read this*); *Update*; and *Kendrick Dep. Tr.* 216:18-25, 217:1-18, 260:6-13). Mr. Kendrick denies that the record supports that this was their first meeting and has moved to

"[a]ccording to Sony [Derazin], he was never sexually abused by Geilenfeld."
PSAMF ¶ 150; DRPSAMF ¶ 150.  Mr. Sibert replied that "[i]t seams [sic] that, we couldn't find any evidence of Geilenfeld sexuel [sic] abuses."  PSAMF ¶ 151; DRPSAMF ¶ 151.[47]  When confronted with this statement at his deposition, Mr. Kendrick stated that it was not accurate and that he did not know what Mr. Sibert was talking about.  PSAMF ¶ 152; DRPSAMF ¶ 152.

Four days after this meeting, on December 22, 2012, Mr. Kendrick emailed Kay Leaman and several other benefactors of Mr. Geilenfeld, St. Joseph's Family, and Hearts with Haiti:

> Each and every one of the five boys who lived in Geilenfeld's "one room shack" were sexually molested by him.
>
> The boys were 10 years old.  Geilenfeld would force them to suck his penis, he would suck and lick their genitals, he would kiss them long and hard on their lips.
>
> They were orphans, poor street kids with no where [sic] to go.
>
> These are the facts.  Do the facts make your skin crawl?  I hope so.

PSAMF ¶ 153; DRPSAMF ¶ 153.  At his deposition, Mr. Kendrick identified E.M. as the source of this information.  PSAMF ¶ 154; DRPSAMF ¶ 154.  However, Mr. Kendrick could not recall the identities of the other four alleged victims, and admitted that he neither talked to them nor ever attempted to contact them to

---

strike the paragraph.  DRPSAMF ¶ 149.  The Court agrees that the record is silent on whether this was the first meeting between Messrs. Kendrick and Derazin, and strikes that part of paragraph 149.

[47]      Mr. Kendrick interposes a qualified response, arguing that the Plaintiffs have taken this quote out of context.  DRPSAMF ¶ 151.  The Court reviewed the underlying document and concludes that the selected quote does not misrepresent the overall content of the email.  *See Cyrus, pls. read this.*  The Court deems the Plaintiffs' paragraph 151 admitted under Local Rule 56(f), (g).

verify E.M.'s story. PSAMF ¶ 154; DRPSAMF ¶ 154. Nevertheless, he remained adamant that "Geilenfeld sexually abused children." PSAMF ¶ 154; DRPSAMF ¶ 154.

### 13. Events in 2013

On July 7, 2013, Mr. Kendrick emailed Ms. Dirksen, stating that the Department of Homeland Security had been misleading her because its investigation of Mr. Geilenfeld was "'closed' as of 1-14-2013." PSAMF ¶ 155; DRPSAMF ¶ 155.

On September 4, 2013, E.M. was served in hand with the Plaintiffs' notice to appear for a deposition on September 18, 2013, together with a witness fee check in the amount of $188.60. PSAMF ¶ 156; DRPSAMF ¶ 156. E.M. cashed the witness fee check the next day. PSAMF ¶ 157; DRPSAMF ¶ 157. However, he failed to appear for his deposition. PSAMF ¶ 158; DRPSAMF ¶ 158.

In December 2013, E.M. was arrested and detained by the Department of Homeland Security; the arrest related to his immigration status and multiple criminal convictions in California. PSAMF ¶ 159; DRPSAMF ¶ 159. On December 21, 2013, Mr. Kendrick posted to a Yahoo! Group a thinly veiled accusation that Mr. Geilenfeld "may be behind U.S. Immigration and Custom Enforcement's sudden and unexplained interest in E.M.'s U.S. visa status." PSAMF ¶ 160; DRPSAMF ¶ 160.[48]

---

[48]     Mr. Kendrick disputes that he leveled an accusation against Mr. Geilenfeld of manipulating the Department of Homeland Security. DRPSAMF ¶ 160. Reading the Yahoo! Groups post in the light most favorable to the Plaintiffs, the Court concludes that this was, at best, a thinly veiled suggestion, and at worst, an outright accusation. *See Additional Attachs.* Attach. 7 (ECF No. 203). The Court slightly adjusted the language of paragraph 160, but otherwise deems it admitted under Local Rule 56(f), (g).

## II.    POSITION OF THE PARTIES

### A.    Mr. Kendrick's Motion

Mr. Kendrick puts forth that "[t]he First Amendment 'forbids an award of . . . punitive damages for words spoken without actual malice on matters of public concern.'"  *Def.'s Mot.* at 6 (quoting *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 132 (1st Cir. 1997)).  He insists that he "unquestionably spoke on a matter of public concern," as "[t]he sexual abuse of children by Mr. Geilenfeld, an American citizen, at an orphanage he oversees in Haiti as part of his religious mission is a matter of public concern of the highest order."  *Id.* at 8.  He argues that this matter is "further elevate[d]" into the public sphere because Hearts with Haiti uses charitable donations from Americans to support Mr. Geilenfeld and his orphanage, and more generally, the orphanage receives millions in tax-deductible donations encouraged by federal and state tax policies.  *Id.*  He also notes the Maine Supreme Judicial Court (or the "Maine Law Court") has stated that in "matters concerning the protection of children from physical and sexual abuse, societal interests are at their zenith."  *Id.* at 11 (quoting *Fortin v. Roman Catholic Bishop of Portland*, 2005 ME 57, ¶ 67, 871 A.2d 1208, 1230).

Mr. Kendrick then contends that "Plaintiffs must offer evidence of actual malice with 'convincing clarity' to survive this motion for partial summary judgment."  *Id.* (citing *Levesque v. Doocy*, 560 F.3d 82, 87 (1st Cir. 2009)).  He notes that to demonstrate actual malice, the Plaintiffs "must show at a minimum that the defendant 'entertained serious doubts as to the truth of his publications, or acted with a high degree of awareness of probable falsity.'"  *Id.* at 12 (quoting *Masson v.*

*New Yorker Magazine, Inc.*, 501 U.S. 496, 511 (1991)). Mr. Kendrick asserts that there is "overwhelming evidence in the record that [he] believed what he said and did not entertain 'serious doubts as to the truth of his publications.'" *Id.* at 15 (quoting *Masson*, 501 U.S. at 511). Finally, Mr. Kendrick asserts that "there is an absence of evidence . . . of a high probability that Mr. Geilenfeld is not a child molester, much less that Mr. Kendrick was ever highly aware of that probability." *Id.* at 16. Based upon this characterization of the record, Mr. Kendrick concludes that "there is no basis for a jury finding of actual malice," and that summary judgment on punitive damages is therefore appropriate. *Id.*

### B. The Plaintiffs' Opposition

The Plaintiffs vehemently disagree that Mr. Kendrick's allegations involve matters of public concern. *Pls.' Opp'n* at 6-13. They argue that the Maine Law Court has "repeatedly rejected such blanket arguments that allegations of child abuse, by their very nature, regardless of their content, form, and context, are matters of public concern." *Id.* at 9 (citing *Ramirez v. Rogers*, 540 A.2d 475, 477 (Me. 1988)). They insist that in the matter before the Court, "the form and context of speech were not . . . intended to fairly debate a matter of public interest within a public forum." *Id.* at 12. Instead, "there is enough undisputed evidence for this Court to conclude that as a matter of law all of the speech in issue is not a matter of public concern, and this case therefore does not implicate the constitutional 'actual malice' fault standard at all." *Id.* at 13. In the alternative, the Plaintiffs warn that "whether a defamatory statement involves a matter of public concern requires consideration of its content, form, and context as revealed by a 'whole-record

review.'" *Id.* at 7 (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761-62 (1985)). They maintain that this determination is best made on a full-fledged record at trial, noting the First Circuit's commentary in a past case that "the lower court's resolution of the public concern issue [was] undermined by its incomplete assessment of the form, content, and context of [the defendant's] statements." *Id.* (quoting *Levinsky's*, 127 F.3d at 133).

Without admitting that the public concern standard applies, the Plaintiffs also argue that summary judgment on their punitive damages claim can alternatively be denied because "there are genuine issues of material fact on proof of constitutional actual-malice." *Id.* at 13-17. They agree in principle with Mr. Kendrick on the actual malice standard as articulated in *Masson v. New Yorker Magazine*, and submit that "summary judgment on actual malice must be denied as long as there is evidence in the record upon which a fact finder could conclude that the defendant knew his statements were false or otherwise acted in reckless disregard of their falsity." *Id.* at 14 (citing *Masson*, 501 U.S. at 521). They explain that "[t]he Supreme Court has expressed caution to lower courts analyzing the actual-malice standard at summary judgment, recognizing that 'proof of actual malice calls a defendant's state of mind into question and does not readily lend itself to summary disposition.'" *Id.* (quoting *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979)) (internal quotation marks omitted). More specifically, they put forth that "the [Supreme] Court has cautioned courts against crediting self-serving 'true-believer' testimony as to actual malice." *Id.* at 15 (citing *St. Amant v. Thompson*,

390 U.S. 727, 732 (1968)).  With regard to the evidence required to demonstrate that a statement was made with reckless disregard of its falsity, the Plaintiffs maintain that "where . . . direct proof is missing, the jury may nevertheless infer that the [defendant] was aware of the falsity if [the jury] finds that there were 'obvious reasons to doubt' the accuracy of [his statements], and that the defendant did not act reasonably in dispelling those doubts."  *Id.* (quoting *Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1134 (9th Cir. 2003)).

Based on this standard, the Plaintiffs argue that their Statement of Additional Material Facts "sets forth in detail the many moments in Kendrick's unrelenting campaign of defamation when he knew the statements he made were false, or when he recklessly disregarded the truth or falsity of heinous accusations." *Id.* at 16.  In particular, they insist there are moments in which "Kendrick confides in . . . private emails that he himself doubts the veracity of the allegations he perpetuates against Geilenfeld," *id.* (citing PSAMF ¶¶ 51, 103, 127-29, 140, 143, 150-52), "followed by a prompt resumption of the campaign of defamation, as if the truth or falsity quite literally did not matter."  *Id.* (citing PSAMF ¶¶ 124, 126-28, 135).  The Plaintiffs further argue that Mr. Kendrick's deposition "is replete with a professed lack of recall over the basis for facts specific to numerous charges he makes," *id.*, so that "[t]he only [possible] inference on this record is that *all* of what Kendrick accuses Geilenfeld of doing came from Kendrick's own base imagination and no other accountable source."  *Id.* at 17 (emphasis in original).  Finally, the Plaintiffs insist the record demonstrates that Mr. Kendrick "threatens any person

who privately investigates his defamatory remarks and by those threats he obstructs and discourages the separate investigation," *id.* (citing PSAMF ¶ 98), and that both reckless disregard and even active discouragement of investigation into the truth can be inferred from these actions. *Id.*

In summation, the Plaintiffs argue that "Kendrick knows that what he is saying is untrue, and he does not care." *Id.* Therefore, Plaintiffs insist that the Court—if it reaches the question of constitutional actual-malice—must deny Mr. Kendrick's motion. *Id.*

### C. Mr. Kendrick's Reply

In reply, Mr. Kendrick rejects the analysis that the Plaintiffs use in determining whether Mr. Kendrick published on a "matter of public concern." *Def.'s Reply* at 1-6. He argues that, "[i]n short, it is a matter of public concern that a national tax-exempt organization may be funneling millions of dollars off shore to an organization operated by a child molester." *Id.* at 6.

Based on his characterization of the record, Mr. Kendrick also argues that "no reasonable observer could later say that Mr. Kendrick was 'purposefully avoiding the truth,' or that he 'had a high degree of awareness of probably [sic] falsity,' or that 'his story was fabricated,' when Mr. Kendrick published statements that Mr. Geilenfeld was a child molester." *Id.* With this backdrop, he insists that the Plaintiffs' citations to record evidence "do not raise a genuine issue of actual malice." *Id.* at 7.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "has the potential to change the outcome of the suit." *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010)). A dispute is "genuine" if "a reasonable jury could resolve the point in favor of the nonmoving party." *Id.* (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

Once this evidence is supplied by the moving party, the nonmovant must "produce 'specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (quoting *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994)). In other words, the non-moving party must "present 'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993)).

The Court then "views the facts and draws all reasonable inferences in favor of the nonmoving party." *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011). However, the Court "afford[s] no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which,

in the aggregate, is less than significantly probative.'" *Tropigas*, 637 F.3d at 56 (quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001)); *accord Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1st Cir. 2009).

### B.    Analysis

The narrow issue in this motion for summary judgment is whether the Plaintiffs may seek punitive damages at trial.   Both sides agree that "the Constitution forbids an award of . . . punitive damages for words spoken without actual malice on matters of public concern." *Levinsky's*, 127 F.3d at 132.   They disagree sharply over whether Mr. Kendrick's campaign against Mr. Geilenfeld, Hearts with Haiti, and St. Joseph's Family amounts to a "matter[] of public concern." *Id.*   The Court does not reach this issue, because a fact-finder, viewing the whole summary judgment record in the light most favorable to the Plaintiffs, could reasonably find that Mr. Kendrick has demonstrated "actual malice."

A plaintiff may establish actual malice by showing that the defendant "knew that its statements were false or had serious doubts about their truth and dove recklessly ahead anyway." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012).   The First Circuit's description is similar to the standard announced by the Maine Supreme Judicial Court.   In 1988, the Maine Law Court wrote, in the context of a slander case, that to recover punitive damages, a plaintiff must demonstrate that a defendant acted "with malice." *Ramirez v. Rogers*, 540 A.2d 475, 478 (Me. 1988) (quoting *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985)).   The *Ramirez* Court went on to define the standard for malice: "In order to recover damages, the plaintiff must show the defendant's tortious conduct was

motivated by ill-will, or that the defendant's tortious conduct 'is so outrageous that malice toward a person injured as a result of that conduct can be implied.'" *Id.* (quoting *Tuttle*, 494 A.2d at 1361); *see also Haworth v. Feigon*, 623 A.2d 150, 159 (Me. 1993) (same). "'[R]ecklessness amounting to actual malice may be found' where the defendant 'relies on a source' when 'there is an obvious reason to doubt its veracity . . . or deliberately ignores evidence that calls into question his published statements.'" *Schatz*, 669 F.3d at 58 (quoting *Levesque*, 560 F.3d at 90). Furthermore, to establish actual malice in this case, both federal and Maine law may require that the Plaintiffs meet a "clear and convincing evidence" standard of proof. *Galarneau v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 504 F.3d 189, 199 (1st Cir. 2007); *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991). Nevertheless, the higher standard of proof, if applicable, would not remove the punitive damages claim from jury consideration, only make it more difficult to prove.

The record, viewed in the light most favorable to the Plaintiffs, contains sufficient evidence from which a jury could reasonably find that Mr. Kendrick deliberately ignored evidence that called into question his published statements and that he relied on highly questionable sources. Mr. Kendrick spent nearly three years repeatedly leveling categorical, serious accusations of child molestation against Mr. Geilenfeld. Many of his missives immediately followed his own private expressions of doubt about the evidence.

A few examples will make the point. On February 1, 2011, Mr. Kendrick emailed Ms. Elam, noting that there were large gaps in his information about the

alleged abuse. Section I.B.a, *supra*. However, the same day, he informed officials of St. Cecilia's Parish that "[t]here are substantiated reports that [Mr.] Geilenfeld is sexually abusing children in Haiti." *Id*. His email earlier in the day to Ms. Elam suggests just the opposite; that he was aware that the reports were not substantiated, and that he could not "speak with authority that Geilenfeld is a child molester." *Id*. A fact-finder could reasonably draw an inference of actual malice from this exchange.

Mr. Kendrick claimed that he received allegations of sexual abuse against Mr. Geilenfeld from Valerie Dirksen, a woman who also claimed that Mr. Geilenfeld attacked children with "voodoo magic." Section I.B.b, *supra*. Without independently confirming the veracity of the allegations, *see Schatz*, 669 F.3d at 58, Mr. Kendrick passed these accusations on to Messrs. Hamrick, Unni, and Kellen. Section I.B.5.b, *supra*. A fact-finder could also reasonably find that Mr. Kendrick added additional details to his accusations that did not originate with Ms. Dirksen or any other credible source. *Id*. A fact-finder could reasonably draw an inference of actual malice from this exchange.

Mr. Kendrick accused Mr. Nathan of committing sexual abuse and aiding and abetting Mr. Geilenfeld's supposed sexual abuse, Section I.B.6.a, *supra*; repeatedly accused Mr. Geilenfeld of child sexual abuse to federal law enforcement officials, Section I.B.6.b, *supra*; and leveled the same accusations to members of the press. Section I.B.9, *supra*. A fact-finder could reasonably find that he should have entertained serious doubts about the veracity of this information. *See generally*

Section I.B, *supra*. It could reasonably find that, despite these doubts, Mr. Kendrick continued to level accusations against Mr. Geilenfeld, Hearts with Haiti, and the St. Joseph's Family. *Id.* Thus, a fact-finder could reasonably draw an inference of actual malice from all of these actions by Mr. Kendrick.

The summary judgment record recited in Section I.B contains ample additional examples from which a fact-finder could reasonably infer actual malice, and further rehashing will add little. Even assuming that he was speaking on a matter of public concern, Mr. Kendrick has not demonstrated that there are no genuine disputes of material fact or that he is entitled to judgment as a matter of law on the issue of punitive damages.

## IV.  CONCLUSION

The Court DENIES the Defendant's Motion for Partial Summary Judgment (ECF No. 192).

## V.  SEALING OF THIS DECISION

The Court grants the Defendant's Motion With Memorandum of Law to File "Defendant's Motion for Partial Summary Judgment With Incorporated Memorandum Under Seal" (ECF No. 191) and directs the Clerk of Court to seal this Order when docketed.

The parties shall notify the Court no later than seven days from the date of this decision as to whether the Defendant's motion, the Plaintiffs' response, the Defendant's reply and their attachments and this decision contain any confidential information that must remain sealed. If so, indicate explicitly what language

should be redacted with due regard to the public's interest in access to court proceedings. If counsel take the position that certain portions of the pleadings filed in support of or against the motion and this Order must be sealed, they should justify their position against public disclosure with relevant case law.

The Court observes that the Defendant's May 9, 2014 motion to seal attempts to justify the sealing of the entire motion by noting that the deposition transcript of Paul Kendrick has been filed under seal. *Def.'s Mot. to Mem. of Law to File "Def.'s Mot. for Partial Summ. J. with Incorporated Mem. of Law" Under Seal* at 1 (ECF No. 191). Similarly, the Magistrate Judge granted the motion to seal confidential transcripts. *Order* (ECF No. 215). However, because a document is sealed for discovery purposes does not mean it should be sealed for purposes of a court ruling on a substantive motion. Once a motion hardens into an order that affects the parties' substantive rights, the presumption of public access applies.

In *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013), the First Circuit explained the common law presumption of public access does not apply to "materials gained through civil discovery." *Id.* at 55. Nevertheless, the First Circuit reiterated that the public has a right of access to "materials on which a court relies in determining the litigants' substantive rights." *Id. at 54 (quoting In re Providence Journal*, 293 F.3d 1, 9-10 (1st Cir. 2002) (quoting *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986)). The materials that the parties submitted in support and in defense of the motion for partial summary judgment and the contents of this

Order appear to be "materials on which a court relies in determining the litigants' substantive rights." *Id.*

If the Court does not hear from counsel within seven days of the date of this decision, all pleadings in support of and against this motion and their attachments and this Order will be unsealed in their entirety. The parties have the continuing obligation to notify the Court as to any personal identifiers that should be redacted under Local Rule 7(c) and fall outside the scope of the right of public access.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 28th day of August, 2014