UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| HEARTS WITH HAITI, INC., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) 2:13-cv-00039-JAW ) |
| PAUL KENDRICK, | ) ) ) |
| Defendant. | ) |

**SANCTIONS ORDER**

On February 20, 2015, the Court issued an order finding Paul Kendrick in contempt of court for violating the Consent Confidentiality Order (ECF No. 16) of this Court dated April 19, 2013 and the Memorandum Decision on Motions to Retain Classified Designation (ECF No. 81) dated October 21, 2013. *Order on Consolidated Mot. for Sanctions* at 33-34 (ECF No. 293). As a sanction for his contempt of court, the Court ordered Paul Kendrick to pay the amount of attorney's fees and costs necessitated by his contempt of court. *Id.* at 34. It rejected Plaintiffs' requests for more punitive sanctions and ordered Norman, Hanson & DeTroy, LLC (NHD), the Plaintiffs' law firm, to submit an application for approval of the attorney's fees and costs associated with their motions for contempt, and were instructed to only claim payments for time spent that resulted in a favorable ruling. *Id.* at 31-33.

On March 6, 2015, NHD filed a verified application for attorney's fees, seeking $28,301.18 in attorney's fees. *Verified Appl. for Att'ys' Fees* at 8 (ECF No. 295). NHD excluded time spent by paraprofessionals, time spent by members of the NHD firm

other than the four lawyers directly involved in the case, and out-of-pocket costs. *Id.* at 3-4. All told, NHD documented $39,596.50 in attorney's fees for time expended in pursuing the motions for contempt, but sought $28,301.18 in recognition of the fact it did not prevail on each motion or on its demanded scope of remedies. *Id.* at 7-8. NHD asked that the Court require Mr. Kendrick to pay the sanction within thirty days of the Court's order. *Id.* at 8.

On March 25, 2015, Mr. Kendrick responded, urging the Court to impose a sanction of less than $4,000.00 "for proving uncontested facts and achieving the limited success they did relative to the extraordinary relief they chased." *Def.'s Objection and Opp'n Mem. to Pls.' Verified Appl. for Att'ys' Fees* at 1-2 (ECF No. 305). Mr. Kendrick provided an analysis of the amount of attorney time that he contends should have been expended on the motions for contempt and he totals the proper charges related to that time to total $9,485.79. *Id.* at 14. Estimating that NHD was "at most 40% successful in what they set out to do," Mr. Kendrick suggests an award of $3,794.32. *Id.* at 15-16.

This is a very troublesome case. There is no middle ground between the earnest contentions of the Plaintiffs, who say they are wholly innocent of Mr. Kendrick's scurrilous and defamatory charges of child sexual abuse, and the dogmatic allegations of the Defendant, Paul Kendrick, who maintains that the Plaintiffs are, in fact, entirely guilty of these awful and injurious acts. But what brings the parties to this Order is not the merits, rather, it is Mr. Kendrick's refusal to abide by court orders, one of which he proposed himself, while the question of who is right and who

is wrong is being resolved by this Court. The Court appreciates Mr. Kendrick's devotion to the protection of children, but it also appreciates the Plaintiffs' desire for their day in court to disprove his allegations. The confidentiality orders were designed to maintain the status quo as the discovery process took place and the case was being prepared for trial. The orders assured the parties that they would be able to exchange private information without fear that the information would be trumpeted to their harm in public.

What makes the motions and the sanction unusual is that when Mr. Kendrick took the stand at the sanctions hearing on January 30, 2015, he frankly admitted that he had violated at least some of the Court's orders, essentially claiming he had the moral right or obligation to do so in order to protect children from abuse. As it turned out, therefore, Mr. Kendrick's admission made the Plaintiffs' motions for sanctions a relatively easy task. Although the facts underlying each claimed violation were complicated and the Plaintiffs' lawyers were required to fit those facts into the terms of different confidentiality orders, it remains true that when Mr. Kendrick testified, he made the Plaintiffs' case for them.

In considering the amount of the necessary sanction, the Court has considered a number of factors. First, the Court accepts NHD's representation as to the amount of attorney time it expended in pursuit of these sanctions. Second, the Court approves NHD's hourly rates for each of the involved attorneys. Third, the Court has considered the fact that the Magistrate Judge previously sanctioned Mr. Kendrick $1,000.00 for a prior violation and that this $1,000.00 penalty did not deter Mr.

Kendrick from committing the violations now before the Court.  *Mem. Decision on Mot. for Sanctions* at 4 (ECF No. 144).  Fourth, the Court has assessed Mr. Kendrick, given his strong sense of right and wrong, as someone unlikely to make an in-person, under oath promise to the Court and break that promise.  On January 30, 2015, Mr. Kendrick stated under oath that before disseminating information about the case in the future, he will "ask [his] attorneys to immediately approach the judge," *Tr. of Proceedings* 107:17-22 (ECF No. 292), a promise the Court intends to hold Mr. Kendrick to.  Fifth, the Court has considered that Mr. Geilenfeld is apparently still in prison in Haiti and if—as Mr. Kendrick firmly believes and Mr. Geilenfeld emphatically denies—he represents a danger to children, Mr. Geilenfeld is no danger to children right now.  Sixth, the Court has considered that the merits of these motions are interwoven with the merits of the underlying action.  As the Court observed in its Order, "the harm caused by disseminating a false allegation is markedly different from the harm caused by disseminating a true one, and the resolution of the truth or falsity of Mr. Kendrick's accusations against Mr. Geilenfeld and Hearts with Haiti must await trial."  *Order on Consolidated Mot. for Sanctions* at 32.  If the jury determines that Mr. Kendrick defamed Mr. Geilenfeld and Hearts with Haiti, then its assessment of damages will be a preferable place to resolve the monetary dispute between the parties than a motion for sanctions.  By contrast, if the jury determines that Mr. Kendrick has not defamed Mr. Geilenfeld and Hearts with Haiti, then the Court will have punished Mr. Kendrick in a case where a jury ultimately sided with him.  Seventh, the Court has considered that its sanction

4

against Mr. Kendrick is for his actions that go beyond the merits of the case and strike at the heart of the civil justice system, penalizing him for willful violations of court orders, something no court can countenance without eroding its authority.

The Court has considered each of these factors and the need to "fashion sanctions that will ensure compliance with the Court's orders and at the same time correct some of the damage done by their violations." *Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Sec'y of the Treasury of P.R.*, No. 08-1707 (JAF), 2013 U.S. Dist. LEXIS 4124, at *18 (D.P.R. Jan. 9, 2013).

The Court GRANTS in part and DENIES in part Plaintiffs' Verified Application for Attorneys' Fees (ECF No. 295). The Court ORDERS a sanction in the total amount of $8,000.00 in favor of the Plaintiffs and against Defendant Paul Kendrick. The Court declines the Plaintiffs' request that Mr. Kendrick be ordered to remit payment within thirty days of this Order. The Court is extremely disturbed that following the January 30, 2015 hearing, Mr. Kendrick apparently emailed others and said that he will ignore the Court sanctions order. But if the Court ordered immediate payment, the Court foresees endless proceedings in which the Court and the parties grapple with enforcement, while the merits of the case remain unresolved. The Court views the ultimate resolution of the merits of this case by a jury, not the piecemeal determination of side disputes, to be the main event and something that should happen as soon as possible, once Mr. Geilenfeld's issues with the Haitian authorities are resolved.

As a housekeeping matter, the Court GRANTS Norman, Hanson & DeTroy, LLC's Motion to Seal Unredacted Version of Exhibit Four to Its Application for Attorneys' Fees (ECF No. 296).

Finally, on January 30, 3015, counsel for the Plaintiffs updated the Court as to the status of the case. After reminding the Court that Haiti has an inquisitional model for criminal justice in which a judge investigates the case and makes recommendations as to whether to proceed criminally, Attorney Deane said that the judge has completed an investigation in Haiti and that the prosecutor has reviewed the judge's investigation. He indicated that the next step was for the judge who handled the investigation to review the prosecutor's comments and to decide whether to issue what is called an ordinance, something similar to a probable cause determination. Attorney Deane thought that process would be completed within thirty to sixty days. The Court is unaware of any further developments in Haiti. Meanwhile, the parties continue to litigate discovery issues and a discovery conference is scheduled before the Magistrate Judge on April 24, 2015. As Mr. Geilenfeld's physical presence in this Court appears to be essential to the proper disposition of the lawsuit, the Court will inquire how the parties intend to proceed given his continued incarceration.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of April, 2015