UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| HEARTS WITH HAITI, INC. et al.<br><br>    Plaintiffs<br><br>v.<br><br>PAUL KENDRICK<br><br>    Defendant | CIVIL ACTION: 2:13-cv-00039-JAW |

## PLAINTIFFS' MOTION IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EVIDENCE OF LOST DONATIONS

    Defendant Paul Kendrick grounds his motion on the argument that a non-profit corporation, which by definition does not make or distribute profits, cannot suffer a pecuniary loss. This defense, frequently asserted by those sued by non-profit plaintiffs, is categorically rejected every time with the same conclusion: a non-profit plaintiff—that distributes proceeds to those in need—should not go uncompensated when a for-profit corporation—that distributes its proceeds to shareholders or similar—would have a remedy against a tortfeasor. This case is no different. Kendrick, through his defamatory scheme, destroyed Hearts with Haiti's (HWH) ability to generate income and, foreseeably, HWH distributed substantially less proceeds to its beneficiaries. Because this loss is both pecuniary and permanent, Kendrick's motion should be denied. HWH should not be left uncompensated merely because of its status as a charitable organization.

1

1.     **HWH Suffered a Pecuniary Loss**

"A pecuniary loss or damage is a material one, susceptible of valuation in dollars and cents." *Carrier v. Bornstein*, 136 Me. 1, 1 A.2d 219, 220 (1938); *see also* Black's Law Dictionary (9th ed. 2009) ("A loss of money or something having monetary value."). Both for-profit and non-profit corporations are entitled to recover pecuniary losses incurred at the hands of a tortfeasor regardless of whether the loss could theoretically pass through to a third party. The argument that a plaintiff suffers no cognizable injury because a loss is transferable to another person, customer, or entity, has been rejected by countless courts, including the U.S. Supreme Court on at least four separate occasions. *See, e.g.*, *Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U.S. 390, 399 (1906) ("We do not go behind the person of the sufferer. We say that he has been defrauded or subjected to duress, or whatever it may be, and stop there."); *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 496 (Minn. 1996) ("The argument that no injury has been suffered because costs were passed through one entity to customers, consumers . . . has been uniformly rejected in the courts.").

The pass-through defense is similarly rejected when the plaintiff is a non-profit corporation. For example, in *Am. Baptist Churches of Metro. New York v. Galloway*, the court, recognizing that the "pass-through defense" would essentially preclude non-profit corporations, whose function is typically to pass proceeds or benefits to third parties, from accessing the courts, remanded the trial court's dismissal of a non-profit's fraud claims. 271 A.D.2d 92, 97-98 (N.Y. App. Div. 2000). In discarding the argument that Kendrick now makes—that a non-profit corporation cannot suffer a pecuniary loss—the court wrote:

> First of all, as a matter of public policy, it would be unfair and counterproductive for a charitable organization to have no recourse against a dishonest fiduciary who thwarts the organization's endeavors and renders futile the expenditures of time and money invested in developing the project. Second, the [trial court's] ruling rests on a fundamental misunderstanding of the nature of a not-for-profit corporation. A not-for-profit corporation is not the same as a corporation that loses money. It is simply a corporation that devotes whatever proceeds it receives from its operations to charitable causes rather than disbursing the funds as dividends to shareholders and compensation to executives. Just as the goal of a for-profit corporation is to make money for its investors, the goal of a not-for-profit is to make money that can be spent on furthering its social welfare objectives. Both types of companies have suffered an injury when a fiduciary's misconduct frustrates these goals.

*Id.*; *see also Humphrey*, 551 N.W.2d at 496 (rejecting cigarette manufacturer's assertion of the "pass through" defense and the argument that a non-profit health insurer could merely pass on damages to its ratepayers).

HWH's purpose as a non-profit corporation is to raise money for the benefit of charitable causes in Haiti. Like the non-profit in *Galloway*, HWH suffered a substantial financial loss because of the tortious conduct of another—specifically, Kendrick's defamatory campaign that decimated HWH's ability to raise money. The non-profit has been damaged in that it could not disperse funds to its beneficiaries. And like a for-profit corporation, HWH can recover its pecuniary loss.

None of the cases that Kendrick cites and discusses remotely support his contention that the pass-through defense precludes HWH's recovery:

    a.    *Housing Works v. Turner*

In *Housing Works, Inc. v. Turner*, a non-profit plaintiff sought to introduce expert testimony that the value of government contracts it would have received without the defendants' constitutional violations could be recovered as mission non-fulfillment

damages.[1]  362 F. Supp. 2d 434, 447-48 (S.D.N.Y. 2005).  In excluding the proposed testimony pursuant to Fed. R. Evid. 702, the court concluded that the plaintiff could not value the expression of its mission—what are typically awarded when an organization cannot fulfill its mission due to a constitutional violation—based on potential contract revenue because the proposed expert testimony unhelpful, unreliable, and did "little more than attach a number to the value of Housing Works of expressing its mission." *Id.* at 48.  The court noted, in discussing the reliability of the expert's opinion, that the plaintiff's cost of performing the potential government contracts exceeded their value and therefore the expert could not provide a logical connection between "the face value of the contracts and any quantification of that loss of expression." *Id.*

Unlike the *Housing Works* plaintiff, HWH is not seeking mission-nonfulfillment damages incurred because it could not engage in a constitutionally-protected activity; instead, HWH seeks to recover, in additional to its general reputational damages, revenue lost because of Kendrick's defamatory campaign.  This quantifiable pecuniary loss is entirely different than the Section 1983 damages sought in that case.  Nowhere does the *Housing Works* court suggest, as Kendrick represents, that the plaintiff in that case could not recover because it does not, by definition, make a profit.

      **b.**    ***Samaritan Inns, Inc. v. District of Colombia*** **and** ***Armenian Assembly of America v. Cafesjian***

In *Samaritan Inns*, the D.C. Circuit explicitly rejected the argument that Kendrick now makes:

---

[1] Mission-nonfulfillment damages are permitted when an organization is prevented, by tortious conduct, from engaging in some constitutionally protected activity.  *See Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) (concluding non-profit could recover when its mission of promoting equal opportunity housing was impaired by the defendant); *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 649-50 (2d Cir. 1998) (organization had standing to recover damages when First Amendment right to participate in parade was allegedly infringed).

> We see no principled basis on which to conclude that a nonprofit corporation, such as Samaritan Inns, may not recover contributions lost or delayed as a result of the District's unlawful interference with its activities if such interference was the proximate cause of the loss.

114 F.3d 1227, 1234 (D.C. Cir. 1997). The court ultimately concluded, however, that the non-profit in that case was "not entitled to recover damages for 'lost' contributions because it [did] not show[] with reasonable certainty that any contributions were lost." *Id.* at 1235. The court's determination was based on its finding that the lost donations were not actually "lost" but "delayed." *Id.* at 1236-37. Similarly, The *Cafesjian* court, following *Samaritan Inns*, concluded that the nonprofit plaintiff could recover lost donations if it could convince the finder of fact that the donations were lost and not merely delayed. 746 F. Supp. 2d 55, 67 (D.D.C. 2010).

In this case, HWH will present evidence that Kendrick's defamatory conduct caused in a substantial decrease in donations to HWH. As a direct result, HWH suffered a pecuniary loss. The fact that the non-profit "passed-through" this loss because it simply distributed fewer proceeds to its beneficiaries in Haiti is. As discussed *infra*, these donations have been permanently lost not merely delayed like those in *Samaritan Inns*.

2.  **HWH's Pecuniary Loss is Permanent**

A charitable fundraising program that solicits contributions on an annual basis will be permanently harmed if, because of tortious conduct, the charity does not receive a donation for a given year. *Samaritan Inns*, 114 F.3d at 1236. A donation received the next year does not replace the previous year's lost donation, that will never be recovered—"a donation in one year will not compensate the charity for a donation "lost" in a prior year as a result of the defendant's misconduct. Had it not been for the

misconduct, the charity would have received contributions in *both* years." *Id.* (emphasis added). If, on the other hand, a fundraising program is not cyclical but a one-time capital campaign, the associated lost contributions are not necessarily lost but merely delayed. *Id.*; *see also Cafesjian*, 746 F. Supp. 55, 67 (distinguishing from the "capital campaign of limited duration" in *Samaritan Inns*).

HWH's fundraising scheme is entirely cyclical in nature. The charity relies on donations made year after year. These donations, which suffered immensely as a result of Kendrick's defamation campaign, are gone forever and cannot be regained through future charitable giving.

## CONCLUSION

For these reasons, the Plaintiffs request that the Court enter an order denying the Defendant's Motion to Exclude Evidence of Lost Donations.

DATED: June 24, 2015

/s/ Devin W. Deane
Peter J. DeTroy, Esq.
Russell B. Pierce, Esq.
Devin W. Deane, Esq.
Attorneys for Plaintiffs

Attorney for Plaintiffs

NORMAN, HANSON & DeTROY, LLC
Two Canal Plaza
P.O. Box 4600
Portland, Maine 04112-4600
(207) 774-7000
ddeane@nhdlaw.com

CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2015, I filed the PLAINTIFFS' MOTION IN OPPOSITION TO DEFENDANT'S MOTION TO EXLCUDE EVIDENCE OF LOST DONATIONS with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to all registered counsel of records as follows:

David C. King, Esq.,
F. David Walker, Esq., and
Brent Singer, Esq.
Rudman & Winchell
84 Harlow Street
P.O. Box 1401
Bangor, ME 04401
*dking@rudmanwinchell.com*
*dwalker@rudmanwinchell.com*
*bsinger@rudmanwinchell.com*

/s/ Devin W. Deane
Devin W. Deane, Esq.
Attorney for Plaintiffs

NORMAN, HANSON & DeTROY, LLC
Two Canal Plaza
P.O. Box 4600
Portland, Maine 04112-4600
(207) 774-7000
*ddeane@nhdlaw.com*

2927159