UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| HEARTS WITH HAITI, INC., et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | 2:13-cv-00039-JAW |
| PAUL KENDRICK, | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION IN LIMINE TO EXCLUDE REFERENCES OR TESTIMONY CONCERNING ALLEGED PREVIOUS BAD ACTS OR CRIMINAL HISTORIES OF VICTIM-WITNESSES**

With trial scheduled to begin next week in this defamation action, the Defendant asks the Court to make a blanket ruling that Plaintiffs may not introduce any evidence concerning alleged prior bad acts or criminal histories of victim-witnesses, unless the Court approves of such testimony outside the presence of the jury. The Court denies the motion to the extent the Defendant seeks a blanket prohibition against the Plaintiffs' use of such evidence, but grants the motion to the extent the Defendant seeks an order cautioning the Plaintiffs to receive a ruling before using any specific bad acts or criminal conviction evidence.

## I. BACKGROUND

Over the last several years, Paul Kendrick has accused Michael Geilenfeld of sexually molesting children under his control in Haiti, and Mr. Kendrick has voiced his accusations to numerous third parties. *See Order Denying Def.'s Mot. for Partial Summ. J.* at 4-42 (ECF No. 237) (recounting numerous examples of Mr. Kendrick's

communications). Mr. Geilenfeld denies the allegations, and as the Court has elsewhere recounted, "[t]he positions of the parties could not be more antithetical." *Order on Consolidated Mot. for Sanctions* at 20 (ECF No. 293). Whereas Mr. Geilenfeld views "himself as a good man . . . who has dedicated his life to helping some of the poorest and most disadvantaged children in the world," Mr. Kendrick views Mr. Geilenfeld "as evil incarnate, a man who under a beneficent guise is a pedophile and who has created a charitable fiction to lure vulnerable and innocent boys to a place where he can control them in order to sexually assault and rape them with impunity." *Id.*

## II. THE PARTIES' POSITIONS

### A. Defendant's Motion

On June 12, 2015, Mr. Kendrick moved in limine to exclude "any reference or testimony in the presence of the jury concerning alleged previous bad acts or criminal histories of victim-witnesses, without first obtaining the permission of the Court outside the hearing of the jury." *Def.'s Mot. in Limine to Exclude References or Test. Concerning Alleged Previous Bad Acts or Criminal Histories of Victim-Witnesses* at 1 (ECF No. 357) (*Def.'s Mot.*). Mr. Kendrick anticipates that "seven men will recount how Mr. Geilenfeld sexually molested them while they were children living in Haiti under his control," and because they lived in "some of the worst and most vulnerable conditions imaginable . . . [i]t is not surprising that these experiences left serious emotional scars and that the lives of these men have not been without turmoil, including some criminal matters." *Id.* Mr. Kendrick also notes that most of these

"matters are old and cold, some involve allegations without arrests, some involve arrests without convictions, and where there are convictions, they would be inadmissible" under Rule 609. *Id.*

**B. Plaintiffs' Opposition**

On June 24, 2015, the Plaintiffs responded in opposition. *Pls.' Opp'n to Def.'s Mot. in Limine to Exclude References or Test. Concerning Alleged Previous Bad Acts or Criminal Histories of Victim-Witnesses* (ECF No. 400) (*Pls.' Opp'n*). Notably, Plaintiffs explain "they intend to include evidence of witnesses' criminal convictions for the most part for purposes other than to attack directly the witness's character for truthfulness under Rule 609." *Id.* at 1-2. Instead,

> [t]he witnesses' lengthy criminal histories are relevant and probative to a host of other issues including Defendant's negligent or reckless disregard for the truth (i.e., his reasonableness in mass broadcasting false allegations from sources he knew to be highly incredible), his state of mind, and the witnesses' underlying motives and motivations for making allegations of abuse against Plaintiffs. For some of the witnesses, their criminal history is part of the story about their involvement or connection to Plaintiff Geilenfeld and St. Joseph's Family.

*Id.* at 2. In short, Plaintiffs argue they "must be able to show the jury the difference between a defamation defendant's reliance on a representation from the Pope versus a representation from Bernie Madoff." *Id.* In addition, Plaintiffs say some of the prior convictions and incarcerations will be used to address the victim-witnesses' "perceptions that Plaintiff Geilenfeld failed to help them secure a release from jail, [and] explain the witnesses' motivations for making and convincing others to make false allegations of abuse against Plaintiff Geilenfeld." *Id.*

## III. DISCUSSION

### A. A Lack of Foundational Evidence

The Defendant's motion contains such a lack of concreteness that the Court is unable to frame a sensible order. He mentions unnamed "previous bad acts" and "criminal histories" but does not say what the acts and crimes were. He asserts that some of these bad acts or crimes "involve allegations without arrests, some involve arrests without convictions, and where there are convictions, they would be inadmissible." *Def.'s Mot.* at 1. The Court is entirely at sea as to what is being presented here. The Court does not know, for example, whether the witnesses were found arrested or were found guilty of perjury, fraud or shoplifting, where the crimes and convictions took place, and what supposedly bad acts prompted the motion. Being in the dark about what evidence the Defendant wishes excluded, the Court is unable to enlighten the parties on whether the evidence will be admissible. *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001) ("Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds").

### B. Federal Rules of Evidence 608 and 609

With this said, the Plaintiffs' response is also unhelpful. They state that "they intend to include evidence of witnesses' criminal convictions <u>for the most part</u> for purposes other than to attack directly the witness's character for truthfulness under Rule 609." *Pls.' Opp'n* at 1-2 (emphasis added). The wiggle language "for the most part" telegraphs that the Plaintiffs are being cagey about whether some of the prior

convictions may be admissible for impeachment purposes under Rule 609. The Court therefore does not know whether to analyze the admissibility of these unnamed prior convictions under Rule 609(a) or some other rule of evidence.

If the Plaintiffs seek to introduce prior convictions in part under Rule 609(a), they face a number of hurdles, including the need for the conviction to be a proper predicate under Rule 609(a)(1) or (2), the time limitation under Rule 609(b), and the juvenile limitation under Rule 609(d). *See generally* FED. R. EVID. 609. An added wrinkle is that some of these prior convictions may have occurred in Haiti, meaning outside the United States. Courts have allowed some but not all foreign convictions to be admitted. *See United States v. Wilson*, 556 F.2d 1177, 1177-78 (4th Cir. 1977) (admitting a German criminal conviction); *THK Am., Inc. v. NSK, Ltd.*, 917 F. Supp. 563, 569-71 (N.D. Ill. 1996) (analyzing whether a prior Japanese conviction was admissible under Rule 609).

**C. Other Uses**

"For the most part" the Plaintiffs explain, they intend to use evidence of the victim-witnesses' prior convictions or bad acts to (1) demonstrate motive or bias against Mr. Geilenfeld, and (2) show Mr. Kendrick's state of mind.

The general rule is that evidence of a prior crime or other bad act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). However, such evidence may be admissible "for another purpose, such as proving motive." FED. R. EVID. 404(b)(2). As the First Circuit has explained, "[t]he 'laundry

list' of admissible purposes for evidence of prior bad acts is not exhaustive. It is sufficient only that there be some non-propensity purpose for its admission." *United States v. Lynn*, 856 F.2d 430, 435 n.11 (1st Cir. 1988) (internal citation omitted). Again, the record is so vague that the Court is unable to speculate about whether undefined prior bad acts or convictions might be admissible at trial.

**D. Prior Revelation and Ruling**

To the extent the Defendant is seeking a pre-trial ruling that prevents the Plaintiffs from introducing any prior bad act or prior conviction evidence on cross-examination, the Court declines to do so. To the extent the Defendant is seeking a pre-trial ruling that before confronting a witness with a prior bad act or conviction, the Plaintiffs must approach the Court, specify the potentially impeachable evidence, and seek the Court's permission, the Court agrees that this is the proper procedure. In view of the serious potential problems with such evidence, even on cross-examination, to blurt out before a jury that a witness has a criminal history consisting of "more than a dozen felony convictions" and has been described as an "incorrigible criminal whose crimes overall . . . were so serious that he was considered a danger to the community," *Pls.' Opp'n* at 2, would be highly ill-advised and prejudicial. The Court agrees with the Defendant that before the Plaintiffs confront a witness with his prior bad acts or criminal convictions, they must first inform the Court and obtain a ruling.

Nor does it appear that the bad acts or criminal convictions evidence is a side issue. From the Defendant's witness list, the Court has learned that Mr. Kendrick

intends to call seven witnesses either by videotaped deposition or in person to testify that Mr. Geilenfeld was sexually inappropriate with them while they were minors under his care. *Def.'s Witness List* at 1-2 (ECF No. 361). As truth is a defense to a defamation action, *Cookson v. Brewer Sch. Dep't*, 2009 ME 57, ¶¶ 27-30, 974 A.2d 276, the Plaintiffs must intend to cross-examine these witnesses about whether they are being truthful and the jury's evaluation of the credibility of these witnesses would appear vital to the resolution of this case.

Therefore, if they intend to cross-examine these witnesses about prior bad acts or convictions, now is not the time for the parties, particularly the Plaintiffs, to hold their cards close to their vest. Presumably, this cross-examination material is known to the witness, the parties and the attorneys, but it is not to the Court. For example, it appears that some of these witnesses may have been convicted of a crime in Haiti and the Plaintiffs may wish to use that conviction to impeach the witness. "[F]oreign convictions stand on the same footing as domestic proceedings provided that the procedural protections necessary for fundamental fairness are observed by the foreign jurisdiction." *United States v. Rodarte*, 596 F.2d 141, 146 (5th Cir. 1979) (per curiam). "While the burden is on the opponent of the conviction to demonstrate a lack of fundamental fairness, where the opponent has provided a specific basis for questioning the trustworthiness of the conviction, the proponent should be expected to demonstrate that the foreign legal system afforded the procedural protections necessary for fundamental fairness." *Starski v. Kirzhnev*, No. 06-10157-DPW, 2011 U.S. Dist. LEXIS 26412, at *20-21 (D. Mass. Mar. 15, 2011) (internal citations

omitted). The Court advises the parties that it would be better not to spring the details of these matters on the Court during trial and expect a quick and satisfactory ruling.

## IV. CONCLUSION

The Court GRANTS in part and DENIES in part Defendant's Motion in Limine to Exclude References or Testimony Concerning Alleged Previous Bad Acts or Criminal Histories of Victim-Witnesses (ECF No. 357).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 29th day of June, 2015