UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| HEARTS WITH HAITI, INC., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) 2:13-cv-00039-JAW ) |
| PAUL KENDRICK, | ) ) ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ALLEGED LOST DONATIONS**

With trial scheduled to begin next week in this highly contentious action, the Defendant moves in limine to exclude evidence of the non-profit corporate Plaintiff's alleged lost donations that the Plaintiff claims occurred as a result of the Defendant's alleged defamatory statements and other unlawful conduct. The Court denies the motion.

**I.   BACKGROUND**

Over the last several years, Paul Kendrick has made numerous accusations against Michael Geilenfeld to various third parties, claiming that Mr. Geilenfeld is a child molester and that he has been sexually abusing children during his time as Executive Director of St. Joseph Family of Haiti. *See Order Denying Def.'s Mot. for Partial Summ. J.* at 4-42 (ECF No. 237) (*Order*) (recounting numerous examples of Mr. Kendrick's communications). According to the Plaintiffs' Complaint, St. Joseph Family of Haiti "operates a network of nonprofit institutions that provide residence,

room and board, formal education, and religious education to disabled and disadvantaged Haitian children." *Verified Compl. and Demand for Jury Trial* ¶ 7 (ECF No. 1) (*Compl.*).

The corporate Plaintiff, Hearts With Haiti, Inc. (HWH), is a substantial financial contributor to St. Joseph Homes, and solicits and accepts donations throughout the United States. *Order* at 4. Mr. Kendrick has accused HWH of funding and turning a blind eye to Mr. Geilenfeld's misconduct, despite knowing that he was sexually abusing children. *See id.* at 4-42. HWH claims that, as a result of Mr. Kendrick's actions, it has suffered a decrease in donations. *Compl.* ¶ 88.

## II.  THE PARTIES' POSITIONS

### A.  Defendant's Motion

On June 12, 2015, Mr. Kendrick moved in limine to exclude "testimony on behalf of [HWH] of the amount of alleged lost donations due to the alleged defamatory publications or other alleged unlawful conduct of Mr. Kendrick." *Def.'s Mot. in Limine to Exclude Evidence of Alleged Lost Donations* at 1 (ECF No. 355) (*Def.'s Mot.*). Mr. Kendrick seeks a hearing pursuant to Rule 104(c)(3) to establish that "even if HWH received fewer donations as a result of publications by Mr. Kendrick, HWH itself suffered no approximately equivalent pecuniary loss." *Id.* at 2. This is because, according to Mr. Kendrick, HWH "would have merely passed through that money to St. Joseph Family of Haiti and St. Joseph Family's respective homes, schools, and dance troupe. Thus, HWH can demonstrate no pecuniary harm to itself equivalent to the amount of its alleged lost donations." *Id.* Mr. Kendrick also contends that

HWH lacks standing to seek damages on behalf of St. Joseph Family of Haiti or its Haitian affiliates. *Id.* Mr. Kendrick says that HWH's case is similar to that of the non-profit plaintiff in *Housing Works, Inc. v. Turner*, 362 F. Supp. 2d 434 (S.D.N.Y. 2005) and, therefore, "[t]estimony as to the amount of such alleged lost donations should . . . be excluded." *Def.'s Mot.* at 3.

In the alternative, Mr. Kendrick argues that "[e]ven if the amount of truly lost donations were relevant . . . HWH would still have to prove that such donations were truly lost, rather than simply delayed." *Id.* at 4. In support of his argument, he compares this case to that of the non-profit plaintiff in *Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227 (D.C. Cir. 1997) and concludes that "HWH has no evidence of lost donations and therefore should not be permitted to allude to the alleged loss of millions of dollars in donations." *Def.'s Mot.* at 4.

B.  **Plaintiffs' Opposition**

On June 24, 2015, the Plaintiffs responded in opposition. *Pls.' Mot. in Opp'n to Def.'s Mot. to Exclude Evidence of Lost Donations* (ECF No. 395) (*Pls.' Opp'n*). They contend that the courts have rejected Mr. Kendrick's argument—that HWH has suffered no pecuniary loss—"every time." *Id.* at 1. Plaintiffs claim that "[t]he argument that a plaintiff suffers no cognizable injury because a loss is transferable to another person, customer, or entity, has been rejected by countless courts, including the U.S. Supreme Court on at least four separate occasions." *Id.* at 2. They also say this contention, which they refer to as the "pass-through defense," has been rejected in relation to non-profit corporate plaintiffs. *Id.*

3

In response to the cases relied upon by Mr. Kendrick in support of his position, Plaintiffs counter that they do not "remotely support his contention that the pass-through defense precludes HWH's recovery." *Id.* at 3-5.

Finally, the Plaintiffs argue that the lost donations to HWH are "permanent," and will be "gone forever and cannot be regained through future charitable giving." *Id.* at 5-6.

## III. DISCUSSION

The Maine Law Court observed that "[a] pecuniary loss or damage is a material one, susceptible of valuation in dollars and cents." *Carrier v. Bornstein*, 136 Me. 1, 1 A.2d 219, 220 (1938). As a general principle, courts outside Maine, including the United States Supreme Court, have stated on a number of occasions that a plaintiff suffers a pecuniary loss even if the loss could have passed through to a third party. *See, e.g.*, *State by Humphrey v. Philip Morris Inc.*, 551 N.W. 2d 490, 496-97 (Minn. 1996) ("The argument that no injury has been suffered because costs were passed through one entity to customers, consumers, or other entities usually arises in antitrust cases. It has been uniformly rejected in the courts, primarily on the theory that the injury is sustained as soon as the price, artificially raised for whatever reason, has been paid. . . . That the pass through defense is untenable appears equally evident outside of the context of antitrust and laws relating to regulated industry"); *Adams v. Mills*, 286 U.S. 397, 407 (1932) ("Neither the fact of subsequent reimbursement by the plaintiffs from funds of the shippers nor the disposition which may hereafter be made of the damages recovered is of any concern to the

4

wrongdoers"); *Chattanooga Foundry v. Atlanta*, 203 U.S. 390, 399 (1906) ("We do not go behind the person of the sufferer. We say that he has been defrauded or subjected to duress, or whatever it may be, and stop there").

Courts have also held that non-profit corporations can suffer pecuniary losses, and rejected the pass-through defense as it relates to non-profit companies. *See, e.g.*, *Am. Baptist Churches of Metro. N.Y. v. Galloway*, 271 A.D. 2d 92, 97 (N.Y. App. Div. 2000) ("The IAS court erred in concluding that a not-for-profit corporation could never sustain compensable damages"); *Humphrey*, 551 N.W. 2d at 497 (holding that a non-profit health care organization could sue under consumer protection theories and was not barred by the pass-through defense). This makes sense. As their name implies, non-profit corporations are in the business not for their own profit, but either to spend their proceeds or to distribute them to further their charitable goals. The *Galloway* Court explained:

> First of all, as a matter of public policy, it would be unfair and counterproductive for a charitable organization to have no recourse against a dishonest fiduciary who thwarts the organization's endeavors and renders futile the expenditures of time and money invested in developing the project. Second, the IAS court's ruling rests on a fundamental misunderstanding of the nature of a not-for-profit corporation. A not-for-profit corporation is not the same as a corporation that loses money. It is simply a corporation that devotes whatever proceeds it receives from its operations to charitable causes rather than disbursing the funds as dividends to shareholders and compensation to executives. Just as the goal of a for-profit corporation is to make money for its investors, the goal of a not-for-profit is to make money that can be spent on furthering its social welfare objectives. Both types of companies have suffered an injury when a fiduciary's misconduct frustrates these goals.

271 A.D. 2d at 97-98.

Here, Plaintiffs allege that HWH is a non-profit corporation that raises money "for the benefit of charitable causes in Haiti." *Pls.' Opp'n* at 3. As a result of Mr. Kendrick's alleged defamatory statements, however, it claims that it has lost donations. HWH may present evidence at trial to prove this allegation.

The cases cited by Mr. Kendrick do not support his theory. The *Housing Works* case is completely inapposite. In *Housing Works*, the non-profit plaintiff attempted to introduce expert testimony that the "proper measure of damages" for losses on public contracts it allegedly suffered from the "defendants' unconstitutional conduct" is the face value of the unawarded contracts. 362 F. Supp. 2d at 446-47. The *Housing Works* plaintiff proposed to call an expert witness to testify that it "suffered losses equivalent to the sum of the face value of all of its lost or suspended government contracts . . . [and] these losses greatly inhibited Housing Works['] ability to fulfill its mission to its full and unbridled capacity." *Id.* at 446 (internal quotation marks omitted).

The *Housing Works* Court affirmed a recommendation to exclude the plaintiff's expert from testifying. *Id.* at 447-49. The *Housing Works* Court first concluded that the plaintiff's expert was attempting to express an opinion about a legal conclusion as to the proper measure of damages. *Id.* at 448 ("Her opinion . . . is little more than a legal conclusion and well beyond the bounds of permissible expert testimony"). Furthermore, the *Housing Works* Court resolved that the proposed expert did not have the "relevant expertise" to express her opinions. *Id.* ("Dr. Abzug is not the

6

proper vehicle for introducing evidence of the alleged injury"). Neither issue is presented in this case.

Next, the *Housing Works* Court observed that the plaintiff conceded that its "costs in providing services under the contracts would have exceeded the revenue they would have produced." *Id.* at 446. The Court observed that, ironically, the plaintiff "is better off financially than it would have been absent the alleged constitutional violations," *id.*, because "if Housing Works had obtained the contracts, it would have been economically worse off than without them. Accordingly, it has suffered no economic loss." *Id.* at 448. The same cannot be said here.

Having reviewed *Housing Works*, the Court is uncertain why Mr. Kendrick contends that the case supports the conclusion that a not-for-profit corporation may not claim pass-through contributions as damages. In any event, the Court finds *Housing Works* unconvincing.

Finally, as regards Mr. Kendrick's argument that HWH needs to prove that its losses "were truly lost, rather than simply delayed," *Def.'s Mot.* at 4, the caselaw upon which he relies hurts his argument rather than helps it. In *Samaritan Inns*, the D.C. Circuit noted:

> We see no principled basis on which to conclude that a nonprofit corporation, such as Samaritan Inns, may not recover contributions lost or delayed as a result of the District's unlawful interference with its activities if such interference was the proximate cause of the loss.

114 F.3d at 1234. In that case, however, the plaintiff was "not entitled to recover damages for 'lost' contributions because it [did] not show[] with reasonable certainty that any contributions were lost." *Id.* at 1235. HWH says it "will present evidence

7

that Kendrick's defamatory conduct caused . . . a substantial decrease in donations to HWH." *Pls.' Opp'n* at 5.  In short, whether HWH is able to establish its damages is a matter of proof, not law.

The Court denies Mr. Kendrick's request for a hearing pursuant to Rule 104(c)(3) on this issue.

## IV. CONCLUSION

The Court DENIES Defendant's Motion in Limine to Exclude Evidence of Alleged Lost Donations (ECF No. 355).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of July, 2015