UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| HEARTS WITH HAITI, INC. and | ) | |
| MICHAEL GEILENFELD, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:13-cv-00039-JAW |
| | ) | |
| PAUL KENDRICK, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION IN LIMINE TO EXCLUDE
REFERENCES OR TESTIMONY CONCERNING IMPRISONMENT IN
HAITI OR PAIN AND SUFFERING THEREFROM AND ON PLAINTIFFS'
MOTION IN LIMINE TO INCLUDE THE TESTIMONY OF ALAIN LEMITHE**

With trial scheduled to begin next week in this highly contentious defamation case, Paul Kendrick moves in limine to exclude references or testimony concerning Michael Geilenfeld's imprisonment in Haiti, or any pain and suffering he may have sustained during that period. The Court denies his motion. The Plaintiffs also filed a motion to include the testimony of a Haitian lawyer to testify about the Haitian judicial process and Michael Geilenfeld's criminal case in Haiti, including his opinion as to why the charges against Mr. Geilenfeld were ultimately dropped. The Court will allow Mr. Lemithe to testify on a limited basis as discussed during the Final Pretrial Conference and as contemplated in the Final Pretrial Order, but otherwise denies the motion, reserving specifics for trial.

I.   **BACKGROUND**

   A.   **Hearts With Haiti, Inc. and Michael Geilenfeld**

Hearts With Haiti (HWH) is a nonprofit corporation with a mission to provide support to disabled and disadvantaged Haitian children. *Compl.* at 1 (ECF No. 1). Michael Geilenfeld, a resident of Pétion-Ville Commune, Port-au-Prince Arrondissement, Republic of Haiti, is the founder and Executive Director of St. Joseph Family of Haiti. *Id.* ¶ 2. Mr. Geilenfeld has been involved with a number of organizations, including St. Joseph Family of Haiti, St. Joseph's Home for Boys, Resurrection Dance Theater of Haiti, Wings of Hope, Trinity House, and Lekòl Sen Trinite, all of which assist Haitian children in different ways. *Id.* ¶¶ 7-39. HWH was established in 2001 to support these organizations. *Id.* ¶¶ 40-42.

### B.    Paul Kendrick

Paul Kendrick is a resident of Freeport, Maine. *Id.* ¶ 3. In 2011, Mr. Kendrick became aware of allegations that Mr. Geilenfeld was abusing Haitian children and, firmly believing the allegations to be true, he emailed and published statements that warned numerous third parties about Mr. Geilenfeld's alleged abuse of children; those third parties included benefactors of HWH. *Id.* ¶¶ 47-67; *see also Order Denying Def.'s Mot. for Partial Summ. J.* at 4-42 (ECF No. 237) (*Order*) (recounting numerous examples of Mr. Kendrick's communications). Mr. Kendrick has also accused HWH of funding Mr. Geilenfeld's alleged sexual abuse, and of essentially turning a blind eye despite knowing that Mr. Geilenfeld was sexually abusing children. *See Order* at 4-42.

### C.    The Hearts With Haiti Lawsuit

Mr. Geilenfeld has steadfastly denied the allegations of his abuse of Haitian children and on February 6, 2013, he and HWH filed suit in this Court against Mr. Kendrick, alleging he had defamed them, had placed Mr. Geilenfeld in a false light,[1] and had tortiously interfered with advantageous business relations, and they sought damages and an injunction against Mr. Kendrick. *Compl.* at 1-20. On March 8, 2013, Mr. Kendrick answered the Complaint, admitting some and denying other allegations, and asserting, among other affirmative defenses, the affirmative defense of truth or lack of falsity. *Defenses and Ans.* (ECF No. 8). The trial in this case was originally scheduled to begin on October 7, 2014. *Trial List* (ECF No. 231).

### D. Michael Geilenfeld is Arrested and Imprisoned in Haiti

On September 23, 2014, counsel for the Plaintiffs informed the Court that Haitian authorities had arrested Mr. Geilenfeld in Haiti and he was in prison. *Oral Mot. to Continue* (ECF No. 260). This news caused the trial scheduled to begin October 7, 2014 to be continued. *Oral Order Granting Mot. to Continue Trial for 90 Days* (ECF No. 261).

### E. January 30, 2015: An Update on Michael Geilenfeld and an Explanation of the Haitian Legal System

During a sanctions hearing on January 30, 2015, the Court asked Mr. Geilenfeld's lawyers about his status in Haiti. *Tr. of Proceedings* 6:24-7:5 (ECF No. 292). Counsel confirmed that Mr. Geilenfeld remained incarcerated in Haiti while the Haitian judicial system determined whether there was sufficient evidence to

---

[1]     On June 9, 2015, the Court granted Mr. Kendrick's motion to dismiss HWH's false light invasion of privacy claim; the Order did not impact Mr. Geilenfeld's claim under this theory. *Order on Def.'s Mot. to Dismiss* (ECF No. 347).

bring charges.  They explained that Haiti has an inquisitorial or inquisition legal system where a private lawyer initiates the criminal process by filing a complaint. *Id.* 7:1-11.  The complaint is referred to a judge, called an inquisition judge, who performs an investigation, which includes conducting hearings and taking testimony. *Id.* 7:10-13.  The initial investigation typically takes four to five months and, at the end of the initial investigation, the inquisition judge issues a preliminary report.  *Id.* 7:14-18.  As of January 30, 2015, Mr. Geilenfeld's lawyers understood that this part of the process had been completed in his case.  *Id.* 7:14-15.

By January 30, 2015, the Haitian criminal case against Mr. Geilenfeld had reached the second stage, during which the investigating judge consults with the prosecutor to determine whether charges should be formally initiated and if so, what charges should be brought.  *Id.* 7:17-21.  This consultation may take several weeks. *Id.* 7:21.  As of January 30, 2015, Mr. Geilenfeld's lawyers understood that this part of the process had been completed as well.  *Id.* 7:21-22.

Mr. Geilenfeld's lawyers went on to explain that the case would then return to the inquisition judge to issue what is called an ordinance, a court order similar to an indictment.  *Id.* 7:23-8:4.  Although there is no deadline for this process, his lawyers believed this part of the process would conclude within the next thirty to sixty days from January 30, 2015.  *Id.* 9:22-10:3.  The lawyers said that if no charges were brought, Mr. Geilenfeld would be released and the civil case in this Court would move forward.  *Id.* 10:8-11.  If charges were brought, it would be within the Haitian judge's

discretion whether Mr. Geilenfeld remained incarcerated in Haiti during the prosecution. *Id.* 8:11-13.

At the conclusion of the sanctions hearing, Plaintiffs' counsel indicated their intent to amend their Complaint to add a claim of false imprisonment against Mr. Kendrick based on Mr. Geilenfeld's imprisonment in Haiti. *Id.* 119:11-23. The Court instructed counsel to file a motion to amend as soon as possible so that if Mr. Geilenfeld were released, this case could proceed to trial without delay. *Id.* 121:4-11.

### F.    The Court Learns of Michael Geilenfeld's Release

During a telephone conference on April 30, 2015, Plaintiffs' counsel informed the Court that Mr. Geilenfeld had recently been released from Haitian prison, and therefore this case could now proceed to trial. *Minute Entry* (ECF No. 315). Approximately one week later, the Court granted Plaintiffs' motions to amend their Complaint and for limited further discovery over Mr. Kendrick's objections. *Oral Order* (ECF No. 320); *Oral Order* (ECF No. 322).

### G.    The Plaintiffs' Supplemental Complaint

On May 8, 2015, Plaintiffs filed a supplemental complaint. *Pls.' Supplemental Compl. and Demand for Jury Trial* (ECF No. 324) (*Supplemental Compl.*). Among their new factual allegations, Plaintiffs alleged that Mr. Kendrick

> initiated, organized, coordinated, participated in, and/or cooperated in focused initiatives to further destroy the reputations of the Plaintiffs and obstruct their case prosecution. These efforts of the Defendant culminated in the arrest and nearly eight-month false imprisonment of Plaintiff Geilenfeld in a Haitian jail, before charges were dismissed on the merits and Geilenfeld was publicly exonerated of all charges on April 29, 2015.

5

*Id.* ¶ 111.  Although Plaintiffs' counsel suggested on January 30, 2015 that they intended to bring a separate claim for false imprisonment, the Supplemental Complaint included only a fifth count for "Continuing Defamation and False Light." *Id.* at 9.

### H.      May 27, 2015: The Final Pretrial Conference

On May 27, 2015, the Court held a Final Pretrial Conference.  *Minute Entry* (ECF No. 340).  Among other matters discussed,

> Plaintiffs identified [another] potential expert, Alain Lemithe, a Haitian lawyer, to testify about the definition of some terms of Haitian law.  The Plaintiffs will describe the precise scope of Mr. Lemithe's testimony in their June 12, 2015 filing.  The Defendant objected to Mr. Lemithe's testimony without a prior right to depose him.  Although the Court indicated that it would not require the Plaintiffs to bring Mr. Lemithe from Haiti to a pretrial deposition in Portland because of the limited scope of his anticipated testimony and the expense of a pretrial trip to and from Haiti, the Court suggested, as an alternative, that the Defendant might be given an opportunity during trial to question Mr. Lemithe about his proposed testimony before he actually testifies.

*Final Pretrial Order* at 5 (ECF No. 342).  This case is set for jury selection on July 6, 2015 with trial immediately thereafter.  *Id.* at 2.

## II.    THE PARTIES' POSITIONS ON DEFENDANT'S MOTION

### A.      Defendant's Motion

On June 12, 2015, Mr. Kendrick moved in limine to exclude any reference or testimony regarding Mr. Geilenfeld's imprisonment in Haiti or pain and suffering caused by the imprisonment.  *Def.'s Mot. in Limine to Exclude References or Test. Concerning Imprisonment in Haiti or Pain and Suffering Therefrom* (ECF No. 354) (*Def.'s Mot.*).  According to Mr. Kendrick, Mr. Geilenfeld should have brought a claim

for malicious prosecution and, because he has not, "he cannot be permitted to do an end run around the more difficult burdens of proof placed on a plaintiff in a malicious prosecution case to try to obtain malicious prosecution type damages based merely on the lesser showings of the torts he has pled." *Id.* at 1. Mr. Kendrick highlights the requirements for a malicious prosecution claim, including that the proceedings at issue must have concluded in Mr. Geilenfeld's favor. *Id.* at 1-3. Here, he says, "officials in Haiti have indicated that Mr. Geilenfeld was improperly released, and because they intend to proceed further against him, the Haitian proceedings have not been terminated in his favor." *Id.* at 2.

Furthermore, Mr. Kendrick opines that if Mr. Geilenfeld were allowed to proceed based on defamation and false light invasion of privacy as regards his imprisonment, "no person who thinks he was wrongly criminally prosecuted due to false publications of another would ever bother to bring a claim of malicious prosecution. He would, instead, bring only the defamation action, where he would not have to prove, among other things, that his accuser knew the accusations were false." *Id.* at 3 (citing *Jackson v. Navarro*, 665 So. 2d 340, 342 (Fla. App. 1995); *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 598 (Cal. 1990)). Finally, Mr. Kendrick argues that Mr. Geilenfeld's claims for pain and suffering as a result of his imprisonment are not "presumed damages" under Maine law for defamation damages. *Id.* at 4-6. This is because, according to Mr. Kendrick, "[s]uffering in a Haitian prison is not in the ordinary circumstances of the human condition naturally, necessarily, and proximately caused by defamations." *Id.* at 5.

7

### B.      Plaintiffs' Opposition

On June 24, 2015, the Plaintiffs responded in opposition. *Pls.' Mot. in Opp'n to Def.'s Mot. to Exclude Evidence of Imprisonment in Haiti* (ECF No. 396). First, they argue that defamation is the proper remedy, not malicious prosecution. *Id.* at 1. They explain:

> Defamation seeks to remedy harm flowing from the publication of false statements.   Malicious prosecution, on the other hand, provides a remedy for harm that results when a judicial proceeding is initiated or procured without probable cause—that is, the defendant unlawfully prosecutes, or makes a sworn statement that improperly commences, a judicial proceeding against the plaintiff.   This narrow cause of action fills a gap where defamation, because of the absolute or conditional privilege that attaches to statements made to law enforcement or in judicial proceedings, does not provide a remedy.

*Id.* at 1-2. Plaintiffs counter that Mr. Kendrick does not consider the privilege issues, noting that a plaintiff in a defamation claim must overcome these issues whereas a plaintiff in a malicious prosecution case may nevertheless proceed notwithstanding the privilege. *Id.* at 2. Thus, in their view, "defamation will not, as Kendrick hypothesizes, subsume the tort of malicious prosecution." *Id.* Plaintiffs also distinguish the *Jackson* and *Bear Stearns* cases cited by Mr. Kendrick, and argue that Mr. Kendrick's statements were not sworn ones. *Id.* at 2-4.

Finally, Plaintiffs argue that Mr. Geilenfeld is entitled to damages as a result of his imprisonment if the jury finds in his favor, and cite a number of authorities for the proposition that injuries "suffered at the hands of a third-party who acts upon a defamatory statement, like the Haitian authorities who imprisoned Geilenfeld, are recoverable in a defamation action." *Id.* at 4. Given that Mr. Kendrick "made

defamatory statements with the admitted goal of causing Haitian authorities to act against Geilenfeld," Plaintiffs assert that Mr. Kendrick "should not now be allowed to escape the consequences of these false statements merely because the resultant and foreseeable harm was an unjustified Haitian-prison term for Geilenfeld." *Id.* at 4-5.

## III.   DISCUSSION

### A.   Malicious Prosecution

In a malicious prosecution case,

> [a] private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if
>
> (a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice, and
>
> (b) the proceedings have terminated in favor of the accused.

RESTATEMENT (SECOND) OF TORTS § 653 (1977).  A criminal proceeding is initiated "by making a charge before a public official or body in such form as to require the official or body to determine whether process shall or shall not be issued against the accused." *Id.* § 653 cmt. c.  In addition, where a private person gives information to a public officer or prosecutor upon which the officer or prosecutor relies in initiating a criminal proceeding, that turns out to be false, the private person is liable only if "his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the

prosecution, or that the information furnished by him upon which the official acted was known to be false." *Id.* § 653 cmt. g.

The Maine Law Court has cited this section of the Restatement with approval in its discussion of malicious prosecution. *See Pepperell Trust Co. v. Mountain Heir Fin. Corp.*, 1998 ME 46, ¶ 15 n.11, 708 A.2d 651; *Price v. Patterson*, 606 A.2d 783, 785 (Me. 1992). Notwithstanding the absence of malice as an element in the Restatement provision, the Law Court has required that the defendant have acted with malice. *See Trask v. Devlin*, 2002 ME 10, ¶ 11, 788 A.2d 179; *Davis v. Currier*, 1997 ME 199, ¶ 4, 704 A.2d 1207. However, the parties have not cited and the Court could not locate caselaw from Maine that discusses the relationship between the torts of malicious prosecution and defamation.

Mr. Kendrick directed the Court to two cases he says support his position. In *Jackson v. Navarro*, the plaintiff brought a suit for false imprisonment against a sheriff who prepared a probable cause affidavit against him, which later resulted in the plaintiff's arrest under a capias. 665 So. 2d at 340. Distinguishing between false imprisonment and malicious prosecution, the trial court granted summary judgment against the plaintiff because he improperly brought a claim for false imprisonment rather than malicious prosecution. *Id.* at 340-41. The trial court based its decision on the principle that in order to make out a claim for false imprisonment, the original imprisonment must be without legal authority. *Id.* at 341. As the plaintiff in *Jackson* had been legally arrested by a capias, the tort of false imprisonment was not available to him. *Id.*

10

In upholding the trial court's ruling, the Florida appeals court explained that the torts of false imprisonment and malicious prosecution "are sometimes confused," but "the elements are different . . . . [T]he tort of false imprisonment does not require that a legal proceeding was commenced without probable cause, and with malice. All that is required are allegations that a person has been unlawfully restrained without color of authority." *Id.* at 341-42 (internal quotation marks and citation omitted). In short, noting that malicious prosecution "arises out of the wrongful commencement of a judicial proceeding, while [false imprisonment] occurs when there is an improper restraint which is not the result of a judicial proceeding," the *Jackson* Court concluded that the plaintiff could not "do an end run around the more difficult burden of proof placed on a plaintiff in a malicious prosecution case, which, as its label suggests, requires malice." *Id.* at 342.

In *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, the Supreme Court of California stated the question:

> We are called upon to decide whether a cause of action in tort may be stated for intentional interference with contractual relations or intentional interference with prospective economic advantage when it is alleged defendant induced a party to a contract to seek a judicial determination [as to] whether it may terminate the contract according to its terms.

791 P.2d at 588. Noting that the only damage the plaintiff was asserting arose from the filing of a declaratory judgment action, the *Bear Stearns* Court concluded that "[n]o California case upholding a claim for interference with contract or prospective advantage has involved this kind of conduct." *Id.* at 593. The *Bear Stearns* Court concluded that "the only common law tort claim that treats the instigation or bringing

11

of a lawsuit as an actionable injury is the action for malicious prosecution." *Id.* In holding that the plaintiff needed to satisfy the elements of malicious prosecution, the *Bear Stearns* Court reasoned that to allow "a cause of action for interference with contract or prospective economic advantage to be based on inducing potentially meritorious litigation on the contract would threaten free access to the courts by providing an end run around the limitations on the tort of malicious prosecution." *Id.* at 598.

### B.   Plaintiffs' Supplemental Complaint

In their Supplemental Complaint, the Plaintiffs allege that Mr. Kendrick attempted "to delay or hinder the imminent trial of this action, by participating in a coordinated instigation of Geilenfeld's false arrest and imprisonment in Haiti." *Supplemental Compl.* ¶ 113. To do this, they say that he, with a man named Cyrus Sibert, "hired a Haitian lawyer to file civil and criminal complaints in Haiti asserting heinous false allegations of deplorable conduct against Plaintiff Geilenfeld and several named Plaintiffs' witnesses residing in Haiti." *Id.* ¶ 114. Plaintiffs also allege that following Mr. Geilenfeld's arrest in September 2014, Mr. Kendrick admitted in a Portland Press Herald article "that he and Sibert had retained the . . . lawyer to initiate false charges and present them to Haitian prosecutors." *Id.* ¶ 115. Plaintiffs further allege that but for Mr. Kendrick's "involvement in the Haitian proceedings and his ongoing defamatory statements of and concerning Plaintiffs," including funding, "these false and unsupported charges against Geilenfeld would not have been brought." *Id.* ¶ 116.

Subsequent to Mr. Geilenfeld's arrest, Mr. Kendrick allegedly admitted to the Portland Press Herald that "he and Sibert have been trying for years to have Geilenfeld arrested and charged with child sex abuse," and "he and Sibert have continued to e-mail accusations against Geilenfeld and post them publicly online" for that reason.  *Id.* ¶ 117.  Plaintiffs further allege that Mr. Kendrick and Mr. Sibert used Mr. Sibert's blogsite as a forum to post these defamatory statements with the purpose of getting Mr. Geilenfeld arrested.  *Id.* ¶ 118.

Sometime in either late August or early September 2014, the Plaintiffs claim that Mr. Kendrick "directed, contributed to, and participated in the drafting of defamatory correspondence directed to the Prime Minister of Haiti and members of his administration.  The defamatory correspondence reasserted the false criminal conduct Defendant had been painting Geilenfeld with from the start" of his campaign.  *Id.* ¶ 122.  Plaintiffs explain the significance of this letter:

> That letter instigated the second arrest of Plaintiff Geilenfeld on September 5, 2014, imposed essentially a superseding set of criminal charges, and led to the nearly eight-month period of imprisonment in Haitian jail before Plaintiff Geilenfeld's ultimate release and exoneration of all charges on April 29, 2015.  The letter is specifically referenced on page 5 of the judgment on the Final Indictment of the Commissioner of the Government for the District Court . . . of Port-au-Prince issued by the investigating judge . . . as the precise basis for the same prosecution's having "despite its first attempt, solicited one more time the opening of another judicial investigation around the same charges of sexual abuse again against Michael Geilenfeld . . . ."

*Id.* ¶ 124.

Finally, Plaintiffs allege that while Mr. Geilenfeld remained imprisoned, Mr. Kendrick continued to make defamatory statements about him, and following Mr.

13

Geilenfeld's release from prison after charges were dismissed, those statements by Mr. Kendrick have continued.  *Id.* ¶¶ 128-30.

### C.    Analysis

The Court disagrees with Mr. Kendrick's position for several reasons.

Neither *Jackson* nor *Bear Stearns* is germane.  In each case, the appeals court concluded that the plaintiff failed to state a claim for one alleged tort, false imprisonment in *Jackson* and intentional interference in *Bear Stearns*, and that the only possible tort available to the plaintiffs on the facts in both cases was malicious prosecution.  This is not the situation here.  The Plaintiffs' defamation case will proceed to trial beginning July 6, 2015 and the Plaintiffs are claiming that Mr. Kendrick's defamation led to Mr. Geilenfeld's arrest and imprisonment, causing him damage.  The Court is unaware of any authority, including *Jackson* and *Bear Stearns*, supporting the contention that a defamation action may not state a claim for such damages.  Instead, the *Jackson* and *Bear Stearns* decisions stand for the rather fundamental proposition that a plaintiff may not bring suit under a theory that does not fit the facts of the case and must bring suit under a theory that does.

Contrary to Mr. Kendrick's position, there are numerous cases in which a plaintiff brought both a malicious prosecution and defamation claim, and none suggested that a malicious prosecution claim was the exclusive tort for which a plaintiff could bring suit.  The Court located a smattering of cases that involved dismissals of a defamation claim because the statements were privileged, but not because malicious prosecution was the exclusive tort.  *See, e.g., Piper v. Scher*, 533

14

A.2d 974, 976-77 (N.J. Super. Ct. App. Div. 1987) (reversing grant of summary judgment on malicious prosecution claim but affirming grant of summary judgment on defamation claim because the defamation was related to documents that were "absolutely privileged"); *Young Oil Co. of La., Inc. v. Durbin*, 412 So. 2d 620, 626 (La. Ct. App. 1982) ("In summary we find that probable cause existed for the arrest of Mrs. Durbin precluding her recovery under malicious prosecution.  We likewise find no recovery in defamation, as the communications involved were either privileged or without malice").   Neither *Jackson* nor *Bears Stearns* indicated that if the facts supported more than one tort, a plaintiff must elect only one theory under which to proceed.   This is not surprising.   As any law student who has taken a torts examination knows, a variety of tort claims may be grounded on the same nucleus of facts.

Mr. Geilenfeld's allegations state claims for both defamation and false light invasion of privacy.  *See Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991) (elements of defamation); *Cole v. Chandler*, 2000 ME 104, ¶ 17, 752 A.2d 1189 (elements of false light invasion of privacy).  As evidenced by the factual allegations, *see* Section III.B, *supra*, Mr. Geilenfeld alleges that Mr. Kendrick's communications to numerous parties were false and defamatory, unprivileged, done with at least negligence, and caused him harm, both by Mr. Geilenfeld being imprisoned and by broadcasts in the media depicting him as a criminal, and by Mr. Kendrick continuing his defamatory statements related to Mr. Geilenfeld's imprisonment during and after his term of imprisonment.

Finally, if Mr. Geilenfeld successfully proves his defamation claim, the jury will consider whether to award him damages for "mental suffering, humiliation, embarrassment, effect upon reputation and loss of social standing," *Saunders v. VanPelt*, 497 A.2d 1121, 1126 (Me. 1985), "which are presumed to flow naturally, proximately and necessarily from publication of the slander." *Farrell v. Kramer*, 159 Me. 387, 390, 193 A.2d 560, 562 (1963).  Mr. Kendrick has not adequately explained why the jury could not consider whether Mr. Geilenfeld is entitled to damages for any mental suffering, humiliation, embarrassment, and/or effect on his reputation and loss of social standing as a result of his imprisonment in Haiti.

### D.   Conclusion

The Court denies Mr. Kendrick's motion, and will now consider whether and to what extent Plaintiffs' witness may testify as regards the Haitian legal system.

## IV.   THE PARTIES' POSITIONS ON PLAINTIFFS' MOTION

### A.   Plaintiffs' Motion

On June 12, 2015, Plaintiffs moved in limine to include the testimony of Alain Lemithe, Esq.  *Pls.' Mot. in Limine to Include the Test. of Alain Lemithe* (ECF No. 373).  According to Plaintiffs, Mr. Lemithe is a lawyer in Haiti, and specializes in international human rights, criminal law, and trial practice.  *Id.* at 1.  He obtained a law degree in Haiti in 2004, and has maintained a licensed and active practice with a law firm in Haiti since 2004.  *Id.*  He is fluent in three languages, including English. *Id.*

16

Plaintiffs intend to call Mr. Lemithe to testify at trial "about the Haitian judicial process generally and as applied the proceedings against Plaintiff Geilenfeld" and others. *Id.* at 2. As regards the "Haitian judicial process generally," Plaintiffs give a brief description of the Haitian criminal judicial system, including some additional details and terms. *Id.* at 2-3. Regarding the Haitian judicial process "as applied" to Mr. Geilenfeld, Plaintiffs provide a summary of (1) how and what charges were filed against him; (2) where the charges were filed; (3) the investigative process; (4) two "confrontational hearings" in which Mr. Geilenfeld and his accusers confronted each other in court; (5) the events leading up to his arrest on September 5, 2014; (6) the events leading up to dismissal of all charges against him, except the charge of sexual molestation, on January 22, 2015; (7) definitions of certain Haitian crimes that Mr. Geilenfeld was charged with; and (8) the proceeding that occurred on April 29, 2015 whereby Mr. Geilenfeld was "exonerated" of the sexual molestation charge and released from prison. *Id.* at 3-6.

Plaintiffs also note that Mr. Lemithe would testify that, in his opinion, Mr. Geilenfeld was further prosecuted on the sexual molestation charge because he is a homosexual, Haitian society has an "intolerance for homosexuals and homosexual behavior," and "based on his observations and experience, the Public Prosecutor did not wish to try Geilenfeld for his sexual orientation." *Id.* at 6.

## B. Defendant's Opposition

On June 24, 2015, Mr. Kendrick responded in opposition. *Def.'s Objection and Opp'n Mem. to Pls.' Mot. in Limine to Include Test. of Alain Lemithe* (ECF No. 392).

First, he takes issue with Mr. Lemithe testifying as to the Haitian judicial process as applied to Mr. Geilenfeld, which he argues is a "complex process of acquittal." *Id.* at 1. He also contends that "cases are overwhelming that a prior acquittal, or the fact of a prior non-prosecution, is inadmissible in a subsequent civil (or criminal) case." *Id.* at 3. Mr. Kendrick further asserts that this is especially the case, as the First Circuit has held, "when in the prior proceeding there was 'unavailability of witnesses and sloppy prosecutorial work.'" *Id.* (quoting *United States v. Marrero-Ortiz*, 160 F.3d 768, 775 (1st Cir. 1998)). This, he says, is exactly what occurred in Mr. Geilenfeld's case in Haiti. *Id.*

Furthermore, Mr. Kendrick points out that Plaintiffs omit the fact that Mr. Lemithe was one of the lawyers who represented Mr. Geilenfeld in Haiti on these criminal charges and "appeared on his behalf at Mr. Geilenfeld's trial." *Id.* at 4. If he were allowed to testify as to "how and why" Mr. Geilenfeld was acquitted, Mr. Kendrick asserts it "would be like permitting Johnnie Cochran to testify on behalf of O.J. Simpson, in a civil suit brought against Mr. Simpson, about how and why Mr. Simpson was acquitted at the murder trial." *Id.* In short, Mr. Kendrick argues that "Mr. Lemithe's testimony would confuse the issues and the jury, is hearsay, is unfairly prejudicial, and would lead to a trial about what happened recently in Haiti when what happened is disputed, complicated and irrelevant." *Id.* at 5.

As regards Mr. Lemithe's proposed testimony on the Haitian judicial process generally, Mr. Kendrick also objects because, in his view, it is irrelevant because Mr. Geilenfeld's incarceration and acquittal are irrelevant. *Id.* Furthermore, he points

18

out that during the Final Pretrial Conference in this case, Plaintiffs indicated that Mr. Lemithe's testimony would be limited to defining some terms of Haitian law, but the proposal submitted in Plaintiffs' motion is, in Mr. Kendrick's view, "far-reaching, and highly prejudicial." *Id.* Mr. Kendrick also complains his counsel "was unable to locate any treatises or the like to even begin to verify whether what he says is true" beyond an exhibit he attached entitled, "Code of Criminal Instruction," which his counsel "confesses they cannot make heads or tails of." *Id.* at 6. Finally, Mr. Kendrick states that he has neither the money nor the necessary time to hire another expert on Haitian criminal law and procedure to ensure that what Mr. Lemithe testifies to is the truth. *Id.*

## V.    DISCUSSION

The subject of Attorney Lemithe's testimony came up during the Final Pretrial Conference on May 27, 2015. The context of the discussion is whether the Plaintiffs would be required to produce Attorney Lemithe as an expert at the *Daubert*[2] hearing that the Court was scheduling for June 18, 2015.

Attorney DeTroy indicated that Mr. Lemithe is not a hired expert, rather, he said, Mr. Lemithe is a Haitian lawyer who represented Mr. Geilenfeld during the recent Haitian criminal proceedings. Attorney DeTroy assured the Court that Attorney Lemithe was not going to be giving his version of whether the Haitian criminal proceeding was fair or unfair. Instead, Attorney DeTroy stated, Attorney

---

[2]    *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

Lemithe will help introduce translated documents, describe what they mean, tell the jury how the Haitian process works, and "that's all."

In response to Attorney DeTroy's recitation, the Court observed that it was not interested in having a trial within a trial and that the Haitian legal system was not on trial in federal court in the district of Maine. The Court noted that Mr. Geilenfeld could testify as to what happened to him: that he was arrested, that he was placed in prison, that he was released, and that he was exonerated.

Again, Attorney DeTroy assured the Court that the Plaintiffs wanted to have a person who can tell the jury what the Haitian court judgment says, how a particular translated document came about, and who testified at different times in the Haitian process. In summary, Attorney DeTroy said that Attorney Lemithe would testify as to what happened in Haiti.

As a consequence, in the Final Pretrial Order, the Court declined to require the Plaintiffs to produce Attorney Lemithe for the *Daubert* hearing given the limited scope of his testimony:

> Plaintiffs identified [another] potential expert, Alain Lemithe, a Haitian lawyer, to testify about the definition of some terms of Haitian law. The Plaintiffs will describe the precise scope of Mr. Lemithe's testimony in their June 12, 2015 filing. The Defendant objected to Mr. Lemithe's testimony without a prior right to depose him. Although the Court indicated that it would not require the Plaintiffs to bring Mr. Lemithe from Haiti to a pretrial deposition in Portland because of the limited scope of his anticipated testimony and the expense of a pretrial trip to and from Haiti, the Court suggested, as an alternative, that the Defendant might be given an opportunity during trial to question Mr. Lemithe about his proposed testimony before he actually testifies.

*Final Pretrial Order* at 5.  Neither party objected to the contents of the Final Pretrial Order.

The Court will not allow Mr. Lemithe, one of Mr. Geilenfeld's criminal defense lawyers in Haiti, to testify as to why he thinks the sexual molestation charge against Mr. Geilenfeld was not dropped initially, nor as to why he thinks the Public Prosecutor decided to drop the charge on April 29, 2015.  Without more specificity, the Court will also not allow Mr. Lemithe to discuss the Haitian judicial process "as applied the proceedings against Plaintiff Geilenfeld" as proposed by the Plaintiffs in their motion.  The Haitian legal system is not on trial in this case, the Court will not hold a trial within a trial, and Mr. Lemithe's proposed testimony violates Rule 403. FED. R. CIV. P. 403.

The Court intends to hold Plaintiffs to the representation they made during the Final Pretrial Conference—that Mr. Lemithe would only be called to testify about the definition of some terms of Haitian law and to generally explain the Haitian legal process to the jury.

To make certain that Attorney Lemithe's testimony is proper, the Court will hold a hearing before he is called as a witness in this case to learn and rule on the scope of his direct and cross-examination.

## VI.   CONCLUSION

The Court DENIES the Defendant's Motion in Limine to Exclude References or Testimony Concerning Imprisonment in Haiti or Pain and Suffering Therefrom (ECF No. 354).

The Court GRANTS in part and DENIES in part Plaintiffs' Motion in Limine to Include the Testimony of Alain Lemithe (ECF No. 373). To the extent the Plaintiffs intend to call Mr. Lemithe to testify about the definition of some terms of Haitian law as contemplated in the Final Pretrial Order (ECF No. 342), the Court GRANTS the motion. The Court otherwise DENIES the motion subject to further orders during trial.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of July, 2015