UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

HEARTS WITH HAITI, INC. et al.

        Plaintiffs

v.                                                                  CIVIL ACTION: 2:13-cv-00039-JAW

PAUL KENDRICK

        Defendant

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
RULE 59 MOTION FOR NEW TRIAL**

NOW COME Plaintiffs in the above-captioned matter and respond in opposition to
Defendant Paul Kendrick's "Rule 59 Motion for a New Trial or Other Alternative Post-Judgment
Relief." ECF No. 488. In support of his requested relief Defendant contends:

A.   That he is entitled to a new trial because the Court erred in allowing Plaintiff Michael
     Geilenfeld to testify regarding his incarceration in a Haitian prison and because the Court
     declined to instruct the jury to disregard that testimony;

B.   That he is entitled to a new trial or partial judgment as a matter of law because the Plaintiffs
     failed to prove causation; and

C.   That he is entitled to a new trial or remittitur because the award of presumed damages to
     Geilenfeld "is manifestly irrational and grossly excessive" [ECF No. 488 at 18] and because
     the economic damage award to Plaintiff Hearts with Haiti was not supported by the
     evidence;

Because the jury's damage award is supported by substantial evidence of the devastation and

harm caused by the Defendant's defamation over five years and because Defendant merely re-raises

issues previously addressed by the Court, his motion should be denied.

1

# I.    ARGUMENT

A.    THE COURT CORRECTLY ALLOWED PLAINTIFF GEILENFELD TO TESTIFY ABOUT HIS INCARCERATION IN A HAITIAN PRISON, AND CORRECTLY DECLINED AN INSTRUCTION THAT WOULD HAVE TOLD THE JURY TO DISREGARD THAT TESTIMONY

On June 12, 2015, Defendant moved *in limine* to exclude references or testimony concerning Michael Geilenfeld's incarceration in a Port-au-Prince, Haiti prison.  In support of his motion, Defendant contended that the tort of malicious prosecution was Plaintiff Geilenfeld's exclusive remedy for any mental anguish or physical suffering endured while incarcerated in Haiti.  (Def.'s Mot. to Ex. 1, ECF No. 354.)  The Court, in a detailed written decision, determined that Geilenfeld was not precluded from seeking such damages through his defamation claim and denied the motion, stating that "[a]s any law student who has taken a torts examination knows, a variety of tort claims may be grounds on the same nucleus of facts."  *Hearts With Haiti, Inc. v. Kendrick (July 2 Order)*, 2015 WL 4065228 at *15 (D. Me. July 2, 2015).[1]

---

[1]   Defendant also raised this issue twice during trial.  Both times the Court affirmed its earlier ruling, concluding

> if [Mr. Kendrick] initiates by defamation a series of actions that lead to the arrest of a person, false arrest of somebody and that individual ends up in prison, that those damages can be attributed -- attributable to the defamation[.]

Tr. Vol. III 199:24 through 201:17.  And again, at the charge conference

> I don't think I'm going to change my earlier ruling.  I've thought about it and I don't think that the tort of defamation – I found no authority to the effect that if you allege something false about somebody and they end up getting arrested, based on that allegation that you have to pursue a malicious prosecution tort, which strikes me to be something quite different.
>
> I'm not saying that they couldn't, and they probably could have alleged here a malicious prosecution tort and proceeded with it, but these circumstances are pretty unique and he basically – at least arguably, generated a -- started a snowball effect on Mr. Geilenfeld that landed him up in a Haitian prison and pushed the snowball hard down the hill.
>
> So I think you're protected on the record on it, but I just don't – I've been shown no authority that says these torts are exclusive.

Jury Charge Conference, July 21, 2015, 38:17 through 39-10.

2

Defendant now presents this exact argument as the crux of his motion for new trial. Because Defendant's motion for new trial merely revisits the Court's previous rulings, the Court should conclude that Defendant is bound by the Court's earlier rulings and reaffirm that he was not entitled to his requested instruction. To the extent Defendant's "exclusive remedy" argument is revisited, the Court should follow its previous decision as further inquiry only confirms the Court's earlier analysis and its proper denial of Defendant's motion *in limine*. With the benefit of hindsight, and a post-trial period of reflection, Defendant still cannot point to a compelling legal authority supporting his theory.

 1. Defendant is bound by the Court's July 2 Order.

Rule 59 allows a party to raise questions of law, including prejudicial errors of law that, if left uncorrected, will result in manifest injustice. Rule 59 does not, however, allow "the losing party to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier." *Nat'l Metal Finishing Co., Inc. v. Barclays American/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990); *Widi v. McNeil*, 2014 WL 640286, at *1 (D. Me. Feb. 18, 2014) (concluding that Rule 59 is not a "vehicle to force the court to think twice; it is not an opportunity for the losing party to simply press his unsuccessful arguments a second time in the hope that, by repetition, the court will see them his way.").

In asking the Court to reconsider its July 2 Order as grounds for a new trial, Defendant does not point to an intervening court decision, an undiscovered fact, or an error of law that would constitute a legitimate basis for a new trial. Instead, Defendant relies on the same, or very similar, legal authority and argues that public policy requires that the Court adopt his position. Because the Court thoroughly addressed this argument in its July 2 Order, it should decline Defendant's invitation to reconsider the issue.

 2. Defendant is not entitled to his requested instruction.

A party is entitled to a requested instruction if it is (1) correct as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point of the case.  *Davignon v. Hodgson*, 524 F.3d 91, 108 (1st Cir. 2008).   Although Defendant requested that the Court instruct the jury not to award Plaintiff Geilenfeld damages for his suffering in prison, he failed to provide the Court with any specific supporting legal authority.  The Court did not err in refusing his request.  Further, the Court's damages instructions to the jury sufficiently covered the law applicable to an award of damages in a defamation action, ensuring that the jury only finds damages that naturally flow from the defamation by the Defendant.  The jury was free to disregard any testimony on damages that it considered did not naturally flow from the conduct in issue.

> 3.     The Court properly denied Defendant's motion to exclude testimony of Plaintiff Geilenfeld's imprisonment

In its July 2 Order denying Defendant's motion to exclude, the Court examined the cases cited by the Defendant, analyzed his argument, and ultimately concluded that:

> [t]he Court is unaware of any authority, including *Jackson* and *Bear Sterns*, supporting the contention that a defamation action may not state a claim for such damages.  Instead, the *Jackson* and *Bear Sterns* decisions stand for the rather fundamental proposition that a plaintiff may not bring suit under a theory that does not fit the facts of the case and must bring suit under a theory that does.

*July 2 Order*, 2015 WL 4065228 at * 14.  Relying on the same argument, two additional cases, and a reference to public policy, Defendant now moves for a new trial on grounds that the Court erred in admitting Plaintiff Geilenfeld's testimony describing the days he spent in a Haitian prison as a result of the Defendant's widespread defamation.   Because the Court properly rejected Defendant's argument in its July 2 Order, and because Defendant's additional citations and public policy argument change nothing, the Court should deny his motion for a new trial.  Plaintiff Geilenfeld successfully proved his defamation claim and is entitled to recover damages "which are presumed

to flow naturally, proximately and necessarily from publication of the slander," *id.* (quoting *Farrell v. Kramer*, 159 Me. 387, 390, 193 A.2d 560, 562 (1963)), including damages "for any mental suffering, humiliation, embarrassment, and/or effect on his reputation and loss of social standing as a result of his imprisonment in Haiti." *Id.* at 16.

a. Defendant's additional cases

Defendant repeats his contention that malicious prosecution is the exclusive remedy for any plaintiff wrongfully or unjustly imprisoned or prosecuted because of tortious conduct. This argument, as the Court concluded, ignores the fundamental principle of tort law that "a variety of tort claims may be grounded on the same nucleus of facts." *July 2 Order* at 15. When he moved *in limine* to exclude Geilenfeld's testimony, Defendant did not reference a single case that supported his exclusive remedy argument. Now, with the benefit of two opportunities to direct the Court to *any* legal authority supporting his position, Defendant cannot do so. Like *Jackson v. Navarro*, 665 So. 2d 340 (Fla. App. 1995)—which Defendant cites for a second time even though that case was dismissed by the Court as standing only "for the rather fundamental proposition that a plaintiff may not bring suit under a theory that does not fit the facts of the case and must bring suit under a theory that does" *July 2 Order* at 14—the additional cases discussed by Defendant now are almost completely irrelevant.

- *Puerto Rico Am. Ins. Co. v. Burgos-Diaz*, is a RICO case in which the defendants brought a counterclaim alleging that they had sustained damages as a result of the "false allegations contained in the complaint." 2006 WL 3490943 at *3 (D.P.R. Nov. 29, 2006). The court dismissed the counterclaim because it failed to properly allege the elements of malicious prosecution. *Id.* Like *Jackson*, this case also stands for the basic rule that an inappropriate legal theory will be dismissed upon the proper dispositive motion. *See id.*

- Similarly, in *Eddy's Toyota of Wichita, Inc. v. Kmart Corp.*, the court granted summary judgment on grounds that allegations of a meritless lawsuit alone "cannot form the basis for a tortious interference claim." 945 F. Supp. 220, 225 (D. Kan. 1996). Because the statute of limitations for malicious prosecution had already run, the court granted summary judgment. *Id.*

5

- And in *Davis v. Currier*, the Law Court affirmed the trial court's order granting judgment as a matter of law on the plaintiff's intentional infliction of emotional distress claim, concluding that the "allegation that the [defendant's] initiation of a negligence suit against [the plaintiff] constitutes extreme and outrageous conduct on her part is wholly without merit." 1997 ME 199, ¶ 6, 704 A.2d 1207.

These cases, like the cases Defendant relied upon the first time he raised this issue, stand for the well-established proposition that "a plaintiff may not bring suit under a theory that does not fit the facts of the case and must bring suit under a theory that does" *July 2 Order* at 14—a plaintiff that proceeds under an improper legal theory will face dismissal or another dispositive motion. None of these cases, however, support Defendant's argument that malicious prosecution is the exclusive remedy through which an unjustly-imprisoned or prosecuted plaintiff can recover when, as here, those facts also fit other cognizable torts.

b.  Public policy

Public policy does not change this analysis.  As Defendant discusses, public policy in the way of the qualified and absolute privileges "insulates citizens from liability" for statements made to law enforcement and in court proceedings.  *See Bradbury v. GMAC Mortgage., LLC*, 2012 ME 11, ¶ 8, 58 A.2d 1054.  In this case, while the Defendant had every opportunity to argue that his statements were privileged; when a privilege fails or is never raised, however, a tortfeasor is subject to liability for damages that flow naturally or proximately from his or her actions.[2]  *See Gavrilovic*

---

[2]  Defendant should be prohibited from arguing that his statements to Haitian law enforcement were "absolutely privileged and not actionable."  Defendant has waived this affirmative defense by failing to raise it at any time prior to or during trial.  *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 72 (1st Cir. 2003) (Rule 59 may not be used to raise a new legal theory that could have been made before judgment issued).  Notwithstanding this waiver, Defendant's newly pressed legal theory is meritless.  Defendant's defamatory communications to Haitian law enforcement and Sibert's letter in particular, are not subject to an absolute privilege.  *Packard v. Central Maine Power Co.*, 477 A.2d 264 (communications to law enforcement officials are conditionally privileged); *see* Trial Ex. 195B, Sibert Letter to Haitian Law Enforcement.  Sibert was not then and is not now an attorney, party, or witness in the criminal proceedings in Haiti and, therefore, his letter to Haitian law enforcement based on Defendant's statements and direction cannot be considered a pleading subject to an absolute privilege.  *Dineen v. Daughan*, 381 A.2d 663, 664; *Bradbury v. GMAC Mortg., LLC*, 2012 ME 131, ¶¶ 8-10, 58 A.3d 1054.  Rather, the letter is an unsworn defamatory communication to Haitian law enforcement claiming that Plaintiff Geilenfeld and others in his presence had sexually abused children for 30 years and the Haitian government was corrupted and complicit in the sexual abuse of children.  Trial Ex. 195B.

6

*v. Worldwide Language Res., Inc.*, 441 F. Supp. 163, 184 (D. Me. 2006). Furthermore, in this case the jury's finding of "actual malice" defeats any privilege assertion in any event, because it reflects a finding that the Defendant would be found to have abused any asserted privilege. *Rice v. Alley*, 2002 ME 43, ¶ 23, 791 A.2d 932. Similarly, the Court should disregard Defendant's contention that "[i]f the judgment against defendant Paul Kendrick is allowed to stand, Mr. Kendrick may find himself owing Mr. Geilenfeld millions of dollars for calling Mr. Geilenfeld a child molester when Mr. Geilenfeld has been convicted of being a child molester." That "policy" argument is based upon vitriolic, unsupported speculation, and upon inferences from the defendant's version of the case that the jury rightly considered and rejected. Defendant was entitled to, and did, present evidence on the alleged truth of his statements. And the jury rationally disregarded that evidence.

  c. Geilenfeld is entitled to recover the damages that flow naturally and proximately from Defendant's tortious conduct

Long ago, courts eliminated the rule that a given tort provides only a narrow and specific remedy, *see Page v. Town of Bucksport*, 64 Me. 1, 2 (1874) (allowing the plaintiff to recover for all damages proximately caused to property and person under a single legal theory), and today, defamation, like most torts, allows recovery for all damages that flow naturally, proximately, and necessarily from the tortious conduct. *Farrell v. Kramer*, 193 A.2d 560, 562 (Me. 1963). These damages can include harm suffered at the hands of a third-party who acts upon a defamatory statement—including damages that result when a false statement is made to, or seized upon by, prosecuting government officials. For example:

- In one defamation case, *Dobies v. Brefka*, the court affirmed a jury verdict awarding damages for harm caused when the plaintiff's ex-wife made false accusations of child abuse to a social worker who, relying upon the defamatory statements, commenced a custody proceeding in which the plaintiff lost significant parental rights. 45 A.D.3d 999, 1000-01 (N.Y. App. Div. 2007) ("[A]s a result of the heinous allegations leveled against him, plaintiff was permitted only supervised visitation with his children for a significant period of time . . . .").

- In *Johnson v. Camanga*, the court affirmed the written decision of the trial court awarding damages for defamation after finding that the plaintiff's in-laws had presented a false "rap sheet" as evidence of the plaintiff's criminal history when they intervened in a custody proceeding, causing the plaintiff to lose custody of her child. 845 So. 2d 1140, 1145 (L.A. App. 2003).

- In *Goldstein v. Kinney Shoe Corp.*, the court refused to dismiss the defendant's counterclaims for defamation alleging that the plaintiffs, who filed suit for assault and battery, made false statements that resulted in the defendants' criminal prosecution. 931 F. Supp. 595, 599 (N.D. Ill. 1996) ("If the defendants allege that the plaintiffs made statements which impute that the defendants have committed crimes, then the defendants adequately plead defamation per se.").

- And in *Davis v. Chubb/Pac. Indem. Group*, the plaintiff alleged that the defendant insurance company disseminated defamatory statements that resulted in his prosecution for insurance fraud. 493 F. Supp. 89, 93 (E.D. Pa. 1980). The court dismissed the plaintiff's malicious prosecution claims, concluding that the plaintiff failed to allege that the criminal proceeding had terminated in his favor. *Id.* The court declined to grant summary judgment on the plaintiff's defamation claims, however, allowing that cause of action to survive. *Id.*

Not one of these cases mentions Defendant's "exclusive remedy" theory of damages. To be sure, the respective plaintiffs could have, and in some cases did, allege malicious prosecution together with defamation. But a plaintiff, as the master of the complaint, is entitled to pursue any cause of action he or she sees fit. Overreaching, or the assertion of an improper legal theory, will result in dismissal, summary judgment, or a failure to prove some element of a cause of action. In this case, Defendant did not challenge Plaintiff Geilenfeld's defamation claim for failure to state a claim, or seek judgment as a matter of law.[3] He cannot not now, on a motion for new trial, argue that the Plaintiffs should have proceeded on a separate legal theory—especially when the Court has already rejected this argument in the context of a motion *in limine*. The fact that the record may not support a cause of action (i.e., malicious prosecution) that the Plaintiffs did not allege and did not

---

[3]  To the extent that Defendant's motion actually challenges defamation as an improper legal theory for recovering "prison damages," Defendant waived this argument by not moving for judgment as a matter of law under Rule 50(a). *See Libbey-Owens-Ford Co. v. Ins. Co. of N. America*, 9 F.3d 422, 427 (6th Cir. 1993) ("A party who has failed to move for a directed verdict cannot request the district court to rule on the sufficiency of the evidence supporting a verdict against him nor can he raise this issue on appeal").

attempt to prosecute is completely irrelevant to this motion and, at this point in the proceeding, this case altogether.

In its July 2 Order, the Court stated that, "Mr. Kendrick has not adequately explained why the jury could not consider whether Mr. Geilenfeld is entitled to damages for any mental suffering, humiliation, embarrassment, and/or effect on his reputation and loss of social standing as a result of his imprisonment in Haiti." *July 2 Order* at 16.  Given now a fourth chance, he still cannot do so. Defendant made defamatory statements with the admitted goal of causing Haitian authorities to act against Plaintiff Geilenfeld.  These consequences were foreseeable, at Defendant's direction, and, by his own admission, his statements resulted in the arrest and detention of Plaintiff Geilenfeld. Defendant should not be allowed to escape the consequences of his false statements merely because the resulting, predictable, and intended harm was an unjustified Haitian prison detention for Plaintiff Geilenfeld.

B.   DEFENDANT IS NOT ENTITLED TO A NEW TRIAL OR TO JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF CAUSATION

Defendant cannot meet his tremendous burden to overturn the jury's factual determination on causation.[4]  *McIlroy v. Gibson's Apple Orchard*, 2012 ME 59, ¶ 8, 43 A.3d 948 (causation is a question of fact).  Under Rule 50, a jury verdict may not be set aside unless, viewing the facts and evidence most favorable to the jury's verdict, no reasonable jury could have returned a verdict against the moving party.[5]   Fed. R. Civ. P. 50(b); *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d

---

[4]  Like his "exclusive remedy" argument, Defendant's argument that the Plaintiffs failed to prove causation is not new—it was previously considered and rejected by the Court at the Jury Charge Conference and should likewise be rejected here.  Jury Charge Conference, July 21, 2015, 40:4-17.

[5]  Defendant never moved for judgment as a matter of law under Rule 50(a) at any time during trial and, therefore, cannot bring the present motion under Rule 50(b).  *Jones ex rel. U.S. v. Massachusetts Gen. Hosp.*, 780 F.3d 479, 488 (1st Cir. 2015).  At the Jury Charge Conference, Defendant challenged the Court's jury instructions on the basis that there was insufficient evidence to show that he caused Plaintiff Geilenfeld's wrongful imprisonment and resulting harms, but this colloquy with the Court might not be considered a Rule 50(a) motion for partial judgment as a matter of law made before the case is submitted to the jury and after a party has "been fully heard on an issue."  F.R. Civ. P. 50(a).

756, 765 (1st Cir. 2011).   Similarly, under Rule 59, a jury's factual determination may not be overturned unless the trial court is convinced that the verdict is so against the clear weight of the evidence that letting it stand would result in a miscarriage of justice.   *Valentin-Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 104 (1st Cir. 2006).   And under either standard, the trial court "must be careful not to invade the jury's [fact-finding] province," *Valentin-Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 104 (1st Cir. 2006), and its discretion "must be exercised with due regard to the rights of both parties to have questions which are resolved finally by the jury at a single trial."   *Coffran v. Hitchcock Clinic, Inc.*, 683 F.2d 5, 6 (1st Cir. 1982) (overturning the trial court's grant of a new trial where the first jury verdict "reflected a jury's resolution of what was factually a very close and difficult case").   The evidence that Defendant caused Geilenfeld's imprisonment was overwhelming and there is no break in the "causal chain" as Defendant argues.

1.    The evidence of causation from which the jury was entitled to find that Defendant caused Plaintiff Geilenfeld's imprisonment was overwhelming[6]

In this case, the jury could have found that Plaintiff Geilenfeld's arrest and wrongful incarceration was not only the foreseeable result of Defendant's publication of heinous false allegations of child sex abuse—it was the admittedly intended result as the Defendant's statements demonstrate:

- "We, wanted Mr. Geilenfeld to be arrested for child sexual abuse and convicted."  Tr. Vol. XII 99:17-18

- "[W]e are trying to get the attention of Haitian law enforcement authorities . . . ."  Tr. Vol. IV, 86:4-5

- "You are going to spend the rest of your life in prison . . . . . The same team of investigators who arrested and convicted Doug Perlitz in Cap Haitian are going to arrest you."  Trial Ex. 26.

- "Will tomorrow be the day that Michael Geilenfeld is arrested by US law enforcement?" Trial Ex. 28.

---

[6] The trial record in this case contains more than 200 exhibits and the testimony of 22 witnesses; Plaintiffs' references to evidence herein are not meant to be exhaustive.

- "Will Michael Geilenfeld be arrested on Monday by the Haitian National Police and U.S. Government Investigators for raping and sodomizing innocent Haitian Children?"  Trial Ex. 29.

- "U.S. law enforcement officials are going to indict you, arrest you, and convict you and put you in jail for the rest of your life."  Trial Ex. 31.

In addition, the jury could have found that it was Defendant's intent not only to have Plaintiff Geilenfeld wrongfully imprisoned, but to have the results of that wrongful imprisonment in Haiti include physical harm to Plaintiff Geilenfeld.   Trial Ex. 43 ("When Geilenfeld is arrested by Haitian law enforcement authorities for physically and sexually abusing children, he will be incarcerated in a Haitian prison. The Haitian prisoners will not like what U.S. citizen, Geilenfeld, has done to the children of Haiti").

The jury could have similarly found that, in furtherance of this result—beyond the tens of thousands of daily defamatory e-mail communications, blog posts, and website publications, which took on a life of their own—that Defendant and his agent Sibert hired a Haitian lawyer to bring these heinous false allegations of child sexual abuse against Plaintiff Geilenfeld before Haitian law enforcement.

- Trial Ex. 213-A (discussing a way to launch a criminal case against Plaintiff Geilenfeld even if the police or government had no interest);

- Trial Ex. 147 (there is "lawyer [in] Port-au-Prince [ ] waiting for us to launch a criminal issue against Geilenfeld"; Defendant and Sibert "could launch this criminal case directly and independently");

- Tr. Vol. IX, 32:23 through 33:7 (discussing the complaint filed by Jeanty); Trial Ex. 212, Haitian Complaint dated February 11, 2014.  This complaint caused the Haitian prosecutor to file initial indictment documents that initiated criminal proceedings against Plaintiff Geilenfeld.

- Tr. Vol. IX, 28:1-12 (explaining how, in Haiti, a private lawyer can cause the initiation of criminal proceedings), 32:23 through 33:7 (explaining that Trial Ex. 212 is the complaint filed by Jeanty that caused the initiation of criminal proceedings against Plaintiff Geilenfeld in Haiti).

11

The jury also could have found that Defendant was frustrated that as of August 2014, these false allegations had been investigated by Haitian law enforcement for several months and Plaintiff Geilenfeld remained a free man.  Trial Ex. 214, Haitian Ordinance at 1 (describing the criminal proceedings from February 2014 through April 2015 documents relative to the criminal proceedings).

The jury could have found that, in his frustration, in late August or early September, Defendant, through his agent Sibert, sent a letter to Haitian law enforcement further falsely accusing Plaintiff Geilenfeld of sexually abusing children, permitting others to sexually abuse children in his presence, and associating with a "pro-pedophilia" organization called NAMBLA.  Trial Ex. 195B, Sibert Letter to Haitian Law Enforcement entitled "Haiti-Pedophilie: Observations sur l'orphelinat Saint Joseph de Delmas 91" (*Observations on the Saint Joseph Orphanage at Delmas 91*); Trial Ex. 214, Haitian Ordinance at 5 (referencing the Sibert letter).  The jury could have found that the letter not only accused Plaintiff Geilenfeld of child sex abuse but also antagonized Haitian law enforcement, including the department of social services (IBESR) and judicial system, accusing them of corruption and "a certain laxity" in the prosecution of Plaintiff Geilenfeld.  Trial Ex. 195B, Sibert Letter at ¶¶ 3, 10 (Defendant claimed that Plaintiff Geilenfeld was "untouchable in Haiti" because of his purported "good relations" with former President Jean Bertrand Aristide).

The jury could have found that this letter caused Plaintiff Geilenfeld's arrest and wrongful imprisonment for 237 days, until he was exonerated in April, 2015.  Trial Ex. 214, Haitian Ordinance at 5 (explaining that the prosecutor's office requested another judicial investigation on the basis of this letter); Tr. Vol. IX, 33:17 through 34:1 (explaining that this letter caused Plaintiff Geilenfeld's arrest and incarceration).

The jury did not have to believe Defendant's testimony.  On the stand, Defendant attempted to deny his involvement in the Haitian criminal proceedings against Plaintiff Geilenfeld.  He

claimed that it was "100 percent [Sibert's] effort" and that he "didn't know anything about it until [February 2014]."  Tr. Vol. XII 107:1-8.  However, after making these representations to the jury, Defendant was cross-examined regarding two of his e-mail correspondences with his agent Sibert that clearly demonstrate that he not only knew about, but approved and ratified, Sibert's engagement of Jeanty to initiate criminal proceedings against Geilenfeld in Haiti.  Trial Ex. 213-A, June 20, 2011 E-mail Correspondence between Defendant and Sibert (thanking Sibert for engaging Jeanty and forwarding him $200 US via Western Union); *see also* Tr. Vol. XIV 6:23 through 7:24 (the Court's jury instructions on agency).  Defendant was further cross-examined regarding his interview with a newspaper reporter in which he admitted that he and Sibert hired Jeanty to initiate criminal proceedings against Plaintiff Geilenfeld.  Tr. Vol. XII 110:10 through 111:16 (Defendant denied this admission, claiming that the reporter recorded his statement inaccurately).

Further, as properly instructed by the Court without objection from Defendant, the jury could have found Defendant responsible for the actions of his agent Sibert.  Tr. Vol. XIV 6:23 through 7:24 (the Court's jury instructions on agency).  Defendant admitted that he hired Sibert as an "investigator" in Haiti to, as he put it, counter the "unlimited amounts of money [Plaintiffs seemed to have] to spend on calling the victims liars."  Tr. Vol. XII, 129:20 through 130-7.

The jury could have found significant the amount and timing of the money Defendant paid Sibert.  He admitted to paying Sibert several thousands of dollars (US currency) for his efforts in Haiti and declared that he "would have sent him more if [he] had it."  Tr. Vol. XII, 114:10-18.  Since January 2014, as evidenced by his checking account statements, Defendant in the usual course paid Sibert around $200 every couple of months.  Trial Exhibit 535C, Defendant's various Key Express Checking Statements.  However, on September 11, 2014, within days of Plaintiff Geilenfeld's arrest, and the day after the prosecutor requested a second investigation into allegations of child sex abuse against Plaintiff Geilenfeld as a result of Sibert's letter, Defendant paid Sibert

$1,000 US, which was more than all of his previous payments to Sibert in the preceding eight months combined (since January 2014). *Id.* A few weeks later, on October 1, 2014, Defendant paid Sibert another $1,000 US. *Id.* In total, in the days and weeks immediately surrounding Sibert's defamatory letter to Haitian law enforcement and Plaintiff Geilenfeld's resulting arrest and incarceration, Defendant paid Sibert $2,200 US, representing more than twice the total amount he had paid Sibert in the preceding eight months. *Id.*

In sum, there was ample evidence from which the jury could have found that Defendant directed, approved, and/or ratified Sibert's communications to Haitian law enforcement and there was a sufficient causal link to hold him responsible for Plaintiff Geilenfeld's resulting wrongful imprisonment. Jury Charge Conference, July 21, 2015, 40:4-17. Therefore, Defendant cannot overcome his tremendous burden to overturn the jury's factual determination on causation.

2.      There is no break in the "causal chain"

Defendant's challenge to the "causal chain" between his defamatory communications and Plaintiff Geilenfeld's arrest and incarceration is similarly without merit. As the recitation of facts above demonstrates, the jury could have reasonably concluded that Defendant's increased pressure on Haitian law enforcement, and his efforts alone (with those of his agents in Haiti), was the impetus behind Plaintiff Geilenfeld's arrest and detention. Moreover, discretion on the part of Haitian law enforcement—no more than the discretion of a social worker who initiates child protection proceedings based on false allegations of child abuse against a parent—does not "break" this causal link. *See e.g.*, *Dobie v. Brefka* 45 A.D.3d 999, 1000-01 (N.Y. App. Div. 2007) (the plaintiff recovered damages against the defendant who published false allegations of child abuse to a social worker, who relied upon those allegations and commenced child protection proceeding in which the plaintiff lost significant parental rights).

14

C.      DEFENDANT IS NOT ENTITLED TO REMITTITUR OR A NEW TRIAL

        Remittitur is appropriate in two situations: (1) in cases where there is some evidence of an improper verdict based on factors other than the amount of the damage award and (2) "where a jury's verdict is challenged as improper based only on a damage award that . . . fails to bear any rational relation to the evidence of the damages presented at trial." *Rooney v. Sprague Energy Corp.*, 2008 WL 4567272, at *12 (D. Me. Oct. 9, 2008) (quotation marks omitted).  In this case, Defendant cannot point to any evidence demonstrating that the award was improper.  The second basis for remittitur should also be rejected because the evidence of damage to Plaintiff Geilenfeld presented at trial was, as Defendant concedes, compelling.  Similarly, the award of economic damages to Plaintiff Hearts with Haiti is supported by the testimony of Geoffrey Hamlyn.

1.      The verdict was not improper

        In arguing that the jury's award of $5 million in presumed damages was improper Defendant states only that "[t]he evidence was that Mr. Geilenfeld was accused regularly through the years of being a child molester before Mr. Kendrick accused him of such."  Def.'s Mot. at 18.  Because Geilenfeld had been previously accused, Defendant implies, he had no reputation left for Defendant to destroy.  But that was the very argument Defendant presented to the jury, which the jury carefully considered, and ultimately rejected.  The law provides (as the jury was instructed, without objection from the Defendant) that one who repeats or otherwise republishes defamatory matter is subject to liability as if he had originally published it.  *Elms v. Crane*, 118 Me. 261, 107 A. 852, 854 (1919) (quoting *Davis v. Starrett*, 97 Me. 568, 576, 55 A. 516, 519 (1903); *Restatement (Second) of Torts* § 578 (1977).

        Defendant's argument also ignores the evidence presented that Plaintiff Geilenfeld was exonerated on each occasion.  There was further a demonstrable difference (which the jury could have found) between the previous isolated accusations against Plaintiff Geilenfeld addressed within

15

specific law enforcement authorities' jurisdictions, and the orchestrated, far-reaching, and relentless, defamation statements that Defendant leveled time and again against Plaintiff Geilenfeld for a period of five years, reaching the public at large.  And, most importantly, there was compelling evidence of Plaintiff Geilenfeld's good reputation, and how it had been impacted by Defendant's defamation.

2.      The verdict was not excessive

"The paramount focus in reviewing a damage award must be the evidence presented at trial."  *Rooney v. Sprague Energy Corp.*, 2008 WL 4567272 at *12 (quotation marks omitted).  This holds true even when, as here, the defendant challenges a presumed damages award.  *Brown & Williamson Tobacco Corp. v. Jacobson*, 644 F. Supp. 1240, 1261 (N.D. Ill. 1986) (concluding that presumed damages must have some factual anchor).  The "greatest deference," however, is afforded to the jury's "translation of intangible, non-economic losses into money damages."  *Rooney*, 2008 WL 4567272, at *12.  And only a damage award that fails to bear any rational relation to the evidence of the damages presented at trial will be overturned.  *Id.*; *see also Saunders v. VanPelt*, 497 A.2d 1121, 1126 (Me. 1985) ("Damage assessment is the sole province of the jury and an award of damages will be held excessive only if it is not rationally supportable by the evidence.").

Defendant discusses a number of cases in which courts ordered remittitur.  These cases are, however, merely examples of excessive jury verdicts not supported by the evidence in the particular case.  In *Republic Tobacco Co. v. North Atlantic Trading Co, Inc.*, the court ordered remittitur from $ 8.4 million to $ 3.36 million when the plaintiff only presented evidence of isolated and not-wide ranging defamatory statements published by a stanch business competitor whom the plaintiff's customers would know to view as biased.  2003 WL 227794561 at *6 (N.D. Ill Nov. 21, 2003).  Similarly, in *Brown & Williamson Tobacco Corp. v. Jacobson*, the court ordered remittitur when the plaintiff tobacco company failed to demonstrate that the defendant's broadcast caused

significant harm.  644 F. Supp. 1240, 1262 (N.D. Ill. 1986).  The court noted, in ordering remittitur, that the plaintiff in that case was a corporate entity incapable of mental suffering or emotional distress—typically a large component of presumed damages. *Id.*

On the other hand, there are countless cases in Maine and elsewhere denying requests for remittitur.  *See, e.g.*, *Redman et al. v. Toner et al.*, No. BCD-WB-CV-09-07 (Me. Super. Feb. 4, 2011) (denying the defendant's Rule 59 motion for new trial and request for remittitur to $100,000 and concluding that the $7.3 million damage award for emotional distress alone was not excessive based on evidence of the plaintiff's suffering and contemplated suicide).  All of these cases—those cited by the Defendant and those cases denying remittitur—do not control the Court's analysis, however.  In determining whether the evidence supports a damages award, the question is not whether Defendant can demonstrate that the damage award is shocking compared to other hand-picked cases, but whether the evidence *in this case* supports the award.  *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 82 (1st Cir. 2010).

Here, the evidence of the harm that Defendant caused Plaintiff Geilenfeld was, as Defendant concedes, devastating—"midnight express come to life."  Def.'s Mot. at 2.  The evidence showed and the jury was entitled to find that Defendant, over a five-year period, destroyed Plaintiff Geilenfeld's life's work—a mission for disabled and disadvantaged Haitian children thirty years in the making, caused him to be imprisoned as an innocent man in a Haitian jail in unimaginable conditions, and literally pushed him to the brink of insanity.  It is difficult to imagine a damages verdict that would be excessive or irrational on these facts.  As the Court previously recognized:

> Allegations of sexual misconduct, particularly in circumstances like this one, are so serious and lurid that they take on a life of their own and, if persistently repeated, no verdict will entirely undo the damage.

ECF No. 293 at 23.  Therefore, the jury's award of presumed damages of $5 million to Plaintiff Geilenfeld should not be disturbed.[7]

3.       The evidence supported the damages award to Plaintiff Hearts with Haiti

Defendant's challenge to the reliability of Geoffrey Hamlyn's comparative statistical analysis was previously considered and rejected by the Court in a detailed eighteen-page Order after a several-hour *Daubert* hearing. At trial, Hamlyn testified that his comparative analysis was limited to years 2009 through 2013, not because Plaintiffs did not continue to suffer lost revenues thereafter, but because financial records for the sample of similarly situated non-profits were not yet available for 2014 and 2015 at the time of trial.  Tr. of Proceedings, July 15, 2015, 112:20 through 113:5.   To the contrary, the jury heard testimony from numerous witnesses that Defendant continued his tortious interference with Hearts with Haiti's fundraising efforts through 2014 and into 2015.   Indeed, the jury found that Defendant tortiously interfered with Hearts with Haiti's fundraising efforts in 2011, 2012, 2013, 2014, and 2015.  Verdict as to Hearts with Haiti (ECF No. 475) at 2.  Based on Hamlyn's analysis, Hearts with Haiti lost an average of $1.1 million in revenue each year from 2011 through 2013.  Applying the same average annual loss to 2014 ($1.1 million) and half of 2015 ($550,000—January through June), the jury could have reasonably awarded Hearts with Haiti $5.05 million in lost revenue.  The jury most likely rounded their award to a flat $5 million to Hearts with Haiti on its tortious interference claim.[8]  Thus, the jury's damages award is

---

[7]  The same analysis applies to Defendant's two-sentence "passion and prejudice" footnote argument.  Defendant points to no evidence, other than the size of the damages award, to suggest that the ten-member jury's unanimous verdict "was the product of passion and prejudice."  There is none.  And the sizes of the damages awards themselves cannot prove *undue* passion and *unfair* prejudice.  *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 580-81 (1st Cir. 1989).  Particularly not in this case.  *See* ECF No. 293 at 23 (recognizing that no verdict can fully undo the harm caused by persistently repeatedly false allegations of child sex abuse).

[8]  The compensatory damages verdict on Hearts with Haiti's tortious interference claim further demonstrates the attentiveness and diligence of the members of the jury.  Although Hearts with Haiti's reputational harm and loss of good will are likely to continue for years to come, the future impact of Defendant's tortious interference is likely to be mitigated by a verdict in Hearts with Haiti's favor.  To put it another way, as Dr. Rick Barger testified (Tr. of Proceedings July 15, 2015, 157:20 through 158:2), organizations like Haitian Timoun Foundation, would be likely to reengage with Plaintiffs after the above-captioned matter is resolved to their satisfaction.  Therefore, the jury could

far from speculation and should not be disturbed. *See Wallace v. Coca-Cola Bottling Plants, Inc.* 269 A.2d 117, 122 (Me. 1970) ("It is not for the reviewing court to interfere merely because the award is large, or because the court would have awarded less. Unless a verdict very clearly appears to be excessive, upon any view of the facts which the jury are authorized to adopt, it will not be disturbed." (Quotation marks omitted)).

4.      The jury's verdicts were not "tainted"

Defendant's "taint" argument is somewhat difficult to follow but, at bottom, he seems to argue that evidence of Plaintiff Geilenfeld's wrongful imprisonment improperly influenced the jury's liability verdicts in favor of both Plaintiffs.[9] Def.'s Mot. (ECF 488) at 11-13. This argument is baseless as demonstrated by the case law Defendant cited in support thereof.

For example, in *Soto-Lebron v. Federal Express Corp.*, a case cited by Defendant, the First Circuit expressly rejected a very similar "taint" argument. 538 F.3d 45 (1st Cir. 2008). In that case, testimony regarding plaintiff's family's financial difficulties that were wholly unrelated to defendant's defamatory conduct were admitted and improperly influenced the jury's damages award. *Id.* at 70-71. The defendant argued that the testimony was the "most emotionally compelling" and must have similarly "tainted" the jury's liability determination. *Id.* However, the court held that trial court's careful instructions and detailed special verdict form appropriately required the jury to keep its liability determination separate from its valuation of damages and prevented any "taint" of the jury's liability determination. *Id.* The court, therefore, denied defendant's request for a new trial on liability. *Id.* at 71.

---

reasonably award compensatory damages on Heart's with Haiti's tortious interference claim from 2011 through the first half of 2015, but not into the future.
[9] If the issue were as significant to Defendant as he now suggests, he would have moved prior to trial to bifurcate liability and damages. It should be noted, as a general matter, that this case is markedly different than a catastrophic personal injury case where the jury is likely to be sympathetic to the seriously injured plaintiff even if she cannot prove her case. If Plaintiffs could not prove their case, i.e. could not prove that Defendant's allegations of child sex abuse were false, the jury would have no sympathy for either of them. Therefore, it is highly unlikely that evidence of Plaintiffs' harms could have improperly influenced the jury's liability determination, particularly where the jury was appropriately instructed by the Court to decide liability separate from damages.

Here, similar to *Soto-Lebron*, the Court gave appropriate instructions to keep the jury's liability determinations separate from its valuation of damages and to evaluate each plaintiff's claims separately. Tr. Vol. 1, 14:13-18, Tr. Vol. XIV, 5:15-24 (instructed to "evaluate the evidence and decide the claim of each plaintiff separately"); Tr. Vol. XIV, 5:1-7 (instructed to base its verdicts on the evidence, and only the evidence, and to not "be governed by sympathy, prejudice, or public opinion"); Tr. Vol. XIV, 19:18 through 23:12 (instructed to determine liability before evaluating damages). These instructions were reinforced in separate detailed special verdict forms for each Plaintiff, which the Court carefully walked through with the jury. Tr. Vol. XIV, 24:8 through 28:23. Therefore, like the jury in *Soto-Lebron*, the jury in this case was properly instructed by the Court to separate its liability determination and damages valuations and to evaluate each Plaintiff's claims separately. The jury followed the Court's instructions.

## II.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny in its entirety Defendant's Rule 59 Motion for a New Trial or Other Alternative Post-Judgment Relief.

DATED:  September 10, 2015              /s/ Devin W. Deane_____
                                        Peter J. DeTroy, Esq.
                                        Russell B. Pierce, Esq.
                                        Devin W. Deane, Esq.
                                        Attorneys for Plaintiffs

NORMAN, HANSON & DeTROY, LLC
Two Canal Plaza
P.O. Box 4600
Portland, Maine 04112-4600
(207) 774-7000
*ddeane@nhdlaw.com*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 10, 2015, I electronically filed the foregoing PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 59 MOTION FOR NEW TRIAL with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to all registered counsel of records as follows:

David C. King, Esq.,

F. David Walker, Esq., and

Brent Singer, Esq.

Matthew Cobb, Esq.

Rudman & Winchell

84 Harlow Street

P.O. Box 1401

Bangor, ME 04401

*dking@rudmanwinchell.com*

*dwalker@rudmanwinchell.com*

*bsinger@rudmanwinchell.com*

*mcobb@rudmanwinchell.com*

/s/ Devin W. Deane

Devin W. Deane, Esq.

Attorney for Plaintiffs

NORMAN, HANSON & DeTROY, LLC

Two Canal Plaza

P.O. Box 4600

Portland, Maine 04112-4600

(207) 774-7000

*ddeane@nhdlaw.com*